IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PAUL N. ROSS,

                     Petitioner,

     v.

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                     Respondent.

_____

Civil Action No.
9:08-CV-0731 (TJM/DEP)

<u>APPEARANCES</u>:

<u>FOR PETITIONER</u>:

PAUL N. ROSS, *pro se*
04-B-2025
Attica Correctional Facility
Box 149
Attica, New York 14011

<u>FOR RESPONDENT</u>:

HON. ANDREW M. CUOMO
Attorney General of
Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

ALYSON J. GILL, ESQ.
ASHLYN DANNELLY, ESQ.
Assistant Attorneys General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Petitioner Paul N. Ross, a New York State prison inmate as a result of a 2004 conviction for assault and weapon possession, has commenced this proceeding pursuant to 28 U.S.C. § 2254 soliciting this court's habeas intervention.  While in his petition, as amended, Ross argues that his conviction was the product of various constitutional violations, his habeas claims focus principally upon rulings of the trial court during the course of the trial, the sufficiency of the evidence against him, and his sentence, which he maintains was unduly harsh.

Having reviewed the record now before the court and applied the requisite deferential standard, I find that certain of petitioner's claims are either procedurally barred or not federally cognizable, and that to the extent cognizable constitutional claims are presented, they lack merit.

I.   <u>BACKGROUND</u>

Petitioner's conviction stems from an incident that occurred on the evening of August 20, 2003, and extending into the early morning hours of the following day.  Trial Transcript ("TT") at 254-56.  During the early morning hours of August 21, 2003 the victim and her boyfriend, Philip Doxtater, together with six or seven other guests, were assembled on the

2

front porch of the victim's building listening to the radio.  TT 254-56.  At some point during the evening Doxtater went upstairs into the victim's apartment.  TT 256.  After Doxtater left the petitioner arrived carrying a duffle bag, and joined the party.  TT 256-58.

At approximately 2:00 a.m. on that morning, after all of the other guests had left, the petitioner and the victim, Irene Longden, entered into a discussion regarding her relationship with Doxtater.  AT 258-59.  At some time during the discussion the petitioner jumped across a porch table and struck the victim in the nose, causing it to bleed.  AT 260-61.  Petitioner then struck Longden again, at which point she fell to the porch floor.  *Id.* While she was on the floor petitioner kicked the victim in the face, picked her up by the top of the head, and slit her throat with a knife.  TT 261-62. At that point the victim, cornered behind a porch table, screamed for help, while petitioner stated three times that he was going to kill her.  TT 262-63.

Doxtater, who was in bed in the victim's apartment at the time, heard her screams and called for emergency assistance.  TT 263, 414-15, 417. Longden then moved from behind the table and proceeded up the stairs, where she was met by Doxtater. AT 262-63, 415-16.  Petitioner followed Longden up the stairs, but upon seeing Doxtater fled the scene.  TT 418-

3

19.

Following the incident Longden, who was bleeding profusely, was taken to the hospital where her throat was sutured and her other injuries treated.  TT 219-21, 233-34, 313.  The injury to the victim's throat left a five inch scar, which was still visible at the time of trial.  TT 317-18.

When questioned by law enforcement officials, Longden identified the petitioner as her attacker.  TT 218.  Police officers in the area were subsequently alerted by radio to the search for Ross.  TT 219, 391.

Petitioner was later apprehended by law enforcement officials nearby and, after being advised of his constitutional rights, was questioned.  TT. 392-95.  During the questioning, petitioner stated that he was drinking at Longden's house, and she got angry and fell.  TT 395-96.  At trial, petitioner denied striking the victim or threatening to kill her, and stated that she was injured when he tried to defend himself from her aggression with the knife.  TT 430-33.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

Petitioner was initially indicted by an Onondaga County Grand Jury and charged with second degree assault and criminal possession of a

weapon in the third degree, based upon his attack of the victim in this case.  That indictment was later superseded by another in which petitioner was charged with attempted murder in the second degree, first and second degree assault, and third degree weapon possession.

A trial of the charges against petitioner was conducted beginning on June 21, 2004, with Onondaga County Court Judge Joseph Fahey presiding.  TT 1 - 584.  At the close of trial petitioner was acquitted of attempted murder, but convicted on the remaining three charges.  TT 580-83.  As a result of that conviction, on July 13, 2004 petitioner was sentenced as a second felony offender to concurrent terms of imprisonment of twenty years on the first degree assault charge, seven years in connection with the assault in the second degree conviction, and three and one-half to seven years on the weapon possession conviction, to be followed by a five-year period of post-release supervision.  Sentencing Transcript ("ST") at 10-11.

On appeal to the New York State Supreme Court Appellate Division, Fourth Judicial Department, petitioner's conviction was unanimously affirmed.  *People v. Ross*, 39 A.D.3d 1243, 835 N.Y.S.2d 787 (4th Dep't 2007).  In that appeal petitioner argued that 1) the trial court erred in

refusing to instruct the jury regarding a third degree assault as a lesser

included offense; 2) the verdict was against the weight of the evidence; 3)

the trial court made several erroneous evidentiary rulings, including

permitting a paramedic to testify regarding the severity of the victim's

injuries, limiting cross-examination of the victim, and permitting leading

questions during the direct examination of a police officer; and 4) his

sentence was unduly harsh and excessive.  *Id.* at 1244*, 835 N.Y.S.2d at

788-89.

The Appellate Division rejected petitioner's lesser included offense

challenge, finding that the issue had not been properly preserved for

review and declining to exercise its discretion, in the interest of justice, to

nonetheless address the matter.  *Id., 835 N.Y.S.2d at 788.*  Turning to

petitioner's weight of the evidence argument, the appellate court concluded

that the jury was entitled to credit the victim's testimony over that of the

petitioner, and that her account amply supported the jury's verdict.  *Id., 835

N.Y.S.2d at 788.*  Addressing the evidentiary rulings at issue, the court first

noted that the general objection voiced to the testimony of the paramedic

regarding the severity of the victim's injuries was insufficient to preserve for

appellate review the contention now advanced and, again, declined to

exercise its discretion to consider the issue.  *Id.,* 835 N.Y.S.2d at 788-89.

The Fourth Department also concluded the trial court properly exercised its

discretion in limiting cross-examination of the victim, and that if by

permitting the use of leading questions the trial court committed error, it

was harmless.  *Id.,* 835 N.Y.S.2d at 789.  Lastly, the court reviewed the

petitioner's sentence and found that it was not unduly harsh or severe.  *Id.*

Leave to appeal to the New York Court of Appeals was denied on June 20,

2007.  *People v. Ross*, 9 N.Y.3d 850, 872 N.E.2d 890 (2007).

On or about August 8, 2007, proceeding without legal representation,

the petitioner made an application to the trial court pursuant to New York

Criminal Procedure Law § 440.10 to vacate his judgment of conviction.

*See* State Court Records (Dkt. No. 13) Exh. F.  In that motion, petitioner

argued that he had received ineffective assistance of counsel at trial based

upon his attorney's failure to properly object to the court's failure to charge

assault in the third degree as a lesser included offense. *See id.*  By

decision and order dated October 9, 2007 the trial court denied petitioner's

section 440.10 motion without conducting an evidentiary hearing.  *Id.* at

Exh. H.  In his decision, Judge Fahey observed that petitioner's trial

counsel had in fact requested that the court charge third degree assault,

but that the court had concluded there was no basis to instruct the jury regarding that level of offense in light of the evidence adduced at trial, adding that petitioner had therefore failed to demonstrate any actual prejudice resulting from his trial counsel's failure to object and preserve the issue. *Id.* at p. 2.  The court also noted that the ineffective assistance of counsel claim involved matters within the trial record, and as such should have been raised in petitioner's direct appeal. *Id.*  It does not appear that petitioner sought leave to appeal the denial of his section 440.10 motion.

      B.    Proceedings In This Court

Ross's petition, which is dated May 29, 2008, was initially filed in the United States District Court for the Western District of New York on June 2, 2008, Dkt. No. 1, but was transferred to this district as a result of an order issued on June 13, 2008 by Chief District Judge Richard J. Arcara of that court.  Dkt. No. 3.  Upon initial review of Ross's petition Senior District Judge Thomas J. McAvoy determined that it was deficient because, though he purported to incorporate by reference the arguments raised in his brief to the Appellate Division in connection with his direct appeal, petitioner failed to attach or otherwise provide the court with the relevant excerpts of that brief.  Dkt. No. 5.  Accordingly, by decision and order dated July 31,

2008 Judge McAvoy directed that petitioner file an amended petition detailing the arguments being raised in support of his request for habeas relief or, alternatively, to provide the court with the relevant excerpts of his appellate brief referenced in the initial petition. *Id.*

In compliance with Judge McAvoy's initial order, Ross submitted an amended petition on September 8, 2008, with his appellate brief to the Fourth Department attached in its entirety.  Dkt. No. 7.  In his amended petition, which appropriately names as a respondent James Conway, the superintendent of the correctional facility in which he is being held, Ross raises four grounds for relief, asserting that 1) the trial court violated his rights by not charging assault in the third degree as a lesser included offense; 2) the verdict was against the weight of the evidence; 3) the trial court's evidentiary rulings constituted error and were not harmless when considered together; and 4) the sentence imposed by the trial court was unduly harsh and excessive.  Dkt. No. 7.

On March 25, 2009 respondent Conway, represented by the New York State Attorney General, submitted an answer and a memorandum of law in opposition to Ross's petition.  Dkt. No. 12.  Those materials were accompanied by the relevant state court records, including a complete

transcript of the trial and of petitioner's sentencing.  Dkt. No. 13.

Ross's petition, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Standard of Review

The standard to be applied when evaluating the merits of a federal habeas petition was significantly circumscribed by Congress through enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Under the AEDPA, a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Besser v. Walsh*, 601 F.3d 163, 178 (2d Cir.

2010),*vacated in part on rehearing en banc by Portalatin v. Graham*, 624

F.3d 69 (2d Cir. 2010); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2000),

*cert. denied*, 534 U.S. 886, 122 S. Ct. 197 (2001); *Boyette v. Lafevre*, 246

F.3d 76, 88 (2d Cir. 2001).  When applying this test, the Second Circuit

has noted that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: (1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled?
> (2) If so, was the state court's decision "contrary
> to" that established Supreme Court precedent? (3)
> If not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*

*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing *Williams v. Taylor*, 529

U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000)).  For AEDPA purposes

federal law is "clearly established" if it is based upon holding of Supreme

Court decisions rendered prior to the time of the state court decision being

examined.  *Williams*, 529 U.S. at 412, 120 S. Ct. 1495.  When applying

this test, a court must recognize that under the AEDPA "a determination of

a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotes omitted).

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims that have been actually adjudicated on the merits in the state courts.  *Besser*, 601 F.3d at 179; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  As the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2d Cir. 2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 549 U.S. 1133,127 S. Ct. 976 (2007).  The Second Circuit has further noted that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in

12

the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*"  *Sellan*, 261 F.3d at 312 (emphasis added).

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.  An unreasonable application of clearly established federal law occurs when the governing rule is correctly identified but the court "'applies it unreasonably to the facts of a particular prisoner's case', or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern."  *Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (quoting *Williams*, 529 U.S. at 407-08, 120 S. Ct. 1495) (other citations omitted).  As the Second Circuit has observed, this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]"  *Francis S.*, 221 F.3d at 111.

> B.   <u>Petitioner's First Ground: Failure To Charge A Lesser Included Offense</u>

The first basis upon which Ross urges the court to intercede on his behalf concerns his claim that the trial court erred by not instructing the jury regarding assault in the third degree as a lesser included offense to those formally charged by indictment.

### 1.   Exhaustion Of Remedies

In answer to petitioner's lesser included offense claim, respondent first argues that any federal claim associated with that argument was not properly presented first to the state courts, and that the claim is therefore both unexhausted and procedurally barred.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or establish either an absence of available state remedies or that such remedies cannot adequately protect his or her rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118, 115 S. Ct. 2269 (1995).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  "Comity concerns lie at the core of the exhaustion requirement."  *Galdamez v.*

*Keane*, 394 F.3d 68, 72 (2d Cir. 2005).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly presented'" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye*, 696 F.2d at 191 (citations omitted).  Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Id.* at 192; *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *Berry v. Hulihan*, No. 08 Civ. 6557 (LBS), 2009 WL 233981, at *2 (S.D.N.Y. Jan.

15

28, 2009).[1]  A "state prisoner does not 'fairly present' a claim to a state

court" where his or her brief to the state appellate court "does not alert

[the court] to the presence of a federal claim. . .."  *Baldwin v. Reese*, 541

U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004); *see also Williams v. Breslin,*

No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing

*Baldwin*).

        In its decision in *Daye*, the Second Circuit identified at least four

means by which a petitioner failing to cite to specific constitutional

provisions could nonetheless be deemed to have "fairly presented" a

federal claim to the state courts.  696 F.2d at 194.  The examples cited

include

> (a) reliance on pertinent federal cases employing
> constitutional analysis, (b) reliance on state cases
> employing constitutional analysis in the like factual
> situations, (c) assertion of the claims in terms so
> particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of
> a pattern of facts that is well within the mainstream
> of constitutional litigation.

*Id.*

        I have combed both petitioner's brief to the Fourth Department and

--------

        [1]    Copies of all unreported decisions cited in this document have been
appended for the convenience of the *pro se* plaintiff.

the cases cited in support of his lesser included offense claim. Conspicuously lacking among those materials is any indication that the Appellate Division was alerted to a possible federal claim associated with this issue.  Instead, both the brief to that court and cases cited within it appear to focus upon controlling state law, and specifically the test for instructing juries regarding lesser included offenses crafted by the New York Court of Appeals in its companion decisions in *People v. Green,* 56 N.Y.2d 427, 452 N.Y.S.2d 389 (1982) and *People v. Glover,* 57 N.Y.2d 61, 453 N.Y.S.2d 660 (1982) (*per curiam*).  I therefore recommend a finding that the argument now raised has not yet been fairly presented to the state courts of New York.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."  *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding

for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1404 (2001).  As such, I must determine whether it would be futile for petitioner to present the newly-asserted theory regarding lesser included offenses to the state courts.

Petitioner cannot now file an appeal with the Fourth Department in order to advance his claim regarding the trial court's alleged failure to instruct the jury as to the elements of assault in the third degree as a lesser included offense, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91.  Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise this claim, which is based upon the record, in an Article 440 motion.  *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S. Ct. 1436 (1995). This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application.  *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673JG, 2002 WL 31102612, at *10  (E.D.N.Y. Sept. 18, 2002).

Although petitioner's lesser included offense claim is "deemed exhausted," it is also procedurally forfeited.  *See Aparicio*, 269 F.3d at 90, 96.  Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice.  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *see also House v. Bell*, 547 U.S. 518, 535, 126 S. Ct. 2064, 2076 (2006); *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  *Murray*, 477 U.S. at 495, 106 S. Ct. at 2649 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576 (1982)).

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566-67 (1991) (citing *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645); *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999) (citing, *inter alia*, *Coleman*).  Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[2]  *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.  When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing *Stepney*); *Staley v.*

---

[2]    It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S. Ct. at 2566-67 (quoting *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.

*Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney*).  In such a case, absent evidence to show the petitioner's innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration."  *Spence*, 219 F.3d at 170 (citations omitted).

Petitioner has offered, and the court independently has discerned, no basis upon which to find adequate cause for his failure to present any federal claims associated with his lesser included offense argument to the state courts.  I further find no basis to conclude that denial of the relief now sought would leave unremedied a fundamental miscarriage of justice. Accordingly that claim, while deemed unexhausted, is also procedurally forfeited, and thus cannot serve as a basis for granting the habeas relief now sought.

2.    Independent And Adequate Ground

Respondent next argues that even if the lesser included offense claim is deemed exhausted and therefore cognizable on petition for habeas relief, it should be rejected in this instance based upon the

Appellate Division's finding that the issue was not properly preserved for appellate review.

As both a matter of comity and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground which is both "independent and adequate[.]"  *Coleman*, 501 U.S. at 736, 111 S. Ct. at 2558; *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005). While a procedural forfeiture is typically the product of a failure to comply with a state's requirements regarding timely presentment of issues to a court, the question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law.  *Monroe*, 433 F.3d at 241.

Addressing the issue of adequacy, the Second Circuit has observed that

> a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question.  When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review.  Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should

> not reach that conclusion lightly or without clear
> support in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal citations and quotation marks omitted).  As may be self-evident, a state court determination is sufficiently independent for purposes of this rule if it is divorced from and bears no relation to the merits of the federal law claim presented.  *See Brown*, 409 F.3d at 532.  When addressing the question of procedural forfeiture, a court should presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at 733, 111 S. Ct. at 2556 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41, 101 S. Ct. 3469, 3476 (1983)).

For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as an independent basis for its disposition of the claim.  *Fama*, 235 F.3d at 809.  In a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a

23

claim, a federal court may properly assume that the state court based its

decision on state procedural grounds absent "good reason" to believe the

state courts' silence represents a decision to deny the claim on its merits.

*Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).  In instances where a

state court has expressly found both a failure to preserve the argument for

appellate review and "in any event" that the argument lacks merit, the

procedural bar applies.  *Fama*, 235 F.3d at 810 n.4 (citing *Glenn v.

Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) and *Velasquez v. Leonardo*,

989 F.2d 7, 9 (2d Cir. 1990)).  If there is ambiguity, however, as in "when

a state court uses language such as '[t]he defendant's remaining

contentions are either unpreserved for appellate review or without merit,'

the validity of the claim is preserved and is subject to federal review."

*Fama*, 235 F.3d at 810; *see also Coleman*, 508 U.S. at 735, 111 S. Ct. at

2557.

In this instance, it is plain from the Fourth Department's decision

that it relied upon the failure of petitioner's counsel to adequately preserve

the lesser included offense argument as a basis for declining to entertain

the claim on appeal.  *See Ross*, 39 A.D.3d at 788.  It is well recognized

that the requirement, which was not met in this case, that an argument be

preserved with a specific, contemporaneous objection, is a firmly established and regularly followed rule in New York.  *See Garcia*, 188 F.3d at 79-82; *see also Simpson v. Portuondo*, No. 01 Civ. 8744, 2002 WL 31045862, at * 4 (S.D.N.Y. June 4, 2002) (citing *Velasquez*, 898 F.2d at 9).

It is not at all clear whether, based upon the circumstances now presented, the independent and adequate state ground exception was properly invoked by the Appellate Division.  The record relating to the petitioner's prosecution reveals that during a charge conference conducted by the trial court, Ross's counsel in fact did request that the jury be instructed concerning assault in the third degree as a lesser included offense.  *See* TT 479-86.  After researching the matter, the trial announced that it was not inclined to grant that request based upon the fact that the first and second degree assault charges against the defendant were predicated upon the use of a dangerous instrument, concluding that no reasonable view of the evidence would support a finding of assault in the third degree utilizing the dangerous instrument subsection.[3]  *Id.* at 482-88.  The theory advanced by the petitioner before

---

[3]     The statute defining third degree assault makes it unlawful, in relevant part "[w]ith criminal negligence, [to cause] physical injury to another person by means of a

the state appellate court included his contention that a reasonable view of the evidence could support a claim that petitioner, with criminal negligence and through the use of a dangerous weapon, caused physical injury to the victim.  After the trial court announced its ruling rejecting the request to charge third degree assault, defendant's counsel responded "Judge, can you please note my exception?"  TT 488.

Based upon those circumstances, it is unclear whether the Fourth Department properly applied the contemporaneous objection requirement in this case in declining to review the lesser included offense issue.  That question, however, is irrelevant to the independent and adequate ground inquiry.  *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).  The fact remains that the court did rely upon that "firmly established and regularly followed rule" and expressly declined on that basis to consider the issue. As a result, this court is precluded from addressing the issue.  *Coleman*, 501 U.S. at 736, 111 S. Ct. at 2558.  Accordingly, I recommend that the court find ground one of Ross's petition presents an unreviewable issue based upon the state court's reliance upon an adequate and independent ground in declining to consider the question.

---

deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.00(3).

### 3.   Merits

Turning to the merits of petitioner's first ground, as was previously noted the court is restricted in its assessment to determining whether the state appellate court's ruling represented an unreasonable application of clearly established Supreme Court precedent.  It should also be noted that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).  Rather, the court is only tasked with determining whether petitioner's conviction violated the constitution, laws or treaties of the United States.  *Id.* at 68, 112 S. Ct. at 480.

While the Supreme Court has addressed the issue of lesser included offenses, it has done so only in the limited context of capital cases.  In *Beck v. Alabama*, the Supreme Court found that in such cases due process requires that a jury be instructed on a lesser included offenses, provided that the evidence warrants such an instruction.  447 U.S. 625, 627-38, 100 S. Ct. 2382, 2385-2390 (1980); *see Biene v. Smith,* 546 F. Supp.2d 26, 43 (E.D.N.Y. 2008).  Neither the Supreme Court nor the Second Circuit has decided whether the constitutional right to due process is also implicated with regard to instructing juries on lesser

included offenses in non-capital cases.  *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir. 1995); *Biene*, 546 F. Supp.2d at 43.

Under the AEDPA, when there is a lack of clearly established Supreme Court precedent addressing the issue, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal Law.'" *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) (quoting § 2254(d)(1)).  A finding that the trial court's failure to instruct a lesser included offense warranted under the facts proven at trial violates the Constitution's due process guaranty would represent a new constitutional rule inapplicable to the present case under the Supreme Court's decision in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060 (1989), and thus would not apply in this case.  *Biene,* 546 F. Supp.2d at 40-44; *Goston v. Rivera*, 462 F. Supp.2d 383, 393-94 (W.D.N.Y. 2006).

In sum, petitioner's first ground, claiming error by not including a lesser included offense instruction in this, a non-capital, case is not legally cognizable even assuming it has been properly exhausted and consideration of it is not precluded by the independent and adequate ground doctrine.  *Goston,* 462 F. Supp.2d at 394.

C.    Petitioner's Second Ground: Weight Of The Evidence

In the second ground of his petition, which incorporates by reference the brief filed on his behalf with the Fourth Department, petitioner argues that the jury's verdict was against the weight of the evidence and based upon a quantum of evidence legally insufficient to support the resulting conviction.

A claim that a verdict is against the weight of the evidence does not, in and of itself, implicate a federal claim under the constitution or laws of the United States. *Garrison v. Rock*, No. 08-CV-6266, 2010 WL 3369602, at *3 (W.D.N.Y. Aug. 23, 2010) ("In making a 'weight of the evidence' argument, petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available.") (citations omitted)*; see Maldonado v. Scully*, 86 F.3d 32, 35-36 (2d Cir. 1996).  Moreover, as respondent argues, to the extent that petitioner's weight of the evidence argument relies upon the federal constitution or a federal statutory provision, that claim is unexhausted and procedurally forfeited since his brief to the Appellate Division does not make reference to any federal right that would guaranty a verdict supported by the weight of the evidence. *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351.

By contrast, petitioner's argument that the evidence adduced at trial was insufficient to support the verdict, a claim which respondent concedes is exhausted, does implicate such a constitutional right.  *See Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979).  A convicted defendant seeking federal habeas review for sufficiency of evidence to support a conviction, however, bears a heavy burden.  *Fama*, 235 F.3d at 811 (2d Cir. 2000); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994).  A petitioner making this claim is entitled to habeas relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92.   When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor[,]" and must defer to the credibility assessments made by the jury without substituting its view for that of the factfinder.  *Fama*, 235 F.3d at 811; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  Viewing the evidence in this light, the court must uphold the verdict  "if any rational trier of fact could have found the essential elements of the crime [of conviction] beyond a reasonable

30

doubt." *Id.,* 99 S. Ct. at 2789.

In this case, petitioner was convicted of assault in the first and second degrees, and third degree criminal possession of a weapon.  In establishing the requisite elements of first degree assault under the theory pursued at trial, the prosecution was required to establish that the petitioner intended to cause serious physical injury to the victim and did cause serious physical injury through means of a deadly weapon or dangerous instrument.  N.Y. Penal Law § 120.10(1); *see People v. Elliot*, 299 A.D.2d 731, 751 N.Y.S.2d 331 (3d Dep't 2002).  To find petitioner guilty of second degree assault, the jury must have concluded the prosecution succeeded in establishing an intent to cause physical injury and the causing of physical injury using a deadly weapon or dangerous instrument.  N.Y. Penal Law § 120.05(2); *see People v. Ray,* 273 A.D.2d 611, 710 N.Y.S.2d 138 (3d. Dept. 2000).  The essential elements of criminal possession of a weapon in the third degree, based upon the facts of this case, include the possession of a dangerous knife with intent to use it unlawfully against another individual after having been convicted of a crime.  N.Y. Penal Law §§ 265.01(2), 265.02(1); *see People v. Gonzalez,* 64 A.D.3d 1038, 882 N.Y.S.2d 598 (3d. Dep't 2009) (finding

convictions for assault in second degree and criminal possession of

weapon in third degree were supported by sufficient evidence, including

testimony of victim regarding defendant's knife attack, and evidence that

defendant had been previously convicted of sodomy in third degree), *lv. to

appeal denied* 13 N.Y.3d 796, 887 N.Y.S.2d 545.[4]  Each of these

elements was proven through a combination of the victim's testimony and

corroborating physical evidence.

The first element of the respective assault charges, intent to cause

serious physical or physical injury, was established by the victim's

testimony. The victim testified that following a discussion regarding her

relationship with Doxtater, the petitioner struck her in the nose, causing it

to bleed and knocking her to the porch floor. TT. 260-61. The petitioner

then picked up the victim by her head and stated that he would show her

how a "real Marine does it." TT. 261, 291-92, 296-98. The petitioner held a

serrated steak knife to the middle of the victim's throat and proceeded to

slit her throat while repeating three times, "I'm going to kill you." TT. 261-

62, 290, 294-95, 299, 300. The victim testified that the petitioner also

---

[4]      Petitioner admitted during the course of the trial that he had previously been
convicted of petit larceny, a crime under New York law.  TT 422; *see Gonzalez*, 64 A.D.3d
at 600, 882 N.Y.S. 2d 598.

stated, "I'll show you." TT. 301.  A police officer who spoke with the

defendant following his apprehension testified that the petitioner stated

that he was mad at the victim in the time period preceding the attack. TT.

396.

With regard to the element of serious physical injury or physical

injury, the victim testified that the petitioner slit the her throat with a

serrated steak knife, causing her to require sutures. TT. 313-14.  The

paramedic who treated the victim testified that the victim sustained a

several inch-long, deep laceration running from the right side to the middle

of her neck, "consistent with a swiping motion". TT. 231-33.  The victim

attested that she was "completely covered" in blood and feared that she

would bleed to death. TT. 263.  The paramedic testified that the victim

would have died from this blood loss had she not received medical

attention. TT. 233.  A responding police officer stated that the victim,

apparently under the belief that she was dying, told him that the petitioner

killed her. TT. 224.  The evidence technician who processed the crime

scene testified that the victim was in critical care following the incident,

TT. 324, and weeks after the incident the victim required additional

sutures, TT. 314.  The victim attested that she now has a five-inch scar

33

across the front of her throat, which was visible at trial.  TT. 318.

As further evidence of the victim's injuries, the prosecution admitted into evidence several photographs depicting the laceration, which spanned approximately five inches from the right side to the middle of the victim's neck (*i.e.* exhibits 4, 5, and 6).  TT. 220-23, 234-35,327-28. Additionally, eight photographs were entered into evidence to show the extent and nature of the victim's blood loss.  Exhibits 11 and 12 depicted the blood-stained front door and furniture located on the victim's front porch, while exhibits 13-18 showed the porch and furniture from various angles, as well as the blood spatter patterns that covered each.  TT. 332, 333-36, 344-48.  Exhibits 13, 17, and 18 in particular showed a wooden chair which had a blood swipe pattern on its surface.  TT. 335, 346, 348.

As to the final element of the assault charges, use of a deadly weapon or dangerous instrument, the victim testified that the petitioner used a steak knife to slit her throat.  TT. 262. The victim testified that she kept a steak knife on the porch at her residence in order to open and close the window through which she regularly plays a radio.  TT. 252-53. On cross-examination, the victim attested that the knife was located on the window ledge, and that the petitioner sat "right in front of" this window

in the moments immediately preceding the attack.  TT. 292-93, 309-10.

According to the testimony of a responding officer, in the bulletin to all

police regarding the incident, the police dispatcher identified the knife as

the weapon used by the perpetrator.  TT. 386-87.

The evidence technician testified that during his investigation of the

crime scene he found a wooden-handled serrated knife wedged in the

slats of the table on the victim's porch.  TT. 337-38.  The victim later

identified it as the knife that the petitioner used to slit her throat.  TT. 340.

At trial the prosecution introduced photographs of this knife (Exhs. 19, 20,

and 21).  TT. 338, 341-42. Though no usable fingerprints were found on

the knife, the deputy sheriff who processed the knife testified that there is

generally no more than a one percent probability of recovering

fingerprints in such a situation.  TT. 365-66. Nor were any blood stains

found on the knife.  TT. 368. However, the evidence technician testified

that, as shown in photographs contained in Exhibits 13, 17, and 18, one of

the chairs on the porch had a blood swipe pattern consistent with the stain

left by an object which had been wiped clean.  TT. 335-36, 346-47, 348.

In establishing the essential elements of criminal possession of a

weapon in the third degree, the prosecution proffered testimony from the

victim and law enforcement agents. As to the first element, possession of a dangerous weapon, the victim testified that she kept a steak knife on the ledge of the window facing her porch, and that the petitioner sat "right in front of" this window in the moments preceding the incident.  TT. 252-53, 292-93, 309-10. With regard to the second element, intent to use said weapon unlawfully against another individual, the victim testified that as the petitioner slit her throat, he stated "I'll show you" and three times repeated, "I'm going to kill you."  TT. 261-62, 290-92, 295, 297-98, 300-01. According to the police officer who questioned the petitioner after he was apprehended, the petitioner stated that he was mad at the victim in the time period preceding the incident.  TT. 396. In satisfaction of the final element of the weapon possession charge, the parties stipulated to the petitioner's prior conviction of a crime.  TT. 486.

Concluding that the evidence at trial was sufficient to establish the essential elements of the crimes for which Ross was convicted, and affording the requisite degree of deference to the jury's verdict, I recommend a finding that the jury's verdict was based upon legally sufficient evidence as required by the due process clause of the Fourteenth Amendment.

D.     Petitioner's Third Ground: Trial Court Evidentiary Rulings

Petitioner next complains of a series of evidentiary rulings made by the trial court.  The first concerns admission of the testimony of a paramedic, to the effect that the victim would have died from loss of blood had she not received medical attention.  TT 233.  The second is based upon limitations the trial court imposed on cross-examination of the victim concerning domestic disputes with prior boyfriends.  The third relates to the prosecution's use of leading questions when examining one of the law enforcement witnesses.  Although petitioner's appellate brief, which is incorporated by reference into his petition, does not elaborate on the basis for this habeas ground, it appears that he contends his fundamental right to a fair trial was violated by virtue of these rulings.

In its decision, the Fourth Department declined to consider the first of those allegedly erroneous evidentiary rulings based upon the fact that only a general objection was voiced, thus failing to properly preserve the issue for appellate review.  *See Ross,* 39 A.D.3d at 1244, 835 N.Y.S.2d 788.  As was previously discussed, the state appellate court's refusal to review the matter on this basis suffices as an adequate and independent

ground, precluding this court's habeas review of the issue.[5]

Addressing the second issue, the appellate court concluded that the trial court's rulings represented a proper exercise of its discretion in limiting cross-examination of the victim.  *Id.* at 1244, 835 N.Y.S.2d 788-89. With regard to the third issue, the court concluded that even if the use of leading questions was improper, the error was harmless.  *Id.*

Claimed errors by state courts are not ordinarily subject to habeas review unless they deprive a defendant of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72-75, 112 S.Ct. 475, 482-84 (1991). Only evidentiary infractions falling into a very narrow class violate fundamental fairness.  *Dowling v. United States,* 493 U.S. 342, 353, 110 S. Ct. 668, 674 (1990) ("'Judges . . . are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency.'") (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 2048 (1977)) (internal quotations and citations omitted).

A party is entitled to habeas relief on a claim that evidence was

---

[5]     *See supra* pp. 21 - 26.

improperly admitted against him or her where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law." *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286 (1941). The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling*, 493 U.S. at 352, 110 S. Ct. at 674 (citation and internal quotations omitted).

A petitioner is also entitled to habeas relief on a claim that evidence offered in support of his or her defense was improperly excluded in violation of the right afforded to a criminal defendant of a meaningful opportunity to present a complete defense. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). The right to call witnesses and to present testimony "is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington v. Schriver*, 255 F.3d 45, 47-48 (2d

Cir. 2001).

As the Appellate Division found in this case, the trial court did not commit error in restricting the cross-examination by the petitioner's attorney of the victim in this case.  The petitioner's trial counsel was given significant latitude in inquiring about the seven or eight prior contacts between the victim and law enforcement authorities falling into the category of domestic disputes.  TT 278-84.  It was only when counsel persisted by demanding specifics of each incident, prompting an objection from the prosecution, that the court ruled that the defense would be permitted to inquire, but could not "go through all the details" of those incidents.  TT 284.  The trial court thus acted well within its discretion in detailing the extent to which those prior acts could be probed.  *People v. Jorge*, 1 A.D.3d 121, 122, 766 N.Y.S.2d 353 (1st Dep't 2003) (citing *Delaware v Van Arsdall*, 475 US 673, 678-679 (1986)), *lv. denied,* 1 N.Y.3d 629, 777 N.Y.S.2d 29 (2004).  In any event, the petitioner has not shown that the evidentiary ruling limiting cross-examination of the victim concerning other, unrelated incidents denied him of a fundamentally fair trial, a showing which must be made in order to warrant habeas relief. *Rozario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988).

Turning to the issue of leading questions, the Appellate Division assumed that the trial court's ruling in that regard was erroneous, and I will do likewise.  The appellate court went on to conclude that any error committed was harmless.  *Ross*, 39 A.D.3d at 1244, 835 N.Y.S.2d at 789.

The federal courts have been somewhat schizophrenic in deciding what harmless error standard to apply in a collateral challenge setting. Historically, habeas courts have applied the standard articulated in *Brecht* v. *Abrahamson*, inquiring whether a trial court error had a "substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. 619, 637-38, 113 S. Ct.1710 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 775, 66 S.Ct. 1239, 1253 (1946)).  When applying *Brecht* in that setting the courts have generally eschewed the more restrictive standard applied on direct appeal based upon a finding of federal constitutional error under *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967).  In *Chapman*, the Supreme Court observed that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828; *see Fry v. Pliler*, 551 U.S. 112, 116, 127 S. Ct. 2321 (2007).

41

Prior to the Supreme Court's decision in *Fry*, it remained an open question in the Second Circuit as to whether, following enactment of the AEDPA, the controlling test on federal habeas review of state trial court errors remained the standard articulated in *Brecht*, or instead should entail analysis of whether the highest state court's decision was contrary to or represented an unreasonable application of *Chapman*.  *DeVivo v. Superintendent, Auburn Corr. Facility,* No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. Mar. 8, 2006) (Kahn, J. and Peebles, M.J.) (citing *Benn v. Greiner*, 402 F.2d 100, 105 (2d Cir. 2005); *see also Brinson v. Walker*, 407 F.Supp.2d 456, 480-81 (W.D.N.Y. 2006).  The Supreme Court's decision in *Fry* provided welcomed guidance regarding this constitutional question.  In *Fry* the Supreme Court undertook review of the issue specifically to resolve a split among the circuits regarding "whether *Brecht* or *Chapman* provides the appropriate standard of review when the constitutional error in a state court trial is first recognized by a federal court."  *Fry,* 551 U.S. 120, 127 S. Ct. 2321.  In its decision in *Fry*, the Court held that

> [in] § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, 507

42

> U.S. 619, 113 S. Ct. 1710, 123 L. Ed.2d 353,
> whether or not the state appellate court recognized
> the error and reviewed it for harmlessness under
> the "harmless beyond a reasonable doubt"
> standard set forth in *Chapman*, 386 U.S. 18, 87
> S.Ct. 824, 17 L.Ed.2d 705.

*Id.* at 121-22, 127 S. Ct. at 2328; *see also Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004) (holding that when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman*).  It should be noted that the majority in *Fry* assumed, without deciding, that the trial court had committed constitutional error in excluding the testimony of a defense witness at the petitioner's trial, accepting the habeas court's finding in that regard.  *Id.* at 116 n.1, 127 S. Ct. at 2325 n.1.  Accordingly, whether the holding in *Fry*, and therefore use of the *Brecht* standard, is applicable in cases where no error of constitutional proportion is found to have been committed by the trial court, remains to be determined.[6]

---

[6]     Indeed, while concurring in the applicability of *Brecht* as the proper standard of review, Justice Breyer suggested remanding the case to determine whether constitutional error existed in the first place, noting the interplay between the issue of whether a constitutional error occurred during the trial and its impact for purposes of addressing the question of harmless error.  *Fry*, 551 U.S. at 126-27, 127 S. Ct. at 2331(Breyer, J., concurring in part and dissenting in part).  The majority countered that the questions presented in the controlling *certiorari* petition did not address such "tangential and factbound questions" as to whether constitutional error in fact existed, but instead

Despite the Supreme Court's decision in *Fry*, the standard to be applied when a state appellate court has found a constitutional violation but has held that the violation is harmless has yet to be settled, at least in this circuit. *See Perkins v. Herbert,* 596 F.3d 161, 174-74 (2d Cir.), *cert. denied*, 131 S. Ct. 318 (2010).  The Second Circuit has identified two approaches that have been applied by various courts under such circumstances.  *Id.*  Under the first, applying *Brecht*, a federal court engaged in habeas review determines whether the constitutional error resulted in actual prejudice, meaning that it had a substantial and injurious effect or influence in securing the petitioner's conviction.  *Id.*  The other approach examines whether the state appellate court's determination that the error was harmless beyond a reasonable doubt represented an unreasonable application of clearly established Supreme Court precedent under *Chapman.  Id.*  Despite identifying these two differing approaches, in *Perkins* the court declined to rule which it would adopt, finding it unnecessary to do so since under either test the petition should have been denied.[7]  *Id.* at 176.

_____

limited review to whether *Chapman* or *Brecht* provides the governing standard.  *Id.* at 121, 127 S. Ct. at 2328 (Scalia, J.).

[7]      At least one circuit has taken the position that a habeas court must apply both tests, finding both a lack of reasonableness under the AEDPA/*Chapman* paradigm

In this instance it is doubtful that the evidentiary ruling now complained of, allowing the limited use of leading questions by the prosecution of a law enforcement witness, *see* TT. 396-97, is of a constitutional magnitude.  In any event, assuming that it is, under either *Brecht* or the AEDPA/*Chapman* protocol habeas relief would not be warranted.  The evidence against the petitioner was strong, consisting principally of the testimony of the victim, corroborated by her injuries and other physical evidence.[8]  The leading questions at issue elicited evidence that was duplicative of other evidence in the record, including the petitioner's own testimony.  *See* TT. 449-50, 465-67.  Thus, it seems clear that the testimony elicited through the use of arguably improper leading questions did not have a substantial or injurious effect in securing petitioner's conviction.

In its decision the Appellate Division applied a harmless error analysis, concluding that the error, if it occurred, was harmless, citing *People v. Konsistorum*, 3 A.D.3d 394, 769 N.Y.S.2d 901 (1st Dep't 2004). That decision, in turn, relied upon the Court of Appeals' seminal decision

---

and harm under *Brecht* before setting aside a conviction.  *See Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009).

[8]     It has been observed that the strength of the evidence is at the forefront of the harmless error analysis.  *Perkins*, 596 F.3d at 177.

regarding harmless error in *People v. Crimmins*, 36 N.Y.2d 230, 367

N.Y.S.2d 213 (1975).  In *Crimmins,* the Court of Appeals adopted a dual

standard for determining harmless error, concluding that in the case of an

error of constitutional magnitude the federal standard should be applied,

directing that reversal is not warranted where there was no reasonable

possibility that the constitutional error might have contributed to the

conviction, and it was harmless beyond reasonable doubt.  *Crimmins,* 36

N.Y.2d at 237, 367 N.Y.S.2d 213.  For evidentiary errors not rising to that

level, the court proposed a less exacting test, holding

> that an error is prejudicial in this context if the
> appellate court concludes that there is a significant
> probability, rather than only a rational possibility, in
> the particular case that the jury would have
> acquitted the defendant had it not been for the
> error or errors which occurred.

36. N.Y.2d at 242, 367 N.Y.S.2d 13.

Having reviewed the matter, I am unable to conclude that the

Appellate Division's harmless error analysis represented an unreasonable

application of clearly established Supreme Court precedent, including

*Chapman.*  Accordingly any evidentiary error cited, even if it rose to the

level of a constitutional violation, was nonetheless harmless regardless of

whether *Brecht* or *Chapman* is applied.

In sum, I conclude that petitioner was not deprived of a fundamentally fair trial by the evidentiary rulings cited, and that the court is precluded from reviewing those rulings based upon the Appellate Division's decision rejecting the argument on independent and adequate state court grounds, and additionally that the Appellate Division's harmless error analysis with regard to none of the three errors cited was not unreasonable.  I therefore recommend rejection of this third ground of petitioner's habeas petition.

     E.    Ground Four: Excessive and Harsh Sentence

In the last ground of his petition, Ross argues that the sentence imposed by the trial court was unduly harsh and excessive.  In its decision, the Appellate Division summarily rejected this argument.  *Ross,* 39 A.D.2d 789, 835 N.Y.S.2d 787.

Petitioner's challenge to his sentence implicates the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime."[9]  *Rummel v. Estelle*, 445 U.S. 263, 276,100 S. Ct. 1133

---

     [9]     That amendment provides that "[e]xcessive bails shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend VIII.

47

(1980).  It is well-established, however, that no federal constitutional issue, including under the Eighth Amendment, is presented where a sentence imposed by a state court falls in within the range prescribed by governing state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) ("[i]t is well settled. . . that a prison may not challenge the length of a sentence that does not exceed the maximum set by state law.");  *Willard v. New York,* No. 08-CV-1525 (JS), 2009 WL 4823365, at *6 (E.D.N.Y. Dec. 4, 2009) ("a sentence of imprisonment which is in the limits of a valid state statute simply is not cruel and unusual punishment in the constitutional sense.") (citations omitted).

Here the petitioner has conceded, and the court has concluded based upon its own independent review, that the sentence imposed by the trial court falls within the limits prescribed by the applicable penal law provisions.  *See* Amended Petition (Dkt. No. 7) Attachment (State Court Appellate Brief) at p. 53.  On his conviction for first degree assault, a Class B felony, *see* N.Y. Penal Law § 120.10, and as a second violent felony offender, petitioner was exposed to a determinate period of imprisonment of not less than ten nor more than twenty-five years.  N.Y.

Penal Law §§ 70.04(2)(3).  The second degree assault conviction, a Class

D Felony, *see* N.Y. Penal Law § 120.05, carried with it a potential

determinate prison term of between five and seven years.  N.Y. Penal Law

§§ 70.04(2), (3).  For his conviction of third degree criminal possession of

a weapon, a Class D Felony, N.Y. Penal Law § 265.02, petitioner was

similarly exposed to an indeterminate sentence with a minimum of four

and maximum of seven years of imprisonment.  N.Y. Penal Law § 70.06.

Accordingly, the aggregate determinate sentence of twenty years of

imprisonment imposed falls within these statutory ranges.  I therefore

recommend that petitioner's fourth and last ground for habeas relief be

rejected.

IV.    SUMMARY AND RECOMMENDATION

       In his petition in this matter, Ross has asserted four grounds for

habeas relief.  Certain of those four grounds fail to implicate a

constitutional violation, and review of some by this court is precluded

because the arguments now raised were rejected by the state courts on

independent and adequate grounds, or were procedurally forfeited.  As to

the remaining grounds the court finds no basis for habeas intervention,

applying the deferential standard required under the AEDPA.  Accordingly,

it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and

DISMISSED in all respect.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within FOURTEEN days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), and 72; *Roldan v.*

*Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:        December 6, 2010
              Syracuse, NY



Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Dejuan BERRY, Petitioner,
v.
William HULIHAN, Respondent.
**No. 08 Civ. 6557(LBS).**

Jan. 28, 2009.

West KeySummary
**Habeas Corpus 197**  ☞  **775(2)**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
         197III(C)4 Conclusiveness of Prior Determinations
            197k765 State Determinations in Federal Court
            197k775 Admissibility of Evidence; Arrest and Search
               197k775(2) k. Adequacy or Effectiveness of State Proceeding; Full and Fair Litigation.
Most Cited Cases
Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim that police lacked probable cause to arrest him, barring it from federal review. The petitioner was originally arrested after an undercover officer observed the defendant engage in a drug transaction. Upon his arrest, police discovered drugs and cash on the defendant's person. The petitioner did not alleged that the state courts failed to provide him appropriate corrective procedures to address his Fourth Amendment claim. Moreover, the petitioner availed himself of these corrective procedures by moving to suppress all physical and identification evidence from his arrest and was granted a suppression hearing. U.S.C.A. Const. amend. 4; 28 U.S.C. § 2254.

*MEMORANDUM & ORDER*

SAND, District Judge.

**\*1** Petitioner Dejuan Berry brings this pro se habeas corpus application pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claim arises from a judgment of conviction entered on April 1, 2004 in New York State Supreme Court, New York County, following his guilty plea to Criminal Possession of a Controlled Substance in the Fifth Degree. The Appellate Division, First Department, unanimously affirmed Petitioner's conviction. *People v. Berry,* 27 A.D.3d 201, 809 N.Y.S.2d 456 (App.Div.2006). Leave to appeal to the New York State Court of Appeals was denied. *People v. Berry,* 7 N.Y.3d 809, 822 N.Y.S.2d 484, 855 N.E.2d 800 (2006). Petitioner asserts a Fourth Amendment claim arguing that the police lacked probable cause to arrest and search him, as well as claims under the Sixth Amendment that he received ineffective assistance from both his trial and appellate counsel. For the following reasons, Petitioner's application is denied.

**I. Background**

At approximately 7:20 p.m. on August 1, 2003, an undercover police officer, Officer David Camacho, saw Petitioner hand a small object to a woman in exchange for money in front of 1305 Amsterdam Avenue in Manhattan. (Suppress. Hr'g Tr. at 10-11, 51-52, 57-58.) Believing that this was a drug transaction, Officer Camacho communicated a physical description of Petitioner and the alleged female buyer, via radio, to two police officers, Officers Morgan Jones and Jeffery Cabanillas, who were posted in a nearby, unmarked van. Shortly after receiving the communication, the two officers got out of the van and approached Petitioner and the alleged buyer. Under good lighting conditions, the officers recognized both Petitioner and the alleged buyer. Petitioner was fifteen feet away from the officers and was wearing clothes matching Officer Camacho's description. The alleged buyer also matched Officer Camacho's description. (Suppress. Hr'g Tr. at 16-17, 19-20, 24-25, 33-34, 36-37, 45, 67, 70-71,

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

74-75.) The officers approached Petitioner, identified themselves, and informed Petitioner that he was under arrest.[FN1] Upon apprehending Petitioner, Officer Jones made eye contact with Officer Camacho, who nodded to confirm that Officer Jones had apprehended the person who Officer Camacho had observed engaging in the alleged drug transaction. (Suppress. Hr'g Tr. at 17, 23.) Petitioner was found to be in possession of twenty-three vials of cocaine and $408 in cash. (Suppress. Hr'g Tr. at 17-18, 21-22, 40-41, 53-54, 67, 74.)

> FN1. The alleged female buyer got into a livery cab before the officers could reach her to ascertain whether she was in possession of any drugs.

A New York County grand jury charged Petitioner with Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Fifth Degree. Before trial, Petitioner's trial counsel moved to suppress both the confirmatory identification and the evidence recovered after Petitioner's apprehension. Petitioner was granted a *Mapp/Wade* hearing on February 17, 2004 to determine whether the evidence at issue was obtained illegally by law enforcement officers. In an oral ruling, Justice Uviller credited the testimony of all three officers and found that probable cause existed for Petitioner's arrest. Accordingly, the court denied Petitioner's motion to suppress the confirmatory identification, as well as the cocaine and currency recovered by the arresting officers. (Suppress. Hr'g Tr. 100-102.)

**\*2** On February 18, 2004, Petitioner pled guilty to Criminal Possession of a Controlled Substance in the Fifth Degree. At his sentencing on April 1, 2004, Petitioner made an oral, pro se motion challenging the suppression ruling. The motion was denied. Petitioner then appealed the suppression issue to the Appellate Division, First Department. Petitioner's appellate counsel argued that under the Fourth Amendment the physical evidence and confirmatory identification should have been suppressed because the police officers lacked probable cause to arrest and search Petitioner.

On March 2, 2006, the Appellate Division unanimously affirmed the conviction, holding that the trial court properly denied Petitioner's suppression motion. In letters dated March 7 and March 22, 2006, Petitioner applied to the New York Court of Appeals for leave to appeal. The People opposed the application. On August 11, 2006, the Court of Appeals denied Petitioner's leave to appeal.

On March 20, 2007, Petitioner filed a pro se petition for writ of error coram nobis with the Appellate Division, First Department, claiming that his appellate counsel erred by failing to assert a claim on direct appeal of ineffective assistance of trial counsel. Petitioner asserted that trial counsel failed to take the following actions in connection with the suppression hearing: (1) impeach Officers Jones and Camacho on the basis of prior grand jury testimony; (2) interview Officer Camacho prior to calling him as a witness; (3) call as a witness the assistant district attorney who presented Petitioner's case to the grand jury; (4) consult with Petitioner prior to the hearing; (5) call Petitioner as a witness at the hearing; (6) seek out and obtain a copy of certain video surveillance tapes of the area where Petitioner had been arrested; and (7) cite sufficient case law at the hearing in support of the suppression motion.

The Appellate Division summarily denied the petition. *People v. Berry,* 2007 N.Y.App. Div. LEXIS 8522 (App.Div. July 12, 2007). On September 23, 2007, Petitioner applied to the New York Court of Appeals for leave to appeal. The Court of Appeals denied leave on December 20, 2007. *People v. Berry,* 9 N.Y.3d 1004, 850 N.Y.S.2d 392, 880 N.E.2d 878 (2007). Petitioner raises the same arguments made in his petition for writ of error coram nobis in this petition. In addition, Petitioner asserts that trial counsel erred in challenging suppression via a *Mapp* hearing instead of a *Dunaway* hearing.

**II. Discussion:**

**a. Standard of Review**

A petitioner may not raise a claim in a Section 2254 habeas proceeding unless the claim has been fairly presented to the highest state court from which a decision can be had. 28 U.S.C. § 2254(b) (1)(A); *Picard v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

*O'Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney Gen. of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). To meet this exhaustion requirement, a petitioner must "fairly present to the state courts the substance of [the] claim" in a way that is "likely to alert the court to the claim's federal nature." *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord Cox v. Miller,* 296 F.3d 89, 99 (2d Cir.2002).

**\*3** For claims adjudicated on the merits by a state court, a deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act of 1996 applies. Under this standard, a petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or resulted in a decision that was based on an unreasonable determination of the facts presented to the state court. 28 U.S.C. § 2254(d)(1)-(2).

A writ may issue because a decision is contrary to clearly established Federal law if either the state court decision is contrary to Supreme Court precedent on a question of law or if the state decision is based on a set of facts materially indistinguishable from a relevant Supreme Court case and arrives at a result opposite to the decision reached by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Alternatively, a state court decision will be deemed an unreasonable application of Supreme Court precedent when the state court either "identifies the correct governing legal rule" from a relevant Supreme Court case but "unreasonably applies it to the facts" or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The unreasonable application clause requires the state court decision to be more than "incorrect or erroneous.... The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

**b. Fourth Amendment Claim**

Petitioner claims that the police lacked probable cause to arrest and search him. Petitioner has exhausted this claim by raising it in federal constitutional terms on direct appeal to the Appellate Division and then seeking leave to appeal to the New York Court of Appeals. Nevertheless, Petitioner's claim is not available to him on habeas review because Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim before the state courts.

It is settled law that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a contention that evidence recovered through an illegal search and seizure was introduced at trial. *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Graham v. Costello,* 299 F.3d 129, 133-34 (2d Cir.2002). Thus, in order to receive habeas review of a Fourth Amendment claim a petitioner must demonstrate either: (1) that the state failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

**\*4** Petitioner does not contend that New York's state courts failed to provide appropriate corrective procedures to address his Fourth Amendment claim. Such a contention would be of questionable merit given that "the federal courts have approved New York's procedure for litigating Fourth Amendment claims," embodied in Article 710 of the New York Criminal Procedure Law. *Id.* at 70 n. 1 (internal quotation omitted).

Moreover, Petitioner has not demonstrated that he was unable to avail himself of New York's procedures because of an unconscionable breakdown in the process. [FN2] *Id.* at 71. Petitioner availed himself of New York's corrective procedures by moving to suppress all physical and identification evidence. As a result, Petitioner was granted a suppression hearing. Petitioner thus clearly received a full and fair opportunity to litigate his Fourth Amendment claim in the state courts and is now barred from further review in this habeas proceeding. *See, e.g., Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

FN2. In his most recent briefing to the Court, Petitioner argues that the alleged ineffective assistance of his trial counsel created an unconscionable breakdown in the underlying process. As is addressed in a subsequent section of this memorandum, the Court finds that trial counsel's assistance was indeed effective. Accordingly, Petitioner's attempt to establish an unconscionable breakdown in the underlying process through his ineffective assistance of counsel claim is without merit. *Cf. Jackson v. Scully,* 781 F.2d 291, 297 (2d Cir.1986).

**c. Ineffective Assistance of Trial Counsel**

Petitioner's ineffective trial counsel claim is also dismissed.[FN3] Petitioner's claim is denied on the merits based on two defects. First, Petitioner's claim is barred by his guilty plea. Second, Petitioner's claim is plainly meritless under the standard for an ineffectiveness assistance of counsel claim set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

FN3. It should be noted that Petitioner's ineffective assistance of trial counsel claim is not exhausted. Petitioner only raised his ineffective assistance of trial counsel claim as a predicate to his ineffective assistance of appellate counsel claim in his coram nobis petition. A coram nobis challenge to appellate counsel's failure to raise a claim does not exhaust the underlying claim. *Turner v. Artuz,* 262 F.3d 118, 123 (2d Cir.2001). Petitioner recognized this defect and requested that his petition be held in abeyance until he had the opportunity to exhaust his state remedies. This Court denied that request in an order on January 5, 2009 on the grounds that the Court may deny a petitioner's claim on the merits pursuant to 28 U.S.C. § 2254(b)(2) even though a petitioner has not exhausted his claims. *See Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Accordingly, the Court's order of January 5, 2009 ordered Petitioner to respond to the merits of the

Government's reply brief. The Court finds the claim to be without merit upon reviewing his submission. For the reasons discussed above, the Court thus denies Petitioner's claim.

**1. Effect of Guilty Plea on Ineffective Assistance Claim**

Petitioner's ineffective assistance of trial counsel claim fails first as a result of his unconditional guilty plea while represented by counsel. "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (alteration in original)).

As explained by the Second Circuit, "claims of ineffective assistance of counsel relating to events prior to the plea that do not impact the voluntariness of the plea do not survive a guilty plea." *Vasquez v. Parrot,* 397 F.Supp.2d 452, 463 n. 5 (S.D.N.Y.2005). Petitioner's ineffective trial counsel claim alleges solely that counsel committed errors relating to the suppression hearing.[FN4] Because the claim does not relate in any way to the voluntariness of the plea, the claim is barred.

FN4. In his most recent briefing to the Court, Petitioner alleges that his plea was not voluntary because he was not aware of his trial counsel's ineffective assistance. As a subsequent section of this memorandum establishes, trial counsel's assistance was indeed effective. Accordingly, Petitioner's attempt to undermine the voluntariness of his plea through his ineffective assistance of counsel claim is without merit. *E.g., United States v. Torres,* 129 F.3d 710, 715-16 (2d Cir.1997); *Vasquez v. Parrot,* 397 F.Supp.2d 452, 463-4 (S.D.N.Y.2005).

**2. Petitioner's Ineffective Assistance Claim**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

### a. *Strickland Standard*

Additionally, Petitioner's ineffective assistance of trial counsel claim fails because he has not met the standard set forth in *Strickland v. Washington. Strickland* sets forth a two-part test to determine if counsel's assistance is ineffective: "First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." 466 U.S. at 687; *accord Henry v. Poole,* 409 F.3d 48, 62-63 (2d Cir.2005). This performance is to be judged by an objective standard of reasonableness and judicial scrutiny is to be "highly deferential." *Strickland,* 466 U.S. at 688-89. The Court noted that "[i]t is all too tempting ... to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

**\*5** Second, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The performance of counsel must be considered in the aggregate, with a view of the totality of the evidence before the judge or jury. *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 695-96). The inquiry should focus on the fundamental fairness of the trial and whether, despite a strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.*

### b. Effectiveness of Trial Counsel's Assistance

Petitioner's trial counsel provided effective assistance when viewed in the aggregate. Petitioner's trial counsel effectively advocated for suppression of the contested evidence. Counsel elicited that the police officers had no way of knowing whether the unidentified female had, in fact, purchased drugs. (Suppress. Hr'g Tr. at 38-40.) Counsel also challenged Officer Jones on the consistency

of his testimony by establishing that, contrary to his hearing testimony, the officer testified to the grand jury that when he exited the unmarked police van he followed the unidentified female buyer rather than Petitioner. (Suppress. Hr'g Tr. at 31-35.) Trial counsel also elicited testimony from Officer Camacho that although he allegedly saw a "small object" pass in exchange for money, he was unable to give any further details about the transaction. (Suppress. Hr'g Tr. at 87-88.) Counsel also established that Officer Camacho could not remember the precise contents of his radio report to the arresting officers. (Suppress. Hr'g Tr. at 88.)

In arguing the motion, counsel cogently challenged the basis for the search and arrest of Petitioner. Counsel noted that no drugs were recovered from the unidentified buyer, as they could not reach her before she entered into a livery cab, and that the identifying officer only saw Petitioner exchange a small, unknown object for currency, which could have been a perfectly innocent transaction. Moreover, counsel pointed out that there was no evidence that the location where Petitioner was arrested was drug-prone or that Petitioner was in a particular location for a long period of time interacting with a number of people. In her argument, counsel also stressed that there was no arrest of the alleged buyer of the drugs.

Petitioner raises a number of specific grounds to support his claim for ineffective assistance. Petitioner first asserts that there were inconsistencies in the police testimony that counsel did not pursue. This claim is without merit as counsel did raise inconsistencies in testimony, both on cross-examination and during the argument on the motion.

Moreover, the specific "inconsistencies" raised by Petitioner either are not inconsistent or are trivial. Petitioner's chief argument is that arresting officer Jones testified before the grand jury that he saw Officer Cabanillas recover the cocaine from Petitioner but that at the suppression hearing Officer Jones testified that he did not actually see Officer Cabanillas pull the cocaine from Petitioner's pocket. This inconsistency is trivial in nature; it is not reasonably probable that contesting this inconsistency would have altered the result of the suppression hearing. *E.g., United States v. Monteleone,* 257 F.3d 210, 219 (2d Cir.2001). Petitioner also faults counsel for failure to highlight that the judge at the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

suppression hearing instructed Officer Jones to restrict his testimony to a description of the circumstances and to avoid testifying as to his own conclusions concerning what the identifying officer observed. Neglecting to highlight this "inconsistency" clearly does not support an ineffective assistance claim.

**\*6** Petitioner's second claim is that counsel erred by failing to interview the identifying officer prior to calling him as a witness. Although failing to interview a witness can amount to ineffective assistance of counsel, by failing to identify any shortcomings in his counsel's cross-examination, Petitioner has not established how a failure to interview in his case amounted to ineffective assistance. *See Matura v. United States,* 875 F.Supp. 235, 238 (S.D.N.Y.1995).

Petitioner's third argument is that counsel should have introduced into evidence the prosecutor's "Data Information" form and should have called the assistant district attorney who presented the case to the grand jury as a witness. However, Petitioner does not establish what about the Data Information form is inconsistent with police testimony. Petitioner similarly offers nothing more than speculation about what relevant or discoverable information the prosecutor would have had to offer.[FN5]

FN5. Moreover, the judge effectively denied counsel's ability to call the prosecutor during a verbal exchange between Petitioner's counsel and the judge at the suppression hearing. (Suppress. Hr'g Tr. at 47-49.)

Petitioner's fourth claim is that his counsel failed to consult with him prior to the suppression hearing. Yet, "[p]etitioner's claims cannot ... rest on a bare allegation that his counsel did not consult with him sufficiently.... Rather, petitioner has the burden of proving that the alleged lack of communication and preparation by counsel prejudiced his defense." *Jones v. Conway,* 442 F.Supp.2d 113, 126 (S.D.N.Y.2006). Petitioner fails to provide such support for his claim.

Petitioner's fifth claim is that counsel's assistance was ineffective because counsel discouraged Petitioner from

testifying at the hearing. Petitioner claims that he wished to testify that was set up by the police and that the drugs were planted on his person. Petitioner does not, however, allege that counsel refused to let him testify on his own behalf. Petitioner only claims that he was discouraged from doing so because his testimony might be used against him at trial. This advice was based on a sound understanding of the law. *United States v. Jaswal,* 47 F.3d 539, 543-44 (2d Cir.1995). Moreover, given the facts of Petitioner's case the Court finds that counsel could have reasonably concluded that, as a tactical matter, Petitioner's proposed testimony was of so little value to his case that it would weaken his chances of success to testify on his own behalf.

Petitioner's sixth argument is that trial counsel erred in challenging suppression via a *Mapp* hearing, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), instead of a *Dunaway* hearing, *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), because a *Dunaway* hearing would have required the government to satisfy the *Aguilar-Spinelli* test for probable cause. This argument is clearly without merit. As an initial matter, Petitioner cites no case law supporting the argument that a *Dunaway* hearing requires a more stringent burden of proof for probable cause than a *Mapp* hearing. Moreover, Petitioner's brief does not establish that invocation of the *Aguilar-Spinelli* test would have altered the result such that but for counsel's alleged error the outcome of the hearing would have been different.

**\*7** Moreover, Petitioner's argument misstates the relevant difference between a *Mapp* hearing and a *Dunaway* hearing. The distinction between these types of hearings is not whether the *Aguilar-Spinelli* test for probable cause is triggered, but rather what type of evidence is being called into question by the criminal defendant. *Dunaway v. New York* addressed the "legality of custodial questioning on less than probable cause for a full-fledged arrest." 442 U.S. at 202 (citation omitted). Accordingly, a *Dunaway* hearing is used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial. *Edwards v. Mazzuca,* No. 00 Civ. 2290, 2007 U.S. Dist. LEXIS 18542, at \*29 n. 9 (S.D.N.Y. Oct. 15, 2007). In contrast, a *Mapp* hearing is used to determine whether physical evidence sought to be used against a criminal defendant was obtained illegally by law

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 233981 (S.D.N.Y.)
(Cite as: 2009 WL 233981 (S.D.N.Y.))

enforcement officers and thus is inadmissible at the criminal defendant's trial. *Id.* at *7 n. 4.

Petitioner finally concludes with two undeveloped claims: (I) counsel erred by failing to seek out and obtain a copy of certain surveillance tapes of the area where Petitioner was arrested and (2) counsel failed to cite authority to support her legal arguments. Petitioner does not, however, explain what evidence from this videotape would have exonerated him, and a review of the record yields that trial counsel was certainly not deficient with respect to the legal arguments made at the suppression hearing. There is no basis to assert that either of these actions would have affected the outcome of the suppression hearing in any way.

A review of trial counsel's conduct at the suppression hearing results in the conclusion that counsel's performance was effective and that it is not reasonably probable that but for counsel's alleged errors the result of the suppression hearing would have changed. Petitioner's ineffective assistance of trial counsel claim is dismissed on the merits.

**d. Ineffective Assistance of Appellate Counsel Claim**

Petitioner also brings a claim that he was denied effective assistance of appellate counsel because his appellate counsel failed to assert an ineffective trial counsel claim on direct appeal. Petitioner has exhausted this claim by raising it in federal constitutional terms in his coram nobis petition to the Appellate Division and then seeking leave to appeal to the Court of Appeals. Petitioner's claim is denied because the state court decision denying his coram nobis petition were neither contrary to, nor based upon, an unreasonable application of *Strickland v. Washington,*[FN6] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[FN7]

FN6. The Second Circuit has held that "[n]othing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001).

FN7. It is well-accepted that the *Strickland* standard satisfies the "clearly established Federal law" requirement of § 2254(d)(1). *Id.* at 309.

Petitioner has the burden of establishing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000). It is not enough for Petitioner to show that appellate counsel omitted a colorable argument, as counsel is not required to raise all colorable, nonfrivolous claims on appeal. *Smith v. Robbins,* 528 U.S. 259, 285, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). For reasons already addressed, Petitioner's ineffective assistance of trial counsel claim is without merit. Accordingly, appellate counsel's "failure to include a meritless argument does not fall outside of the wide range of professionally competent assistance to which Petitioner was entitled." *Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) (quotation omitted). Petitioner also fails the second *Strickland* prong, as he cannot establish a reasonable probability that the appeal would have been successful. *Strickland,* 466 U.S. at 694. Petitioner's ineffective appellate counsel claim is thus dismissed.

*8 The Court finds that Petitioner has not made a substantial showing of a violation of his constitutional rights and, therefore, a Certificate of Appealability will not issue. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S.D.N.Y.,2009.
Berry v. Hulihan
Slip Copy, 2009 WL 233981 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Melton George WILLIAMS, Petitioner
v.
Dennis J. BRESLIN, Superintendent, Respondent.
**No. 06-CV-2479 (SJF).**

Sept. 9, 2008.

Melton George Williams, Staten Island, NY, pro se.

New York State Attorney Generals Office, Joseph Huttler,
Brooklyn, NY, for Respondent.

**OPINION & ORDER**

FEUERSTEIN, District Judge.

**I. INTRODUCTION**

**\*1** On June 16, 1999, a judgment of conviction was
entered against petitioner Melton George Williams
(petitioner) in the Supreme Court of the State of New
York, Kings County (Firetog, J.). Following a bench trial,
petitioner was found guilty of one (1) count of rape in the
first degree (N.Y. Penal Law § 130.35(1)), three (3)
counts of sexual abuse in the first degree (N.Y. Penal Law
§ 130.65(1)), one (1) count of rape in the third degree
(N.Y. Penal Law § 130.25(1)), and one (1) count of
endangering the welfare of a child (N.Y. Penal Law §
260.10). Petitioner was sentenced to concurrent terms of
imprisonment of seven and one-half (7 1/2) to fifteen (15)
years for the first-degree rape count, two (2) to six (6)
years for the sexual abuse counts, one (1) to three (3)
years for the third degree rape count and one (1) year for
the endangering the welfare of a child count. On May 17,

2006, petitioner filed a petition in this Court seeking a writ
of habeas corpus pursuant to 28 U.S.C. § 2254. For the
reasons set forth herein, the petition is denied and the
proceeding is dismissed.

**II. BACKGROUND**

**A. Factual Background**

The following facts were taken from the trial transcripts:

On the afternoon of May 31, 1998, thirteen (13) year-old
Ranisha Grossett (Grossett complainant) was asked to
babysit for her two cousins at petitioner's apartment so that
petitioner could visit his daughter in the hospital. (Trial
Transcript [Tr.] at 15, 17, 172). When Grossett arrived,
only petitioner and his one (1) year-old son were present,
as petitioner's seven (7) year-old daughter was at church.
(Tr. at 18, 19-20).

While Grossett was sitting in a chair with her (1) one
year-old cousin, petitioner sat beside her and began
touching her inappropriately. (Tr. at 19). After telling
petitioner to stop and pushing herself away from him,
Grossett retreated to petitioner's daughter's bedroom. (Tr.
at 20). Shortly thereafter petitioner entered the bedroom,
"threw" Grossett on the bed, got on top of her and began
kissing and touching her. (Tr. at 20-21). Grossett
unsuccessfully attempted to push petitioner off of her. (Tr.
at 21-22). Despite petitioner's repeated verbal and physical
attempts to stop petitioner, (Tr. at 21, 23, 25-26),
petitioner attempted to undress her by pulling down her
tights and ripping her shirt, (Tr. at 22, 24). Though
petitioner was unsuccessful in fully undressing Grossett,
he managed to dislodge one of her legs from her pants and
proceeded to engage in sexual intercourse with her. (Tr. at
24).

Following the incident, Grossett went to the bathroom and
attempted to clean and re-dress herself. (Tr. at 27). She
then went back into the bedroom where the encounter had
taken place, packed up her belongings and waited for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

petitioner to leave. (Tr. at 28).

After petitioner left the apartment, Grossett attempted to call her aunt but was unable to reach her immediately and instead left multiple messages. (Tr. at 29-30). When Grossett's aunt finally returned her telephone call, Grossett relayed what had happened and her aunt went to petitioner's apartment. (Tr. at 32). Grossett returned home, told her mother about the incident and the police were notified. (Tr. at 33-34).

**\*2** The police arrived at Grossett's home, took a statement from her and proceeded to petitioner's apartment. (Tr. at 81). Arriving at petitioner's residence, the police knocked on the door and petitioner answered, identified himself as Melton Williams and confirmed that his niece had been there earlier that day. (Tr. at 82). The police then obtained petitioner's permission to enter his apartment and "see" his daughter's bedroom. (Tr. at 83). Upon entering the bedroom, the police observed freshly stained sheets on the bed, which were taken into custody. (Tr. at 83-84).

The police asked petitioner to step into the hallway where they placed him under arrest and read him his *Miranda* rights. (Tr. at 86). At the police station, petitioner was processed, his clothing was removed and taken into custody, and a detective was called to the station to interview petitioner. (Tr. at 87, 109-10). Petitioner made a statement as to what had occurred on May 31, 1998. (Tr. at 111-12).

B. Procedural History

On May 28, 1999, following a bench trial, petitioner was found guilty of one (1) count of rap e in the first degree, three (3) counts of sexual abuse in the first degree, one (1) count of rape in the third degree and one (1) count of endangering the welfare of a child. On June 16, 1999, petitioner was sentenced to concurrent terms of imprisonment of seven and one-half (7 1/2) to fifteen (15) years for the first-degree rape count, two (2) to six (6) years for the sexual abuse counts, one (1) to three (3) years for the third degree rape count and one (1) year for the endangering the welfare of a child count.

Petitioner timely filed a direct appeal of his conviction with the New York Supreme Court, Appellate Division, Second Department (Appellate Division), in which he alleged: (1) that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt on the charges of rape in the first degree and sexual abuse in the first degree; (2) that the trial court's verdict was against the weight of the evidence; and (3) that his sentence was harsh and excessive. On December 31, 2001, the Appellate Division affirmed petitioner's judgment of conviction finding, *inter alia,* that the evidence was legally sufficient, the verdict was not against the weight of the evidence, the sentence imposed was not excessive and plaintiff's remaining contentions were without merit. *People v. Williams,* 289 A.D.2d 600, 735 N.Y.S.2d 212 (App.Div.2001). On March 29, 2002, the New York State Court of Appeals denied petitioner's application for leave to appeal the order of the Appellate Division. *People v. Williams,* 97 N.Y.2d 763, 769 N.E.2d 370, 742 N.Y.S.2d 624 (2002).

On December 9, 2002, petitioner moved, *pro se,* in New York State Supreme Court to vacate his judgment of conviction pursuant to N.Y.C.P.L. §§ 440.10 and 440.20. In his motion papers, petitioner claimed to have received ineffective assistance of trial counsel based upon his defense counsel's purported failed to; (1) introduce evidence that the complainant lied about an unrelated incident which allegedly involved petitioner; (2) elicit evidence of the complainant's alleged sexual activities; (3) call defense character witnesses; (4) investigate the admissibility of the "outcry" tape and complainant's ripped clothing; and (5) object at petitioner's sentencing to inaccuracies in the probation report.

**\*3** By order entered June 18, 2003, the New York State Supreme Court summarily rejected petitioner's various ineffective assistance claims on the merits pursuant to N.Y.C.P.L. §§ 440.30(4)(b), (c). On December 30, 2003, petitioner was granted leave to appeal the denial of his motion to vacate. By decision and order dated December 12, 2005, the Appellate Division affirmed the denial of petitioner's motion to vacate, finding that the trial court's summary denial of petitioner's motion was "provident exercise of discretion" and that petitioner had failed to establish that "there were no strategic or other legitimate explanations for counsel's alleged shortcomings * * * or that [petitioner] was deprived of meaningful

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

representation." *People v. Williams,* 24 A.D.3d 575, 805 N.Y.S.2d 295 (App.Div.2005) (citations omitted).

On January 31, 2006, the New York State Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's December 12, 2005 order. *People v. Williams,* 6 N.Y.3d 782, 844 N.E.2d 804, 811 N.Y.S.2d 349 (2006).

On or about May 17, 2006, petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging: (1) that his conviction of rape in the first degree and sexual abuse in the first degree was against the weight of the evidence; (2) prosecutorial misconduct; and (3) ineffective assistance of trial counsel.

III. DISCUSSION

A. The AEDPA

1. Exhaustion

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs applications of incarcerated state court defendants seeking federal habeas corpus relief. Pursuant to the strictures outlined in the AEDPA, before a federal court is permitted to consider an application for habeas corpus relief, the petitioner must have exhausted all remedies available in the state court system. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 808 (2d Cir.2000). The AEDPA exhaustion requirement is met if: (1) petitioner "has exhausted the remedies available in the courts of the state;" (2) petitioner demonstrates that "there is an absence of available State corrective process" for adjudicating the claim(s); or (3) though a state court process is available, "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1); *see also Fama,* 235 F.3d at 808.

The exhaustion requirement mandates that the petitioner "fairly present" both the factual and legal premises of his claim(s) to the highest state court. *See Picard,* 404 U.S. at 275, 92 S.Ct. at 512 (stating that "once the federal claim[s] [have] been presented to the state courts, the exhaustion requirement is satisfied."); *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). In order for a petitioner to have "fairly presented" his claim(s), the petitioner "must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Atty. Gen. of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982); *see also Picard,* 404 U.S. at 276-77, 92 S.Ct. at 512-13. Specifically, this requires the petitioner to have clearly articulated all of the "essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." [FN1] *Daye,* 696 F.2d at 191; *see also Baldwin,* 541 U.S. at 32, 124 S.Ct. at 1351 (stating that "ordinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material ... that does so."). Where a petitioner presents additional facts to the federal court which either materially alter the claim or crucially affect its determination, the petitioner must present this evidence to the state court before the federal court is permitted to consider the claim. *Anderson v. Cassles,* 531 F.2d 682, 684 (2d Cir.1976).

> FN1. The court in *Daye* enumerated four specific methods by which a petitioner who has not cited a specific constitutional provision would nonetheless be deemed to have "fairly presented" his claim to state courts, including: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye,* 696 F.2d at 194.

**\*4** Where a district court is faced with a "mixed" petition that contains both exhausted and unexhausted claims it may: (1) stay the proceeding pending complete exhaustion of state remedies; [FN2] (2) dismiss the petition, without prejudice, until the claims have been exhausted in state

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

court, unless such review would be precluded pursuant to the AEDPA's one-year statute of limitations; (3) afford petitioner an opportunity to withdraw the unexhausted claim(s); or (4) deny the petition on the merits pursuant to 28 U.S.C. § 2254(b) (2). *See, e.g.* Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir.2003); Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir.2002). The petition in the instant case contains both exhausted and unexhausted claims. FN3 Upon reviewing the options available to this court as enumerated *supra,* petitioner's petition is denied on the merits for the reasons set forth below.

> FN2. The Supreme Court has opined that a stay and abeyance should only be available in "limited circumstances" and that such a measure is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." In addition, the district court would be deemed to have abused its discretion if it were to grant petitioner a stay "when [petitioner's] unexhausted claims are plainly meritless." Rhines v. Weber, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005).

> FN3. Petitioner's claim that his trial counsel "advised him not to have a trial by jury" because "it would be a waste of time and too much work for [counsel]" and that counsel allegedly bribed the petitioner to forego a jury trial by "giving [petitioner] a thousand dollars by way of reducing his attorney's fees, [and] by telling [petitioner] to keep the remaining money owed to [counsel] (Petition at 6), whether based on a theory of ineffective assistance of trial counsel or depriving ' petitioner of a fair trial, was not raised in the state courts and cannot be deemed exhausted since petitioner is not procedurally barred under New York State law from filing a successive 440.10 motion incorporating these factual allegations which were omitted from the first motion. Under N.Y.C.P .L. § 440.10(3)(c), a state court "may deny" a successive motion to vacate where "the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." However, since § 440.10(3)(c), by its terms, makes such denials discretionary and does not

impose an absolute bar on successive motions, petitioner cannot be said to be procedurally barred from raising this allegation in a subsequent motion. *See* Bell v. Miller, No. 05 CV 0663, 2005 WL 1962413, at *5 (E.D.N.Y. Aug. 12, 2005), *rev'd on other grounds,* 500 F.3d 149 (2d Cir.2007); Bonilla v. Portuondo, No. 00 Civ. 2369, 2004 WL 350694, at *15 (S.D.N.Y. Feb. 26, 2004) (holding that N.Y.C.P.L. § 440.10(3)(c) does not create a procedural bar from filing a successive motion and any denial is discretionary), *report and recommendation adopted by,* 2004 WL 1782174 (S.D.N.Y. Aug.9, 2004).

2. Procedural Default

Where a state court decision rests upon independent and adequate state procedural grounds, a federal habeas court is barred from reviewing the claims. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); Garcia v. Lewis, 188 F.3d 71, 77-82 (2d Cir.1999). This is true even where the state court reaches the merits of petitioner's claims as an alternative holding. *See* Harris, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044, (stating that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding ... [and] as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision" a federal habeas court is precluded from reviewing the claims.) (emphasis in original). Despite the operation of the independent and adequate state ground doctrine, petitioner's claims may be reviewed by a federal court where he can "demonstrate cause[ FN4 ] for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U .S. at 750, 111 S.Ct. at 2565.

> FN4. Under the "cause and prejudice" test, sufficient "cause" will only be found where petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753, 111 S.Ct. at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

2566 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). In addition, "attorney ignorance or inadvertence" will not constitute sufficient "cause," as the attorney acts as petitioner's agent and therefore in the absence of a constitutional violation "petitioner bears the risk ... for all attorney errors made in the course of the representation. *Coleman,* 501 U.S. at 753-54, 111 S.Ct. at 2566-67.

**3. Standard of Review for Claims Adjudicated on the Merits**

Pursuant to the AEDPA, an application for a writ of habeas corpus that has met the procedural prerequisites shall not be granted unless the claim was adjudicated on the merits in state court and the state court decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is deemed to have been made on the merits where it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001); *Jimenez v. Walker,* 458 F.3d 130, 140 (2d Cir.2006). Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413, 120 S.Ct. at 1523. Pursuant to this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522. In addition, under the AEDPA, a state court's determination of factual issues "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Sufficiency of the Evidence**

**1. Weight of the Evidence Claim**

**\*5** Petitioner's claim that his conviction was against the weight of the evidence fails to raise a federal constitutional issue and is therefore not cognizable on habeas review. *Douglas v. Portuondo,* 232 F.Supp.2d 106, 116 (S.D.N.Y.2002); *Santana v. Poole,* No. CV-03-3946, 2006 WL 3483923, at \*9 (E.D.N.Y. Nov.30, 2006). A weight of the evidence argument is a pure state law claim grounded in N.Y.C.P.L. § 470.15(5), which empowers the intermediate appellate courts of New York to make weight of the evidence determinations. *Correa v. Duncan,* 172 F.Supp.2d 378, 381 (E.D.N.Y.2001). Unlike a sufficiency of the evidence claim which is grounded on federal due process principles, *see Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991), petitioner's weight of the evidence argument fails to assert a federal claim reviewable under 28 U.S.C. § 2254(a). Rather, petitioner simply "raises an error of state law for which habeas review is not available." *Douglas,* 232 F.Supp.2d at 116; *Poole,* 2006 WL 2483923, at \*9.

**2. Sufficiency of the Evidence**

Although petitioner failed to explicitly raise a sufficiency of the evidence claim in his federal habeas corpus petition, this court will address this claim *sua sponte* as petitioner is a *pro se* litigant, *see Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (internal citation omitted); *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (maintaining that "we read the pleadings of a pro se litigant liberally and interpret them 'to raise the strongest arguments that they suggest.' ") (internal quotations and citations omitted), and the state courts interpreted his claim as raising a legal sufficiency argument.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

The Appellate Division, Second Department, found petitioner's sufficiency of the evidence claim "unpreserved for appellate review" pursuant to N.Y.C.P.L. § 470.05(2),[FN5] *People v. Williams,* 289 A.D.2d at 600-01, 735 N.Y.S.2d 212, and, alternatively, deemed it to be without merit since the evidence, viewed in the light most favorable to the prosecution, "was legally sufficient to establish the element of forcible compulsion as to those charges beyond a reasonable doubt." *Id.* at 601, 735 N.Y.S.2d 212. Since the Appellate Division clearly and explicitly invoked a state procedural rule "as a separate basis for [its] decision," *Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044, and petitioner has failed to allege cause for the default, actual prejudice, or that a fundamental miscarriage of justice would result if the claim were not reviewed, this claim is barred from federal habeas review. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

> FN5. Under N.Y.C.P.L. § 470.05(2) "an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review." *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) (citing *People v. Jones,* 81 A.D.2d 22, 29, 440 N.Y.S.2d 248 (App.Div.1981)). In addition, such an objection must be made "with sufficient specificity to enable the trial court to respond." *Id.* In the instant case, the Appellate Division clearly stated that petitioner's claim of insufficiency of the evidence was unpreserved for appellate review as "[petitioner] did not specify this ground in his motion to dismiss at trial." *People v. Williams,* 289 A.D.2d at 600, 735 N.Y.S.2d 212.

C. Prosecutorial Misconduct

Petitioner alleges prosecutorial misconduct as the second ground in his habeas petition and claims that he raised the issue in his N.Y.C.P.L. § 440.10 motion to the trial court. However, review of petitioner's affidavit in support of his motion to vacate, as well as the trial court's opinion denying petitioner's motion, reveals that petitioner failed to fairly present this claim to the New York State courts. *See Picard,* 404 U.S. at 275, 92 S.Ct. at 512; *Daye,* 696 F.2d at 191. Petitioner's arguments presented in support of

his motion to vacate referred only to the allegedly ineffective assistance of his trial counsel. The only allusion to prosecutorial misconduct in the state courts was petitioner's assertion that the prosecutor had been informed that an allegation concerning petitioner which was made by the complainant was allegedly false, and that if proven false, such information would be exculpatory and thus should have been given to the court.[FN6] However, this claim is insufficient to have constituted a "fairly presented" claim for prosecutorial misconduct since petitioner failed to set forth both the factual and legal premises of his prosecutorial misconduct claim in the state courts. Therefore, petitioner's prosecutorial misconduct claim has not been properly exhausted.

> FN6. The complainant's allegedly false statement was contained in defendant's pre-sentence probation report and centered on an unrelated incident where petitioner allegedly confronted the complainant near her school and made an obscene gesture in her direction.

**\*6** Since petitioner failed to raise his claim of prosecutorial misconduct on direct appeal, the claim is procedurally defaulted pursuant to N.Y.C.P.L. § 440.10(2)(c) (requiring denial of a motion based on a constitutional violation where defendant's claims concern a matter of record and therefore would be appropriate only on direct appeal); *see Sweet v. Bennett,* 353 F.3d 135, 139 (2d Cir.2003). Where a petitioner has failed to exhaust his state court remedies and the court to which he must present his claim would deny the claim on procedural grounds, a federal court must also deny the claim as procedurally defaulted. *Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. at 2557; *see also Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991). Since petitioner has failed to allege the requisite "cause" and "prejudice" for the default and has not attempted to show that a fundamental miscarriage of justice would result should this court decline to review his claim, *see Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565, this claim is precluded from habeas review.

D. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance based upon his: (1) failure to introduce

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

evidence that the complainant had allegedly lied in a collateral incident involving petitioner; (2) failure to elicit evidence of the complainant's sexual activities; (3) failure to call character witnesses; (4) failure to investigate and challenge the admissibility of the "outcry" tape; (5) failure to investigate and challenge the admissibility of the complainant's ripped clothing; and (6) advice to petitioner to forego a jury trial.[FN7]

> FN7. Although this particular claim is unexhausted, *see* discussion *supra* n. 3, it will be examined on the merits pursuant to 28 U.S.C. § 2254(b)(2).

It is undisputed that all of petitioner's claims of ineffective assistance of trial counsel that were considered by the state court were determined on the merits.[FN8] This court is required to accord substantial AEDPA deference to the state court's decision. 28 U.S.C. § 2254(d)(1), (e)(1); *see also Jimenez,* 458 F.3d at 146 (stating that "AEDPA deference is due to [a state court's] rejection of [a petitioner's claim] if that judgment was an 'adjudication on the merits.' ") (internal citation omitted); *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002).

> FN8. The state trial court denied the majority of petitioner's ineffective assistance claims without conducting a hearing pursuant to N.Y.C.P.L. § 440.30(4)(b) and (c). Although the trial court characterized those claims as being "procedurally barred," section 440.30(4) does not constitute an "independent and adequate state procedural ground" that would preclude federal habeas review of the affected claims. Indeed, application of N.Y.C.P.L. § 440.30(4) constitutes an adjudication on the merits. *See Garcia v. Portuondo,* 104 Fed. App'x. 776, 779 (2d Cir. Jul.19, 2004); *Lou v. Mantello,* No. 98-CV-5542, 2001 WL 1152817, at *9 n. 9 (E.D.N.Y. Sept.25, 2001).

The Sixth Amendment mandates that a criminal defendant be afforded effective assistance of defense counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449,

25 L.Ed.2d 763 (1970)). In order to prevail under a theory of ineffective assistance of counsel, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness" measured "under prevailing professional norms" and (2) "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.[FN9] As the Second Circuit has stated, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001).

> FN9. The performance and prejudice prongs set forth by *Strickland* may be addressed in either order, and if it appears to the reviewing court that the petitioner's claim would clearly fail due to lack of sufficient prejudice, that course should be followed. In addition, if petitioner fails to satisfy the prejudice prong of *Strickland,* it is unnecessary for the court to evaluate whether the performance prong has been met. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

*7 A court reviewing a claim of ineffective assistance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and this requires that petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (internal citation omitted). In addition, the reviewing court is not permitted to engage in a probing inquiry that would take advantage of the "distorting effects of hindsight." *Id.* Instead, "a court deciding an ... ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066; *see also Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007), *cert. denied* --- U.S. ----, 128 S.Ct. 1083, 169 L.Ed.2d 823 (2008) (counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial).

A petitioner cannot prevail under a theory of ineffective assistance merely because there is a disagreement over

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

counsel's trial strategy. *Singleton v. Duncan,* No. 03-CV-561, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006). "Among the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel are the determinations regarding the defense strategy adopted at trial." *Gluzman v. United States,* 124 F.Supp.2d 171, 174 (S.D.N.Y.2000) (citing *United States v. Simmons,* 923 F.2d 934, 956 (2d Cir.1991)). *See also Strickland,* 466 U.S. at 690-91, 104 S.Ct. at 2066 (stating that "strategic choices made after thorough investigation of law and facts ... are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Henry v. Poole,* 409 F.3d 48, 63 (2d Cir.2005); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005).

The Appellate Division affirmed the denial of petitioner's motion to vacate, finding that he "failed to establish, prima facie, that there were no other legitimate explanations for counsel's alleged shortcomings or that [petitioner] was deprived of meaningful representation." *Williams,* 24 A.D.3d at 575-76, 805 N.Y.S.2d 295. Under the AEDPA, factual findings made by a state court "shall be presumed correct" and the petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *See Rice v. Collins,* 546 U.S. 333, 338-39, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006). With regard to petitioner's first five ineffective assistance of trial counsel claims, petitioner has failed to meet his burden of rebutting the trial court's findings by clear and convincing evidence as required under 28 U.S.C. § 2254(e)(1). Furthermore, the Appellate Division's affirmance of the trial court's decision was not contrary to, nor did it involve an unreasonable application of, the *Strickland* standard.

**8** In any event, petitioner has failed to rebut the strong presumption of effective assistance with a showing that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. When taken in the aggregate, and in light of all the surrounding circumstances, petitioner's first five claims of ineffective assistance strongly support the notion that trial counsel did in fact engage in sound trial strategy when evaluated from counsel's perspective at the time such decisions were made. *See id.,* at 689-90, 104 S.Ct. at 2065

(stating that "a fair assessment of attorney performance requires [a reviewing court] ... to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). After careful review of the entire record and all supporting documentation relating to these first five allegations of ineffective assistance, petitioner's trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Since petitioner has failed to make a sufficient showing under the "performance" prong of *Strickland,* these claims are without merit.[FN10]

FN10. Because petitioner has failed to meet the "performance" prong of *Strickland* as to these five claims, whether petitioner could have met his burden with respect to the "prejudice" prong of the inquiry need not be examined. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 (stating that "there is no reason for a court to ... address both components of the inquiry if the defendant makes an insufficient showing on one.").

Petitioner's final argument in support of his claim of ineffective assistance is similarly without merit. Though petitioner conclusorily asserts in his petition that "counsel advised him not to have a trial by jury saying, it would be a waste of time and too much work for [counsel]," (Petition at 6), and that counsel bribed him to forego a jury trial by "giving [petitioner] one thousand dollars by way of reducing his attorney's fees," *id.,* there is no evidence in the record that corroborates those claims.[FN11] *See Utenyshev v. Portuondo,* No. 00-CV-6529, 2003 WL 21499841, at *12 (E.D.N.Y. June 11, 2003) (finding petitioner's claims of ineffective assistance of trial counsel to be merit less where petitioner proffered no extrinsic evidence in support of his claims and where evidence in the trial transcript itself directly refuted the allegations); *Johnson v. Fisher,* No. 04-CV-5120, 2006 WL 1912737, at *4 (E.D.N.Y. July 11, 2006) (finding petitioner's unsupported allegations that his attorney coerced him into foregoing a jury trial to be without merit where the record clearly illustrated that petitioner's waiver was knowingly, intelligently and voluntarily given).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)
(Cite as: 2008 WL 4179475 (E.D.N.Y.))

FN11. The record in this case actually refutes petitioner's claim as it clearly demonstrates that petitioner was advised of his right to a jury trial after which he knowingly and voluntarily waived this right. (Tr. at 70). For example, the trial judge explicitly asked petitioner before trial whether he had discussed this choice with his attorney to which petitioner responded "yes." In addition, the jury trial waiver was reduced to writing and signed by petitioner and his attorney in open court after which it was made a court exhibit. Tr. at 69, 71. *See, e.g.* Fed.R.Crim.P. 23(a) (requiring that the right to jury trial be waived explicitly in writing); *McMahon v. Hodges,* 382 F.3d 284 (2d Cir.2004) (stating that "an accused may waive even fundamental rights if the proper safeguards are in place to ensure that the waiver is voluntary and intelligent"); *Johnson v. Fisher,* No. 04-CV-5120, 2006 WL 1912737, at *4 (E.D.N.Y. July 11, 2006) (stating that a defendant's jury trial waiver will be considered valid "so long as the waiver is knowingly, intelligently and voluntarily given").

In any event, though the right to trial by jury in criminal cases is a fundamental constitutional right, *see Duncan v. Louisiana,* 391 U.S. 145, 157-58, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968), a defendant may waive the right to a trial by jury. *Id.* at 158, 88 S.Ct. at 1452. Whether to forego a jury trial in a particular case is generally regarded as a tactical decision fairly encompassed within the overall defense strategy utilized by counsel. *See United States v. Ortiz Oliveras,* 717 F.2d 1, 4-5 (1st Cir.1983) (holding that defense counsel did not render ineffective assistance in pursuing a bench trial where the evidence against defendant was strong and counsel could have reasonably determined that the chance of acquittal was more likely if the trial was held before a judge rather than a jury and where defendant voluntarily agreed to the strategy at the time); *Steele v. United States,* No. 04 Civ. 6918, 2005 WL 704868, at *12 (S.D.N.Y. Mar.29, 2005) (finding defense counsel's strategy of pursuing a bench trial was not deficient considering the overwhelming evidence against the defendant); *Davila v. Sullivan,* No. 87 Civ. 2981, 1987 WL 19958, at *2 (S.D.N.Y. Nov.10, 1987) (finding that trial counsel's advice to forego a jury trial was "a tactical decision which cannot constitute ineffective assistance."); *Morales v. United States,* No. 97 CIV. 3892, 1998 WL 171448, at *1 (S.D.N.Y. Apr 14, 1998) (stating that

"counsel's [strategic] decision to waive a jury ... was more than reasonable" where the record demonstrated that the waiver was voluntarily made by petitioner). Therefore, counsel's encouragement to forego a jury trial in the instant case does not constitute ineffective assistance, especially in light of the underlying crimes at issue in this case which would likely inflame a lay jury, and the overwhelming evidence of petitioner's guilt. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *see also Steele,* 2005 WL 704868, at *12 (opining that "defense counsel's strategy of pursuing a bench trial was sound, or at the very least not deficient, considering the overwhelming evidence against [defendant]."). Since petitioner has failed to demonstrate that his counsel's determination to forego a jury trial was a choice that existed outside of the "wide range of reasonable professional assistance" afforded to trial counsel under the "performance" prong of *Strickland,* this claim is without merit.

III. CONCLUSION

*9 The petition for a writ of habeas corpus is denied in its entirety and the proceeding is dismissed. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Luciadore v. New York State Div. Of Parole,* 209 F.3d 107, 112 (2d Cir.2000); *Kellogg v. Strack,* 269 F.3d 100, 102 (2d Cir.2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

SO ORDERED.

E.D.N.Y.,2008.
Williams v. Breslin
Not Reported in F.Supp.2d, 2008 WL 4179475 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.
**No. 00-CV-5673JG.**

Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197** 🔑 **603.9**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General

197k603 Limitations, Laches or Delay
    197k603.9 k. Pursuit of other remedies.
Most Cited Cases
   (Formerly 197k603)
State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110** 🔑 **1930**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1921 Introduction of and Objections to Evidence at Trial
               110k1930 k. Identification. Most Cited Cases
   (Formerly 110k641.13(6))
Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110** 🔑 **1951**

110 Criminal Law

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1951 k. Deliberations and verdict. Most Cited Cases
(Formerly 110k641.13(2.1))
Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant had known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ☜ 1968**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1966 Appeal
110k1968 k. Preservation of error for appeal. Most Cited Cases
(Formerly 110k641.13(7))
Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

**[5] Habeas Corpus 197 ☜ 366**

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k362 Particular Remedies or

Proceedings
197k366 k. Direct review; appeal or error. Most Cited Cases

**Habeas Corpus 197 ☜ 378**

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k374 Availability and Effectiveness of State Remedies
197k378 k. Availability at time of petition. Most Cited Cases
Federal habeas petitioner's claim, that police seized him without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

**[6] Habeas Corpus 197 ☜ 366**

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k362 Particular Remedies or Proceedings
197k366 k. Direct review; appeal or error. Most Cited Cases

**Habeas Corpus 197 ☜ 401**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
            197k401 k. In general. Most Cited Cases

Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 &#128273;    495**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k495 k. Witnesses; examination. Most Cited Cases

Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 &#128273;    366**

197 Habeas Corpus
   197I In General

197I(D) Federal Court Review of Petitions by State Prisoners
   197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
      197k362 Particular Remedies or Proceedings
         197k366 k. Direct review; appeal or error. Most Cited Cases

**Habeas Corpus 197 &#128273;    368.1**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
         197k368 Necessity for Repetition or Pursuit of Several Remedies
            197k368.1 k. In general. Most Cited Cases

**Habeas Corpus 197 &#128273;    378**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
         197k374 Availability and Effectiveness of State Remedies
            197k378 k. Availability at time of petition. Most Cited Cases

Federal habeas petitioner's claim, that prosecutor's questioning of him constituted a *Sandoval* violation, was procedurally defaulted; petitioner asserted claim on direct appeal, but failed to include it in his application for leave to appeal further or in any of his other motions, so that claim was unexhausted, claim could no longer be exhausted as 30-day period to make application for leave to appeal had expired, petitioner failed to show cause and resulting prejudice, and federal court's failure to consider claim would not result in miscarriage of justice.

Chanel Senor, Great Meadow Correctional Facility, Comstock, Petitioner Pro Se.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Victor Barall, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

*1 On January 10, 1994, a jury in Kings County found petitioner Chanel Senor guilty of murder in the second degree (N.Y. Penal Law § 125.25[1] ) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03). Senor was sentenced to concurrent terms of imprisonment of twenty years to life for the murder conviction and two to six years for the weapon possession conviction. He is currently incarcerated pursuant to that judgment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) his trial counsel failed to provide him effective assistance; (2) his appellate counsel failed to provide him effective assistance; (3) the police seized him without probable cause, violating his Fourth Amendment rights; (4) he did not voluntarily consent to accompany the arresting officers to the precinct; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation of the court's ruling in a pre-trial hearing deprived him of his right to a fair trial.

For the reasons set forth below, the petition is denied.

BACKGROUND

On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

Detective Anthony Burzotta, investigating the crime,

subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups. Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The court sentenced him as described above.

On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a *pro se* supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his *pro se* supplemental brief, were either unpreserved for appellate review or without merit. *See* People v. Senor, 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN1]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

FN1. Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause: (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21, 1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested leave to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate

Division denied Senor's application for a writ of error *coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. *See* People v. Senor, 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,* No. 94-01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's motion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See* People v. Senor, 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999. On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00-CV-5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998), the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective date of AEDPA) in which to file for federal habeas relief. *See id. at 103.* Pursuant to § 2244(d)(2), the time during which a properly-filed application for state post-conviction relief is pending shall not be counted in calculating the one-year grace period.

FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could

have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state appellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

FN3. Senor was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30-day period for seeking review in the Court of Appeals expired. *See* N.Y.Crim. Proc. Law § 460.10(5)(a).

**\*4** Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999. That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id.* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this

petitioner because he failed to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98-CV-4567, 2002 WL 655207, at *4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00-CV-1331, 2002 WL 1467708, at * 3 (E.D.N.Y. May 7, 2002) (same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01-CV-2173, 2001 WL 1098001, at *2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

_v. Taylor,_ 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); _see also_ Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." _Williams,_ 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." _Id._ Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." _Gilchrist v. O'Keefe,_ 260 F.3d 87, 93 (2d Cir.2001) (citing _Williams,_ 529 U.S. at 411). Interpreting _Williams,_ the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." _Id._ (citing _Francis S. v. Stone,_ 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in _Sellan v. Kuhlman,_ 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

_Id._ at 312.

**C.** _Senor's Claims_

**1.** _Ineffective Assistance of Trial Counsel_

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to _Dunaway v. New York,_ 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state court denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. _See_ Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); _see also_ Lee v. Kemna, 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." _McCleskey v. Zant,_ 499 U.S. 467, 493-94,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

*7 Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id,* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id,* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. *See People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

**\*8** Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. *See Strickland,* 466 U.S. at 694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief to the

Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996).

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

**\*9** [4] Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at trial, of the court's pre-trial ruling; and (3) the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687. The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

>    FN4. Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.

>    Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based upon evidence adduced at the second trial, for reconsideration of his initial motion or for a *Dunaway* hearing.

Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05(2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel,* 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981). Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

**2. *Lack of Probable Cause to Arrest***

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor, he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982). Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Duncan,* 513 U.S. at 365-66; *Picard,* 404 U.S. at 275-76; *Daye,* 696 F.2d at 191.

**\*10** In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the state").[FN7]

> **FN5.** In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.

> **FN6.** As mentioned earlier, Senor states that he

sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

> **FN7.** Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

**\*11** Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp. 859, 863-64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court thus conducted an inquiry into the questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

[6] Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court

denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of justice will not result from my failure to review the claim.

4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre-Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

FN8. "Tr." refers to the transcript of Senor's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor intentionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary question and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924-25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97-Civ-7819, 1998 WL 668079, at \*7 (S.D.N.Y. Sept.17, 1998); *Rojas v. Senkowski,* No. 95-CV-1866, 1996 WL 449321, at \*3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

[8] In any event, the claim is procedurally defaulted. Senor asserted this claim on direct appeal to the Appellate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.
Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

H   Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.
**No. 03-CV-0461 NPM.**

March 21, 2006.

Julia Long, Bedford Hills Correctional Facility, Bedford
Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York
State Attorney General, The Capitol, Albany, NY, for the
Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

*Memorandum-Decision and Order issued in*

SMITH, J.

*MEMORANDUM-DECISION and ORDER*

MCCURN, Senior J.

**\*1** Petitioner Julia Long, a New York State prison inmate
as a result of 1997 convictions for the crimes of first
degree assault and criminal possession of a weapon, has
commenced this proceeding seeking federal habeas relief
pursuant to 28 U.S.C. § 2254. In her petition, Long asserts
seven separate grounds in support of her request for
federal habeas intervention. Respondent has filed a
response in opposition to Long's petition, arguing therein
that some of the claims asserted by Long are procedurally
barred, and additionally that none of the grounds advanced
in her petition have merit.

This Court finds that Long is procedurally barred from
asserting several of the claims she has raised in her
petition. Since petitioner has not established cause for her
procedural default concerning those grounds or that she is
actually innocent of any of the crimes of which he stands
convicted, this Court denies those claims as procedurally
barred. Furthermore, after considering the remaining
grounds raised by Long in her petition in conjunction with
applicable case law, this Court finds that the additional
claims asserted by Long in her habeas petition lack merit.
Accordingly, this Court denies and dismisses Long's
petition.

*I. BACKGROUND*

A. *State Court Proceedings*

According to the state court records below, in the
afternoon of May 1, 1995, Long attended a meeting at the
TC Club in Albany, New York in order to discuss the
possibility of leasing that property from its owner. *See*
Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at
366. Ivetta Parson, an individual with whom Long had had
an altercation earlier that year, was also at the club around
the time of Long's meeting. *See* Trial Tr. at 120-23. For
reasons not apparent from the record, Long approached
Parson at that time and sprayed her face with mace. Trial
Tr. at 123-24. Parson ran out of the club and went to the
home of her friend, Regina Monell, where Parson washed
her face. Trial Tr. at 125. The two then decided to drive to
the TC Club with some friends and confront Long about
the incident that had just transpired. Trial Tr. at 126-27.
When the group arrived at the club, Parson observed Long
holding a handgun. Trial Tr. at 132. Parson exited her
vehicle, and as she was walking around her car she
discovered that she was bleeding.[FN1] Trial Tr. at 132-33.
Around this same time, Monell observed Long firing her
weapon at Parson, Trial Tr. at 163-64, and soon thereafter
Monell noticed that she had also been shot. Trial Tr. at
164.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

FN1. Parson did not hear Long's gun discharge. Trial Tr. at 133.

**\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89.FN2

FN2. The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations.

Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

**B. Proceedings in this Court**

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion. *See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

## II. *DISCUSSION*

### A. *Procedurally Defaulted Claims*

This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.

### 1. *Admission of Evidence of an Uncharged Crime*

Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

"failed to object to Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2] ) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at *3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov.24, 2003) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at *12 (E.D.N.Y. Nov.7, 2003). Therefore, Long has procedurally defaulted on her first ground for relief.

2. *Misstatement Regarding Count Three of the Indictment*

In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three (emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition.[FN3] *Rivera,* 2005 WL 2347840, at *3; *Wilson,* 2003 WL 22765351, at *3; *Betancourt,* 2003 WL 23198756, at *12.

FN3. The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See Long,* 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").

Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also Olivo v. Thorton,* No. 05 CIV.3237, 2005 WL 3292542, at *8 (S.D.N.Y. Dec. 6, 2005); *Broome v. Coughlin,* 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

3. *Claims Raised in CPL 440.20 Motion*

Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

> Although [Long] appeals from both the judgment of conviction and the order denying the CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on the appeal from the judgment of conviction.

*Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. *Delucia v. West,* No. 04 CIV. 3605, 2005 WL 1981708, at *4 (S.D.N.Y. Aug. 17, 2005) ("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy,* 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

B. *Consequences of Procedural Default*

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway,* 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert,* No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1

(2d Cir. Aug. 28, 2002) (unpublished). Additionally, review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[FN4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner,* No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

> FN4. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

**\*6** For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g., St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

court's instructions.[FN5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

> FN5. Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless *both* cause and prejudice is demonstrated.[FN6] See *Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

> FN6. The petitioner bears the burden of demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him." ' *Id.* (citing *Schlup,* 513 U.S. [at] 327-28 ... (some internal citation marks omitted)).

*Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument." ' *Jackson v. Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y.1999) (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell.[FN7] Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell.[FN8]

> FN7. Monell testified that on the date of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

FN8. Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. *See* App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

As to Long's conviction on the first degree assault relating to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. *See Long,* 291 A.D.2d at 722, 738 N.Y.S.2d 721.FN9

FN9. This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes

of which she was convicted.FN10 Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g., Lutes,* 2005 WL 2180467, at \*9; *Ayuso v. Artuz,* No. 99 CIV 12015, 2001 WL 246437, at \*8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at \*3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

FN10. The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

C. *Remaining Claims*

1. *Standard of Review*

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

28 U.S.C. § 2254(d); *see also* DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also* DeBerry, 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

**\*9** Williams v. Artuz, 237 F.3d 147, 152 (2d Cir.2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir.2000)).

In Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. Sellan, 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the

merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

Sellan, 261 F.3d at 312 (emphasis added), *see also* Ryan v. Miller, 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." Williams, 529 U.S. at 409; *see also* Sellan, 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]" Francis S., 221 F.3d at 111.

*2. Substance of Long's Remaining Claims*

A. *Motion to Dismiss Indictment*

In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple.[FN11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

FN11. That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

**\*10** A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

i. *Clearly Established Supreme Court Precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction

is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*

The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294. Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One),

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at 652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

> The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable")

(citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

> Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

**\*12** *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department found that the jury's verdict was not, in fact, inconsistent.

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple."* Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [FN12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

FN12. Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

*13 Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive.[FN13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

FN13. This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Kelly, 692 F.Supp. 146 (E.D.N.Y.1988), aff'd mem., 875 F.2d 857 (2d Cir.1989)); see also Brown v. Donnelly, 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); Jackson, 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, see Petition, Ground E, the Court notes that in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. See, e.g., App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. See Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. See People v. Duncan, 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), leave denied, 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. See People v. Rodriguez, 276 A.D.2d 326, 326-27, 714 N.Y.S.2d 267 (1st Dep't 2000), leave denied, People v. Rodriguez, 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001).[FN14]

FN14. As to Long's claim relating to the United States Sentencing Guidelines, see Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

*14 With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions,[FN15] this Court notes that the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes." People v. Ramirez, 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing Matter of Walker v. Walker, 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." Ramirez, 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing People v. Laureano, 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

FN15. The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. See DeSordi v. Walker, No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), adopted DeSordi v. Walker, No. 98-CV-1351 (N.D.N.Y. July 30, 2002) (Kahn, J.), aff'd, 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), cert. denied sub nom. DeSordi v. Burge, 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel, 445 U.S. at 272; see Harmelin v. Michigan, 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing *Thompson v. Lord,* No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002)* (Peebles, M.J.)) (other citations omitted) [, *adopted, Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. *E.g., Harmelin,* 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

D. *Failure to Consider Appeal of Denial of CPL 440.20 Motion*

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court nevertheless "refused to hear [s]aid motion" in violation of her constitutional rights. *See* Petition, Ground "G." FN16

> FN16. In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert any appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with

the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any claim that the sentences imposed on Long violated the Double Jeopardy clauses of either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law.FN17 *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

> FN17. As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

N.D.N.Y.,2006.
Long v. Lord

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Esau STALEY III, Petitioner,
v.
Charles GREINER, Respondent.
**No. 01Civ.6165(JSR)(DF).**

Feb. 6, 2003.

Following affirmance, 692 N.Y.S.2d 314, of state convictions for attempted rape and first-degree sexual abuse, petition for federal habeas relief was brought. The District Court, Freeman, United States Magistrate Judge, recommended that: (1) alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for speedy trial purposes, and (2) claims of alleged grand jury defects, i.e. improper amendment of indictment and failure to allow defendant's testimony, were not cognizable on federal habeas review.

Dismissal of petition recommended.

West Headnotes

**[1] Habeas Corpus 197** 🗝 **423**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)6 State's Reliance on or Waiver of Procedural Bar or Want of Exhaustion
                197k423 k. State Court Consideration of Merits. Most Cited Cases
State trial court's alleged constitutional violation forming predicate for federal habeas petitioner's ineffective assistance of counsel claim would be treated as exhausted

even though not objected to in trial court, since trial court had addressed merits of constitutional claim. 28 U.S.C.A. §2254(b)(1)(A).

**[2] Habeas Corpus 197** 🗝 **409**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
                197k409 k. Prejudice. Most Cited Cases
Where federal habeas petitioner failed to show cause for his procedural defaults in state court, it was unnecessary for federal district court to consider issue of prejudice before dismissing claims as procedurally barred. 28 U.S.C.A. §2254.

**[3] Criminal Law 110** 🗝 **264**

110 Criminal Law
    110XIV Arraignment
        110k264 k. Requisites and Sufficiency of Arraignment. Most Cited Cases
Alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for purposes of right to speedy trial. U.S.C.A. Const.Amend. 6.

**[4] Habeas Corpus 197** 🗝 **474**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k474 k. Indictment, Information, Affidavit, or Complaint. Most Cited Cases
Assuming that state indictment had been improperly amended and that amendment violated defendant's right to be tried only on charges presented to grand jury, claim was not cognizable on federal habeas review since right to have charges presented to grand jury was state-created, not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

federal right. 28 U.S.C.A. §2254.

**[5] Habeas Corpus 197** 🔑 **473**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for
Detention in General
       197k473 k. Grand Jury. Most Cited Cases
Claim of defect in state grand jury process, i.e. that due
process was violated when defendant was not given
opportunity to testify before grand jury, was not
cognizable on federal habeas review. 28 U.S.C.A. §2254.
Esau Staley III, Green Haven Correctional Facility,
Drawer B, Stormville, NY, pro se.

REPORT AND RECOMMENDATION

FREEMAN, Magistrate J.

*INTRODUCTION*

**\*1** Petitioner Esau Staley III ("Petitioner") seeks a writ of
habeas corpus pursuant to 28 U.S.C. § 2254, challenging
his conviction in New York State Supreme Court, New
York County. Upon a jury verdict, Petitioner was found
guilty of one count of Attempted Rape in the First Degree
and one count of Sexual Abuse in the First Degree.
Petitioner was sentenced to a term of 15 years on the rape
charge and seven years on the sexual abuse count. He is
currently incarcerated at Green Haven Correctional
Facility.

Petitioner challenges his conviction and asserts that (1) he
was denied effective assistance of counsel; (2) his
arraignment was improperly delayed; (3) the indictment
against him was impermissibly amended; and (4) his due
process rights were violated because he was not given an
opportunity to testify before the grand jury. (*See* Pet. at §
12.)[FN1] Respondent argues that the petition should be
dismissed on the grounds that Petitioner's claims are
unexhausted, procedurally barred, or without merit. (*See*
Resp. Mem. at 10-17.)[FN2] For the reasons stated below, I

recommend that the petition be dismissed.

    FN1. "Pet." refers to Petitioner's petition for a
    writ of habeas corpus under 28 U.S.C. § 2254,
    dated April 25, 2001, and filed on July 9, 2001.

    FN2. "Resp. Mem." refers to Respondent's
    Memorandum of Law in Opposition to Petition
    for a Writ of Habeas Corpus, dated April 17,
    2002.

I. *FACTUAL BACKGROUND*

_____ According to the testimony at trial, on the morning
of October 23, 1995, Bah Fatoumata, ("Fatoumata") a
36-year old woman, arrived at work at the Bebe Hair
Braiding Salon at 145 Eighth Avenue in Harlem. (Tr. at
100.)[FN3] She was the first to arrive, so she unlocked the
front door. (*Id.*) The salon's glass door was covered by a
large poster, thereby concealing the salon's interior from
the street. (*Id.* at 104, 108.)

    FN3. "Tr." refers to the transcript of Petitioner's
    trial, which took place from May 20, 1996
    through May 23, 1996.

Shortly thereafter, Petitioner opened the front door of the
salon and began talking to Fatoumata. (*Id.* at 101.)
Fatoumata could not understand what he was saying, but
Petitioner gestured in such a way as to indicate that he
wanted his hair braided. (*Id.*) Fatoumata pointed to her
watch to indicate that he should come back later. (*Id.* at
101, 115.) Petitioner then left the salon. (*Id.*)

Approximately 20 minutes later, Petitioner returned to the
salon and began speaking again to Fatoumata. (*Id.*)
Fatoumata testified that she was frightened by Petitioner,
so she told him that she did not speak English and again
pointed to her watch to indicate that he should come back
later. (*Id.* at 101-02, 117.) Petitioner, however, closed the
door and walked towards Fatoumata. (*Id.* at 102.)
Petitioner then grabbed Fatoumata and pulled her onto the
floor. (*Id.*) Fatoumata and Petitioner began to struggle as

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

Petitioner attempted to rape Fatoumata. (*Id.* at 102-04, 120-130.) Petitioner grabbed a pair of scissors that were nearby, and attempted to cut Fatoumata's pants, and to stab her in the neck. (*Id.* at 102, 124.) After a struggle over the scissors, Petitioner cut Fatoumata's face near her right eye. (*Id.* at 104.) During the struggle, Fatoumata managed to rip one of the posters off the glass door, hoping that someone on the street would then see and help her. (*Id.* at 104-05, 235.)

*2 At some point between 9:00 a.m. and 10:00 a.m. that morning, Lacine Kamara ("Kamara") was bringing his girlfriend, Mawa Kata ("Kata"), to work at the salon. (*Id.* at 248.) He saw that the poster had been pulled down, and spotted two feet on the ground inside the store with the toes pointing up. (*Id.* at 248-50.) Kamara and Kata approached the salon to investigate. (*Id.* at 250 .) When Kata pushed the door open, Petitioner got up and ran from the store. (*Id.* at 251.) After spotting Fatoumata in the store, covered with blood, Kamara chased after Petitioner. (*Id.* at 251-52.) He was joined by some uniformed police officers and one of them, Police Officer Guillermina Tavares ("Tavares"), apprehended Petitioner. (*Id.* at 252, 260-61.) _____ Kamara returned to the salon immediately after Petitioner was taken into custody. (*Id.* at 252.) Tavares arrived at the salon shortly thereafter. (*Id.* at 261-62.) At that time, she found Fatoumata lying on the ground outside of the store near the scissors, which Tavares collected as evidence. (*Id.* at 262-65.) Fatoumata had a cut by her right eye, and acted as if she were in shock. Since she did not speak English, Fatoumata was unable to tell the police what had happened. (*Id.* at 134, 263.) A bystander told Tavares that Petitioner had tried to rob Fatoumata. (*Id.* at 272.)

Fatoumata was taken by ambulance to Columbia Presbyterian Hospital, where she was met by her husband and brother. (*Id.* at 193-94.) With her family interpreting, Fatoumata told the hospital staff what had happened. (*Id.* at 194-95.) On November 8, 1995, Fatoumata picked Petitioner out of a line-up. (*Id.* at 167.)

II. *PROCEDURAL BACKGROUND*

A. *Pre-Trial Proceedings*

_____ On October 24, 1995, the day after his arrest, Petitioner was taken to Criminal Court, Supreme Court, New York County, to be arraigned on a felony complaint. (*See* Respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus, sworn to April 1, 2002 ("Resp.Aff."), Ex. G.) The government asserts that Petitioner was, in fact, arraigned on October 24, although his case was then adjourned to October 27, in order to determine whether the grand jury would return an indictment against him. (*See* Resp. Mem. at 13.) It appears from the record that the government is correct on this point, and it also appears that counsel appeared for Petitioner at the time of his arraignment on October 24. (Resp. Aff., Exs. G and M.) Petitioner, however, disputes that he was arraigned on October 24, contending that he was not actually arraigned until October 27. (*See* Resp. Aff., Exs. F and G.) FN4

> FN4. Although, at one point in his petition, Petitioner seems to acknowledge that he was arraigned on October 24, 1995 (*see* Petition § 15), this is at odds with what appears to be one of his principal arguments that his arraignment was unlawfully delayed.

On November 1, 1995, Petitioner was indicted on one count each of first degree rape, sexual abuse, and second degree-burglary. On April 10, 1996, the burglary count was dismissed. On May 2, 1996, a *Wade/Huntley* hearing was held before the Honorable Franklin R. Weissberg. FN5 (*See* Resp. Mem. at 6; Resp. Aff., Exs. A and B.) In that hearing, Petitioner moved to suppress his post-arrest statements and the victim's identification testimony. (*Id.*) On May 16, 1996, Justice Weissberg denied Petitioner's motion to suppress the identification evidence, but granted a portion of Petitioner's motion to suppress his statements. (*Id.*)

> FN5. This hearing was held pursuant to: (1) *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine whether Petitioner's pretrial identification was the result of impermissibly suggestive procedures, and (2) *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine whether any statements made by Petitioner should be suppressed.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

_____ B. *Jury Selection and Trial*

**\*3** _____ Petitioner was tried by a jury from May 20, 1996, through May 23, 1996. At trial, the prosecution's witnesses were Fatoumata, Kamara, Tavares, and Detective John Savino. Petitioner presented no witnesses and did not testify on his own behalf. On May 23, 1996, the jury found Petitioner guilty of first degree rape and first degree sexual abuse. (Tr. at 391.) On June 10, 1996, Petitioner was sentenced to a term of 15 years on the rape charge and seven years on the sexual abuse count. *See People v. Staley, 262 A.D.2d 30, 30, 692 N.Y.S.2d 314 (1st Dep't 1999).*

C. *Direct Appeal*

Petitioner appealed his conviction to the Appellate Division, First Department. On appeal, he raised the following two claims: (1) the trial court erred in denying Petitioner's request to call Fatoumata to testify at the *Wade* hearing; and (2) that the trial court erred in denying Petitioner's motion for a mistrial based on the interpreter's alleged mis-translation of Fatoumata's testimony. (*See* Resp.App. Ex. B.) On September 30, 1999, the Appellate Division affirmed Petitioner's conviction. *See People v. Staley, 262 A.D.2d 30, 692 N.Y.S.2d 314 (1st Dep't 1999).* In its opinion, the Appellate Division concluded that the "hearing court properly denied defendant's request for the complainant to testify at the *Wade* hearing." *262 A.D.2d at 30, 692 N.Y.S.2d at 314.* Additionally, the Appellate Division held that Petitioner "failed to establish that there was any error in the translation of the complainant's testimony." *Id., 692 N.Y.S.2d at 315.*

Petitioner sought leave to appeal the affirmance of his conviction. (*See* Resp.App. Ex. D.) On June 28, 1999, leave to appeal to the Court of Appeals was denied. *See People v. Staley, 93 N.Y.2d 979, 695 N.Y.S.2d 66, 716 N.E.2d 1111 (1999).*

D. *Petitioner's Motion To Vacate The Conviction*

On June 27, 2000, Petitioner, proceeding *pro se,* filed a motion in the trial court, seeking to vacate the judgment pursuant to New York Criminal Procedure Law §§ 440.10(1)(h). (*See* Resp. Aff. Ex. F.) Petitioner claimed that he was entitled to post-conviction relief on the ground that he was denied effective assistance of trial counsel. Specifically, Petitioner alleged that his trial attorney failed: (1) to challenge an alleged 72-hour delay between the time of Petitioner's arrest and his arraignment; (2) to challenge the legality of the initial accusatory instrument, which, according to Petitioner, contained charges different than those upon which he was indicted; (3) to advise Petitioner of his right to testify before the grand jury; and (4) to challenge the trial court's ruling concerning alleged errors of translation by the official court interpreter. (See *id.*) The State opposed Petitioner's motion on November 6, 2000. (*See id.,* Ex. G.)

By written opinion dated December 13, 2000, the trial court denied Petitioner's Section 440.10 motion, stating:

Despite some apparent confusion on defendant's part, the record clearly reveals that defendant was arraigned in a timely manner. Defendant also asserts that his trial lawyer was ineffective in failing to challenge the legality of the felony complaint. Regardless of the sufficiency of the felony complaint, however, the return of an indictment by the Grand Jury served to cure any alleged defect. As such, defendant's trial attorney's failure to raise these issues below did not constitute ineffective representation.

**\*4** In addition, defendant claims [*sic* ] that his attorney was ineffective because he failed to inform him of his right to testify before the Grand Jury is similarly denied. Assuming *arguendo* that this claim is true, a point which the People do not concede, a failure to effectuate a defendant's alleged desire to testify before a Grand Jury does not rise to a deprivation of meaningful representation. (citation omitted).

Finally, the remaining purported error by the trial court, which involved the accuracy of the court interpreter's translation, was already unsuccessfully raised on direct appeal. As the underlying error complained of by the defendant was not error at all, it clearly cannot be used to form the basis for a finding of ineffectiveness of counsel.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

*(Id.,* Ex. H.)

On March 20, 2001, the Appellate Division denied Petitioner's motion for leave to appeal the denial of his Section 440.10 motion. (*See id.,* Ex. K.) The instant petition followed.

III. *DISCUSSION*

A. *Exhaustion*

_____ 1. *Legal Standards*

_____ A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. See 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of ... [a] prisoner's federal rights." *Picard,* 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Picard,* 404 U.S. at 278 (citation omitted). However, the state courts must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995), by presenting their claims in a fashion demonstrating either

(a) reliance on pertinent federal cases employing

constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194; *accord Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir.1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is generally fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citation omitted).

_____ 2. *Petitioner Has Presented a "Mixed" Petition.*

*5 _____ In this case, it appears that Petitioner has presented a "mixed petition," containing both exhausted and unexhausted claims. *See Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001).

Petitioner's first claim alleges ineffective assistance of counsel, a claim Petitioner raised previously in his Section 440.10 motion. As noted above, Petitioner asserted in that motion that his trial counsel was ineffective for failing to challenge certain purported constitutional violations involving, *inter alia,* the timing of Petitioner's arraignment, the appropriateness of the indictment on which he was tried, and the conduct of the grand jury proceedings. When Petitioner's Section 440.10 motion was denied by the trial court, Petitioner sought leave to appeal the denial of that motion to the Appellate Division. Once the Appellate Division denied leave to appeal, Petitioner's ineffective assistance claim was exhausted for purposes of habeas review. *See Klein v. Harris,* 667 F.2d 274 (2d Cir.1981) ("no appeal to the New York Court of Appeals lies from an order denying a motion for leave to appeal to the Appellate Division"), *overruled on other grounds by Daye,* 696 F.2d at 195; Jackson v. Moscicki, No. 99 Civ. 2427(JGK), 2000 WL 511642 at *5 (Apr. 27.2000) (petitioner exhausted his ineffective assistance of counsel claim by raising it in a Section 440.10 motion and seeking leave to appeal to the Appellate Division). Therefore, to the extent the ineffective assistance claim now being

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

asserted by Petitioner is the same as the claim he asserted in his Section 440.10 motion, the exhaustion requirement is satisfied.[FN6]

> FN6. As discussed further *infra* (*see* n.9), the petition is not well drafted, and it is possible to construe Petitioner's present ineffective assistance claim as being different from the claim that he raised in the state court. The petition of a *pro se* litigant, however, should be liberally construed, *see Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983), and therefore the Court's first assumption should be that the claim being presented for habeas review is, in fact, the claim that Petitioner exhausted in the state court.

[1] In this habeas proceeding, Petitioner is now also directly challenging three of the alleged constitutional violations that formed the predicate of the ineffective assistance claim that he raised in his Section 440.10 motion. Because he never previously raised any of these alleged violations as separate and distinct claims-either in the Section 440.10 motion itself or on direct appeal-these additional claims are arguably all unexhausted. *See Turner v. Artuz,* 262 F.3d 118, 123 (2d Cir.2001) ("A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims."). Nonetheless, it seems appropriate, under *Turner,* to consider one of these additional claims exhausted, in that the trial court effectively ruled on it, on the merits, in the context of the court's decision rejecting the ineffective assistance claim. *See id.* (expressly declining to address the situation where the state court clearly analyzed the merits of an underlying claim). More specifically, and as quoted above, the trial court held that Petitioner's counsel had not been ineffective for failing to object to an unconstitutional delay in Petitioner's arraignment, because, as a factual matter, *there was no* delay in arraignment. (*See supra* at 6.) Because the trial court actually addressed the purported delay, that particular underlying claim should be viewed as exhausted. The other two underlying claims, however, should be considered unexhausted, as they were never presented as separate claims-or separately analyzed-by the state court.

*2. Petitioner's Unexhausted Claims Should Be Deemed Exhausted and Procedurally Barred.*

**\*6** When ruling on a mixed petition, the Court may choose (1) to reach the merits of all claims in the petition-including the unexhausted claims-as long as the Court *denies* the claims on the merits, *see* 28 U.S.C. § 2254(b)(2)(2000); (2) to stay the petition and allow the petitioner a "reasonable" period of time to return to state court, exhaust the claims, and return to federal court, *Zarvela,* 254 F.3d at 381; (3) to dismiss the petition without prejudice to the petitioner's ability to re-file after exhausting the unexhausted claims, *id.* at 380; or (4) to "deem" the claims exhausted, provided that the unexhausted claims no longer can be raised in state court, *see Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Bossett v. Walker,* 41 F.3d 825, 828-29 (2d Cir.1994) (citations omitted); *Grey v. Hoke,* 933 F.2d 117, 120-21 (2d Cir.1991) (citations omitted).

In this instance, Petitioner could have raised his unexhausted claims in his one opportunity for direct appeal,[FN7] but did not do so. For this reason, he is now foreclosed from raising the claims collaterally in another Section 440.10 motion. *See* N.Y.Crim. Proc. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). Petitioner also cannot seek state review of his unexhausted claims pursuant to either a writ of error *coram nobis, see People v. Gordon,* 183 A.D.2d 915, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see People ex rel. Allah v. Leonardo,* 170 A.D.2d 730, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted). Because Petitioner now has no procedural recourse to New York's courts to advance his unexhausted claims, those claims are appropriately deemed exhausted. *See Bossett,* 41 F.3d at 828-29; *Grey,* 933 F.2d at 120-21.

> FN7. *See* N.Y. Court Rules § 500.10(a) (permitting only one application for leave to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

appeal); *see also* N.Y.Crim. Proc. §§ 450.10 and 450.15 (allowing a petitioner only one chance to appeal).

When, however, a claim is deemed exhausted because of a procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 633 (2d Cir.2001). The only ways that Petitioner can overcome the procedural bar to review in this Court are to show (1) both "cause" for failing properly to raise the claim in state court and "prejudice" resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this case, Petitioner cannot satisfy either standard, with respect to either of his unexhausted claims.

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz,* No. 99 Civ. 12015(AGS) (JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001). Cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) " 'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's *"actual* and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original).

**\*7** [2] Here, Petitioner cannot demonstrate any "cause" for his procedural defaults. He has not shown, and cannot show, that the factual or legal bases for his defaulted claims were not reasonably available at the time of his direct appeal. Nor has Petitioner alleged, and there is no

evidence suggesting, that his failure to raise the claims on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel. As Petitioner cannot show cause for his procedural defaults, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

The Court may also excuse a procedural default where the petitioner "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Coleman,* 501 U.S. at 750). This exception, however, is quite narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Thus, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In this case, Petitioner has offered no evidence, scientific or otherwise, showing his actual innocence. Therefore, Petitioner has not made an adequate showing to satisfy the fundamental miscarriage of justice exception. Accordingly, Petitioner's unexhausted claims should be dismissed as procedurally barred.

Moreover, as discussed further below (*see infra* at 19-22), Petitioner's unexhausted claims should be dismissed in any event, because they do not actually raise federal constitutional issues, and thus they are not cognizable on habeas review.

B. *Standard of Review*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

Where the state court has reached the merits of a claim, this Court must apply a deferential standard in reviewing that claim in a habeas proceeding. Specifically, this Court must adhere to the standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the relevant portion of which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*8** 28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court clarified the meaning of the "contrary to" and "unreasonable application" clauses of AEDPA Section 2254(d)(1). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent, id. at 405, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result, id. at 406. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to the particular facts before it. Id. at 413. The Supreme Court has explained that "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Thus, the writ may not issue simply because the state court decision is erroneous or incorrect; rather, the application must also be unreasonable. Id. at 411.

AEDPA Section 2254(d), however, only applies to the review of claims that have been "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). The Second Circuit has held that the phrase "adjudicated on the merits" means "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001). Where the state court has rejected a claim on procedural grounds or has otherwise not reached the merits of the claim, this Court must review that claim de novo. See Washington v.. Schriver, 255 F.3d 45, 55 (2d Cir.2001).

_____ C. Petitioner's Claims

_____ 1. Ineffective Assistance of Counsel

_____ To the extent the state court adjudicated Petitioner's ineffective assistance of counsel claim on the merits on Petitioner's Section 440.10 motion, this Court must review that determination under AEDPA's deferential standard of review. Applying that standard of review, the Court should dismiss the claim.

The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results [,] ... 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.' " Id. at 686 (citation omitted).

**\*9** In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. Petitioner can demonstrate such ineffectiveness by showing both that: (1) counsel's performance "fell below an objective standard of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The Court may reject an ineffective assistance of counsel claim for failure to satisfy either of these prongs of the *Strickland* standard, without reaching the other. *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Morales v. United States,* 199 F.3d 1322 (Table), No. 98-3700, 1999 WL 1015641, at *1 (2d Cir.1999) (court did not address "whether appellant's trial counsel was unreasonably deficient in his performance because any deficiency in this regard did not prejudice appellant").

Here, if Petitioner is resting his ineffective assistance claim on the contention that his trial counsel failed to challenge an alleged 72-hour delay between the time of Petitioner's arrest and arraignment, then Petitioner cannot meet the *Strickland* standard because he is relying on an incorrect factual premise. In ruling on Petitioner's Section 440.10 motion, the trial court found that, despite "apparent confusion" on the part of Petitioner, the record "clearly reveal[ed]" that Petitioner had been arraigned in a "timely manner." (*See* Resp. Mem. Ex. H.) Under AEDPA, this factual finding is "presumed correct" and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Not only has Petitioner failed to present any evidence to rebut this factual finding, but this Court's own review of the documentary record regarding Petitioner's arraignment reveals that Petitioner was initially arraigned on October 24, 1995, the day after he was arrested, and that he was represented by a lawyer at his arraignment. (*See* Resp. Aff., Exs. G and M.) FN8

> FN8. In addition, Petitioner's trial attorney stated during the trial that Petitioner was arraigned on October 24, 1995. (Tr. at 161 .)

As this Court must accept as correct the state court's finding that there was no unreasonable delay in Petitioner's arraignment, it cannot be said that Petitioner's counsel acted unreasonably in failing to challenge the alleged delay. Nor can it be said that the state court's resulting rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of

federal law, under 28 U.S.C. § 2254(d). Accordingly, to the extent Petitioner is asserting such a claim here, it should be dismissed under AEDPA. FN9

> FN9. From the language of Petitioner's claim, it may be that Petitioner is no longer challenging his counsel's failure to object to the supposed delay in his arraignment, but rather the deprivation of counsel during the alleged "critical" period of the delay. (*See* Pet. § 12(A) (asserting that Petitioner "did not speak with counsel until 72 hours after [his] initial arrest").) If this is the basis of Petitioner's current claim, then his claim is unexhausted, as it is based on an argument that was never presented to the state courts. Further, for the reasons stated above in connection with Petitioner's other unexhausted claims, the claim is now procedurally barred. In any event, the claim would fail for lack of merit, even under a *de novo* standard of review. Under the Sixth Amendment, the right to counsel "attaches only at the initiation of adversary criminal proceedings ... and before proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel." Davis v. United States, 512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *see also Ferguson v. Walker,* No. 00 Civ. 1356, 2002 WL 31246533 (S.D.N.Y. Oct.7, 2002) ("the right to counsel ... attaches only upon the initiation of adversary criminal proceedings, such as by formal charge, indictment or arraignment"). In this case, the record shows that adversary criminal proceedings were initiated against Petitioner with the filing of the felony complaint on October 24, 1995, the same day that counsel was appointed for Petitioner. (*See* Resp. Aff., Exs. G and M.) Thus, Petitioner was not, in fact, deprived of counsel.

_____ 2. *Speedy Arraignment*

Petitioner also claims that the alleged 72-hour delay before his arraignment was itself a constitutional violation. Liberally construed, this claim could be read to suggest that the alleged delay implicated defendant's Sixth Amendment right to a speedy trial. *See Holmes v. Bartlett,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

810 F.Supp.2d 550, 561-62 (S.D.N.Y.1993) (analyzing claim by habeas petitioner of delay between arrest and arraignment as an alleged violation of the Sixth Amendment right to a speedy trial). As already discussed, however, the trial court found, and the record reflects, that Petitioner was actually arraigned within one day of his arrest. Under the circumstances, Petitioner can have no basis for arguing any constitutional violation.

**\*10** [3] Indeed, even if Petitioner were correct that 72 hours elapsed before he was arraigned, he would still have no grounds to complain that this violated a constitutional right. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that the following four factors must be considered in determining whether a defendant' Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether or not the defendant asserted his right; and (4) prejudice to the defendant. *Id.* at 530-33. The Court noted that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. In this case, Petitioner's bases his claim solely on the length of the alleged 72-hour period between his arrest and arraignment. This delay is not "presumptively prejudicial." *See United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992) (suggesting that any delay over eight months is presumptively prejudicial, while a delay of less than five months is not); *United States v. Ballam,* 70 F.3d 1280, 1995 WL 710498 at \*2 (9th Cir.1995) (text in Westlaw) (stating that "[t]he judicial consensus of how much time must go by before a delay is presumed prejudicial ranges from eight months ... to one year"); *United States v. Pereira,* 463 F.Supp. 481, 488 (E.D.N.Y.1978) (holding that a delay of 20 days was not presumptively prejudicial).

Moreover, in *Williams v. Ward,* 845 F.2d 374 (2d Cir.1988), the Second Circuit held that delays of 72 hours between arrest and arraignment in the New York City criminal justice system do not violate the right under the Fourth and Fourteenth Amendments to obtain a probable cause determination within a "brief" period of time after arrest. *See id.* (holding that "the procedural benefits provided to arrestees under New York City's arraignment system justify constitutionally arrest-to-arraignment periods of seventy-two hours in length"). Thus, if

Petitioner's claim is based on the Fourth Amendment, it would fail under *Williams.*

For these reasons, Petitioner has not shown that the state court's rejection of this claim was contrary to, or involved an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d). Accordingly, this claim should be dismissed.

_____ 3. *Petitioner's Remaining Claims*

Petitioner's last two claims relate to the conduct of the state grand jury proceedings. Specifically, Petitioner claims that (a) the original indictment against him was impermissibly amended, and (b) he was unfairly denied the opportunity to testify before the grand jury. (Pet. §§ 12(C) and (D).) As discussed above (*see supra* at 10-13), these claims are unexhausted and procedurally barred. Further, they cannot be reviewed in this Court, as they do not implicate federal constitutional rights.

_____ a. *Amendment of the Indictment*

**\*11** [4] According to Petitioner, the assistant district attorney went to the grand jury with robbery charges on October 27, 1995, but then determined that robbery charges were not warranted. (*See* Pet. §§ 12(B) and (C).) On November 1, 1995, Petitioner was indicted on different charges, *i.e.* on one count each of first degree rape, sexual abuse, and second degree-burglary. (*See* Pet. § 12(C).) Based on these allegations, Petitioner contends that the indictment against him was improperly amended. (*Id.*) Respondent, however, asserts that Petitioner has misunderstood the relevant proceedings. (*See* Resp. Mem. at 15.) Respondent contends that, in claiming that the indictment "broaden [ed] and altered" the initial charges against him (Pet. § 12(C)), Petitioner must be referring to the fact that the *felony complaint* against him included a different charge (*i.e.* robbery) than the charges ultimately contained in the *indictment* (*i.e.* first degree rape, sexual abuse, and second-degree burglary). (*See* Resp. Mem. at 15.) Respondent asserts that the prosecution properly submitted to the grand jury the charges on which Petitioner was eventually indicted, and that the indictment itself was never amended. (*Id.*)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))

It appears that, in deciding Petitioner's Section 440.10 motion, the state court accepted Respondent's version of events. (*See* Resp. Mem. Ex. H (finding that "return of an indictment by the Grand Jury served to cure any alleged defect" in the original felony complaint).) Any such factual finding by the state court is presumed correct under AEDPA. 28 U.S.C. § 2254(e)(1). Yet regardless of whether the state court entirely resolved the relevant factual issue, Petitioner does not relate his claim to a federal constitutional violation (*see* Pet. § 12(C) (contending only that the indictment was amended), and therefore his claim is not cognizable on habeas review.

It may be that Petitioner is attempting to argue, as he did in his Section 440.10 motion, that the purported amendment to his indictment violated his right "to be tried only on charges brought by the Grand Jury indictment." (*See* Resp. Aff., Ex. F, at 11-12 .) Yet if this is Petitioner's argument on habeas review, his claim still fails. The right to have state charges presented to a grand jury is a state-created right, not a federal right. *Rodriguez v. Senkowski,* No. 92 Civ. 5484, 1995 WL 347024, at *2 (E.D.N.Y. May 31, 1995) (rejecting challenge to a state trial court's amendment of an indictment). Accordingly, "any alleged impropriety in the amendment of the indictment is predicated on state law, and is therefore beyond this Court's review." *Id.; see also Medina v. Herbert,* No. 98 Civ. 1871, 1998 WL 799173 at *5 (S.D.N.Y. Nov. 16, 1998) ("In general, challenges to the sufficiency of a state indictment are not issues cognizable on habeas review.").

b. *Deprivation of Right To Testify Before the Grand Jury*

**\*12** [5] Petitioner finally claims that his due process rights were violated because he was never given the opportunity to testify before the grand jury. (Pet. § 12(D).) Once again, however, any alleged defects in the state grand jury process are not cognizable on habeas review. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (holding that claims concerning state grand jury proceedings are foreclosed from habeas review because "any error in the grand jury proceeding was rendered harmless beyond reasonable doubt by the petit jury's guilty verdict"); *Afflic v. New York,* No. 01 Civ. 6152, 2002 WL 500373 (S.D.N.Y. Apr.3, 2002) ("Petitioner's claim that he was not advised of his right to appear before the Grand Jury does not

present an issue of constitutional dimension, but merely one of state law"); *McMoore v. Miller,* No. 98 Civ.1915, 2002 WL 975305 at *9 (S.D.N.Y. Apr.19, 2002) (dismissing habeas claim based on petitioner's failure to testify before the grand jury because "[petitioner's] right to testify before a grand jury is based solely on *state* law, the wrongful denial of that right does not entitle him to a *federal* writ of habeas corpus") (emphasis in original).

As Petitioner's claim does not implicate a federal constitutional right, it cannot be reviewed in this Court, and should be dismissed.

*CONCLUSION*

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
(Cite as: 2003 WL 470568 (S.D.N.Y.))


S.D.N.Y.,2003.
Staley v. Greiner
Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.
**No. 00-CV-5673JG.**

Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197** ⟜ **603.9**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General

         197k603 Limitations, Laches or Delay
           197k603.9 k. Pursuit of other remedies.
Most Cited Cases
      (Formerly 197k603)
State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110** ⟜ **1930**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
           110k1921 Introduction of and Objections to Evidence at Trial
              110k1930 k. Identification. Most Cited Cases
      (Formerly 110k641.13(6))
Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110** ⟜ **1951**

110 Criminal Law

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1951 k. Deliberations and verdict. Most Cited Cases
(Formerly 110k641.13(2.1))
Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant might known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

[4] Criminal Law 110 ☞ 1968

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1966 Appeal
110k1968 k. Preservation of error for appeal. Most Cited Cases
(Formerly 110k641.13(7))
Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

[5] Habeas Corpus 197 ☞ 366

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k362 Particular Remedies or

Proceedings
197k366 k. Direct review; appeal or error. Most Cited Cases

Habeas Corpus 197 ☞ 378

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k374 Availability and Effectiveness of State Remedies
197k378 k. Availability at time of petition. Most Cited Cases
Federal habeas petitioner's claim, that police seized him without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

[6] Habeas Corpus 197 ☞ 366

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
197k362 Particular Remedies or Proceedings
197k366 k. Direct review; appeal or error. Most Cited Cases

Habeas Corpus 197 ☞ 401

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
            197k401 k. In general. Most Cited Cases
Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 &#128273; 495**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k495 k. Witnesses; examination. Most Cited Cases
Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 &#128273; 366**

197 Habeas Corpus
   197I In General

197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
         197k362 Particular Remedies or Proceedings
            197k366 k. Direct review; appeal or error. Most Cited Cases

**Habeas Corpus 197 &#128273; 368.1**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k368 Necessity for Repetition or Pursuit of Several Remedies
               197k368.1 k. In general. Most Cited Cases

**Habeas Corpus 197 &#128273; 378**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k374 Availability and Effectiveness of State Remedies
               197k378 k. Availability at time of petition. Most Cited Cases
Federal habeas petitioner's claim, that prosecutor's questioning of him constituted a *Sandoval* violation, was procedurally defaulted; petitioner asserted claim on direct appeal, but failed to include it in his application for leave to appeal further or in any of his other motions, so that claim was unexhausted, claim could no longer be exhausted as 30-day period to make application for leave to appeal had expired, petitioner failed to show cause and resulting prejudice, and federal court's failure to consider claim would not result in miscarriage of justice.
Chanel Senor, Great Meadow Correctional Facility, Comstock, Petitioner Pro Se.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Victor Barall, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

*1 On January 10, 1994, a jury in Kings County found petitioner Chanel Senor guilty of murder in the second degree (N.Y. Penal Law § 125.25[1] ) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03). Senor was sentenced to concurrent terms of imprisonment of twenty years to life for the murder conviction and two to six years for the weapon possession conviction. He is currently incarcerated pursuant to that judgment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) his trial counsel failed to provide him effective assistance; (2) his appellate counsel failed to provide him effective assistance; (3) the police seized him without probable cause, violating his Fourth Amendment rights; (4) he did not voluntarily consent to accompany the arresting officers to the precinct; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation of the court's ruling in a pre-trial hearing deprived him of his right to a fair trial.

For the reasons set forth below, the petition is denied.

BACKGROUND

On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

Detective Anthony Burzotta, investigating the crime, subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups, Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The court sentenced him as described above.

On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a pro se supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his pro se supplemental brief, were either unpreserved for appellate review or without merit. See People v. Senor, 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN1]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

FN1. Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause: (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21, 1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested leave to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate

Division denied Senor's application for a writ of error *coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. See *People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,* No. 94-01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's motion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See People v. Senor,* 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999. On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00-CV-5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998), the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective date of AEDPA) in which to file for federal habeas relief. *See id.* at 103. Pursuant to § 2244(d)(2), the time during which a properly-filed application for state post-conviction relief is pending shall not be counted in calculating the one-year grace period.

FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could

have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state appellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

FN3. Senior was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30-day period for seeking review in the Court of Appeals expired. *See* N.Y.Crim. Proc. Law § 460.10(5)(a).

**\*4** Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999. That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id.* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this petitioner because he failed to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98-CV-4567, 2002 WL 655207, at *4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00-CV-1331, 2002 WL 1467708, at * 3 (E.D.N.Y. May 7, 2002) (same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01-CV-2173, 2001 WL 1098001, at *2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

*v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also* Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams,* 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

C. *Senor's Claims*

1. *Ineffective Assistance of Trial Counsel*

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state court denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. *See* Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also* Lee v. Kemna, 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." McCleskey v. Zant, 499 U.S. 467, 493-94,

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

*7 Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. See *People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

*8 Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. See *Strickland,* 466 U.S. at 694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief to the

Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. See *People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996).

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. See *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. See *Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. See *Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. Cf. *Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

*9 [4] Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at trial, of the court's pre-trial ruling; and (3) the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687. The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

> FN4. Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.
>
> Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based upon evidence adduced at the second trial, for reconsideration of his initial motion or for a

*Dunaway* hearing.

Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05(2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel,* 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981). Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

### 2. *Lack of Probable Cause to Arrest*

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor, he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982). Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Duncan,* 513 U.S. at 365-66; *Picard,* 404 U.S. at 275-76; *Daye,* 696 F.2d at 191.

**\*10** In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the state").[FN7]

FN5. In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.

FN6. As mentioned earlier, Senor states that he

sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

FN7. Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

**\*11** Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp. 859, 863-64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court thus conducted an inquiry into the questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

[6] Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court

denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of justice will not result from my failure to review the claim.

4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre-Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

FN8. "Tr." refers to the transcript of Senor's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor intentionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary question and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924-25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97-Civ-7819, 1998 WL 668079, at \*7 (S.D.N.Y. Sept.17, 1998); *Rojas v. Senkowski,* No. 95-CV-1866, 1996 WL 449321, at \*3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

[8] In any event, the claim is procedurally defaulted. Senor asserted this claim on direct appeal to the Appellate

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.
Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 3369602 (W.D.N.Y.)
(Cite as: 2010 WL 3369602 (W.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Dwight GARRISON, Petitioner,
v.
David ROCK, Superintendent, Respondent.
**No. 08-CV-6266 (MAT).**

Aug. 23, 2010.

Dwight Garrison, Comstock, NY, pro se.

Jessica Birkahn Housel, Rochester, NY, for Respondent.

**ORDER**

[MICHAEL A. TELESCA](), District Judge.

**I. Introduction**

**\*1** *Pro se* petitioner Dwight Garrison ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to [28 U.S.C. § 2254]() challenging his conviction entered on January 30, 2003 in Monroe County Supreme Court of Attempted Murder in the Second Degree ([N.Y. Penal L. §§ 110.00](), [125.25]()(1)) and Assault in the First Degree ([N.Y. Penal L. § 120.10]()(1)) following a jury trial before Justice Francis A. Affronti. He is currently serving a determinate term of imprisonment of twenty-five years.

**II. Factual Background and Procedural History**

Petitioner's convictions arose from an incident that occurred on February 23, 2002, in the City of Rochester. During a gathering at 632 Clifford Avenue, petitioner, a/k/a Sniper, shot Dennis Nation ("Nation") and Felicia Taylor ("Taylor") each three times without provocation. Nation died from gunshot wounds to his head and chest. Taylor was shot in the leg, right side, and face, but survived the attack. T. 445, 452, 533-538, 543-548, 552, 622.[FN1]

> [FN1.]() Citations to "T. ___" refer to the trial transcript; citations to "S. ___" refer to the sentencing transcript.

Taylor testified at trial that on the evening of February 23, 2002, she attended a gathering at 632 Clifford Avenue with her boyfriend, Dennis Nation. While Nation was talking to another man, Taylor waited in the kitchen area for him. After approximately twenty minutes, three men entered the house, two of whom Taylor recognized. Taylor testified that she knew the two men as "Sniper" and "Teddy". She identified petitioner as the man she knew to be called Sniper. She stated that she had seen Teddy thirty to forty times over the past year and that she had seen Sniper five to ten times over the past year. Teddy was dressed in grey and Sniper had dark clothing on. As Taylor sat in the kitchen, there was no interaction between Nation and the three men that had recently arrived. T. 533-537.

According to Taylor, as she and Nation prepared to leave the house, Sniper, Teddy, and the third man convened in the foyer, chatting with others in the house. As Nation and Taylor entered the foyer to say goodbye, Sniper "nudged" Nation up against the wall, put a gun to his head and fired. Nation slumped to the floor. Taylor tried to run out of the house through the back entrance, but was grabbed and dragged back to Nation's body. Sniper held a gun to her head. Fighting and kicking frantically, the first shot fired missed her. Sniper shot two more times, hitting Taylor in the leg and the right side. At that point, she believes she lost consciousness. When she became aware of her

Slip Copy, 2010 WL 3369602 (W.D.N.Y.)
(Cite as: 2010 WL 3369602 (W.D.N.Y.))

surroundings again, Taylor began to scream. She then saw a grey-sleeved arm reach back through the front door and shoot her in the face. Taylor further recalled that as the shots were fired, the occupants of the house began to scatter. She managed to retrieve her cell phone from her pocket, and dialed 911 three times. When she was finally able to get through, Taylor told the 911 operator that she and her boyfriend had just been shot, and she thought her boyfriend was dead. T. 543-551.

**\*2** The first officers on the scene testified that Taylor was able to identify the shooter as "Sniper", and described her attacker as a short, Jamaican male. T. 435-436. An emergency tracheotomy was then performed on Taylor at Rochester General Hospital so she would not suffocate on her own blood. T. 371. Two bullets were recovered from Nation; the evidence established that they were fired from separate guns. T. 728.

Petitioner was charged with second-degree murder under alternative theories (intentional and depraved indifference) with respect to Nation, and second-degree attempted murder and first-degree assault for the attack on Taylor. *See* Indictment No. 02-0217 at Respondent's Appendix B. At trial, the defense argued a theory that petitioner was misidentified as the shooter.

The jury found petitioner guilty of depraved indifference murder for the killing of Dennis Nation and guilty of the attempted murder and assault of Felicia Taylor. He was subsequently sentenced to aggregate terms of imprisonment totaling fifty years to life. T. 846-847, S. 16-17.

Through counsel, petitioner filed a direct appeal to the Appellate Division, Fourth Department, which reversed the conviction for depraved indifference murder, finding the evidence legally insufficient evidence to support such a conviction where the trial evidence established petitioner's use of a weapon with a "manifest intent to kill" the victim. *People v. Garrison,* 39 A.D.3d 1138, 834 N.Y.S.2d 430 (4th Dept.2007). Petitioner's judgment of conviction was affirmed as modified. Leave to appeal the Appellate Division's decision was denied by the New York Court of Appeals. *People v. Garrison,* 9 N.Y.3d 833, 840

N.Y.S.2d 746, 872 N.E.2d 858 (2007).

The petition for habeas corpus followed, in which petitioner argues that his remaining convictions for attempted murder and assault are against the weight of the evidence. Petition ("Pet.") ¶ 22(A) & Attach. (7A) p. 1-5 (Dkt.# 1).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

### III. Discussion

### A. General Principles Applicable to Federal Habeas Review

### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375-76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### B. Petitioner's Weight of the Evidence Claim is not Cognizable on Habeas Review

Petitioner's sole claim in his petition for habeas corpus alleges that the jury's verdict was against the weight of the evidence. Pet. ¶ 22(A). Specifically, he avers that Taylor misidentified petitioner as the shooter and that her testimony was not credible, as evidenced by her "inability to name the shooter to the 911 operator" and her "poor mental and physical condition" as a result of her injuries. Pet., Attach. (7A) p. 4-5. The Appellate Division rejected this claim on the merits, holding that "the verdict is not

Slip Copy, 2010 WL 3369602 (W.D.N.Y.)
(Cite as: 2010 WL 3369602 (W.D.N.Y.))

against the weight of the evidence with respect to the issue of identification." *Garrison,* 39 A.D.3d at 1140, 834 N.Y.S.2d 430.

**\*3** The respondent has correctly argued that federal habeas corpus relief is not available to a petitioner challenging a state conviction on the ground that the conviction was against the weight of the evidence. *See* Petitioner's Mem. at 4 (Dkt.# 7).

Indeed, petitioner's "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y.Crim. Proc. Law § 470.15(5). Thus, a "weight of the evidence" argument is a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley,* 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

In making a "weight of the evidence" argument, petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (habeas corpus review not available to remedy alleged error of state law). Because petitioner's claim attacking the verdict as against the weight of the evidence does not present a federal constitutional issue cognizable in a habeas proceeding, *e.g., Ex parte Craig,* 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), *aff'd,* 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923), it must be dismissed, *e.g., Garrett v. Perlman,* 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an

error of state law, for which habeas review is not available); *Douglas v. Portuondo,* 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same).

Petitioner urges the Court to consider his sole claim in the instant petition as a challenge to the sufficiency of the evidence. *See* Respondent's Reply Mem. at 6 (Dkt.# 8). Even if the Court were to do so, "the assessment of the credibility of witnesses" is nonetheless "generally beyond the scope of [habeas] review." *Schlup v. Delo,* 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *accord Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). The fact that the jury chose to credit the testimony of the prosecution's witnesses rather than petitioner's defense that he was misidentified, or resolved inconsistencies in favor of the prosecution, does not undermine the reliability of the jury's verdict. *See Bossett v. Walker,* 41 F.3d 825, 830 (2d Cir.1994) ("the jury is exclusively responsible for determining a witness' credibility") (internal quotation marks and citation omitted) "The role of this Court is clear: '[f]ederal habeas courts are not free to reassess the facts specific to credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.' " *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996) (quoting *Anderson v. Senkowski,* No. CV-92-1007 (CPS), 1992 WL 225576, at \*3 (E.D.N.Y.Sept.3, 1992)).

**\*4** Accordingly, petitioner is not entitled to habeas relief on this ground, and the petition is dismissed.

### IV. Conclusion

For the reasons stated above, Dwight Garrison's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. *See, e.g., Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3369602 (W.D.N.Y.)
(Cite as: 2010 WL 3369602 (W.D.N.Y.))

pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

W.D.N.Y.,2010.
Garrison v. Rock
Slip Copy, 2010 WL 3369602 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

H Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony A. DEVIVO, Petitioner,
v.
SUPERINTENDENT, AUBURN CORRECTIONAL
FACILITY, Respondent.
**No. 9:02CV0840(LEK/DEP).**

March 8, 2006.

Anthony A. Devivo, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York
State Attorney General, Syracuse, NY, for Respondent.

Patrick F. Macrae, Assistant Attorney General, of counsel.

*DECISION AND ORDER*

KAHN, J.

*1 This matter comes before the Court following a
Report-Recommendation filed on October 19, 2005 by the
Honorable David E. Peebles, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of
the Northern District of New York. Report-Rec. (Dkt. No.
31). After ten days from the service thereof, the Clerk has
sent the entire file to the undersigned, including the
objections by Anthony A. DeVivo, which were filed on
December 6, 2005. Objections (Dkt. No. 33).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A judge of the court may

accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge." *Id.*
This Court has considered the objections and has
undertaken a de novo review of the record and has
determined that the Report-Recommendation should be
approved for the reasons stated therein.

While this Court accepts the recommendations made by
the Magistrate Judge, the Court wishes to note an issue
concerning Judge Peebles' finding that "the testimony
provided at the *Wade* hearing by both Officer Smith and
Officer Jack Collins of the Binghamton police
department" was "entirely consistent with Cannon's trial
testimony." Report-Rec. (Dkt. No. 31) at 38. This Court's
review of the testimony from the *Wade* hearing has found
that the testimony by Officer Smith at the *Wade* hearing
was, at times, inconsistent with the testimony of the eye
witness, Britton Cannon, at trial.

However, this Court finds that the inconsistency did not
rise to the level that would justify a finding of ineffective
assistance of counsel for failure to re-open the *Wade*
hearing. County Courts are authorized to re-open *Wade*
hearings by New York's Criminal Procedure Law, *see*
N.Y. CRIM. PROC. LAW § 710.10(4), when "the
additional information would ... have materially affected
the determination of the suppression motion." *People v.*
*Meachem,* 288 A.D.2d 162, 733 N.Y.S.2d 354, 354 (1st
Dep't 2001). The statutory standard requires that the
additional facts be "pertinent" to the suggestiveness such
that these facts would "materially affect or have affected
the earlier *Wade* determination." *People v. Clark,* 88
N.Y.2d 552, 555, 647 N.Y.S.2d 479, 670 N.E.2d 980
(1996).

Here, even if trial counsel had moved to re-open the *Wade*
hearing, there is no reason to believe that it would have
ultimately led to suppression of Cannon's identification
testimony. *See People v. Carroll,* 303 A.D.2d 200, 759
N.Y.S.2d 443, 444 (1st Dep't 2003), *leave denied, People*
*v. Carroll,* 100 N.Y.2d 560, 763 N.Y.S.2d 817, 795
N.E.2d 43 (2003). *See also People v. Clark,* 88 N.Y.2d
552, 647 N.Y.S.2d 479, 670 N.E.2d 980 (1996).
Regardless of whether or not Cannon hesitated before
making the identification of DeVivo, the fact remains that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

Cannon did assertively identify DeVivo in a properly conducted line-up procedure that was conducted within a short time, as well as within a few blocks, of the crime. *See id.* The minor inconsistencies uncovered between Officer Smith's *Wade* hearing testimony and Cannon's trial testimony do not rise to the statutory level of "pertinent" that would indicate that the line-up was suggestive.

**\*2** Accordingly, it is hereby

ORDERED, that the Report-Recommendation is APPROVED and ADOPTED in its ENTIRETY; and it is further

ORDERED, that the Petition in this matter (Dkt. No. 1) is DENIED and DISMISSED in its ENTIRETY; and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

IT IS SO ORDERED.

*REPORT AND RECOMMENDATION*

PEEBLES, Magistrate J.

Petitioner Anthony A. DeVivo, a New York State prison inmate as a result of convictions in 1998 of burglary in the second degree, first degree perjury and third degree criminal mischief, has commenced this proceeding seeking habeas relief pursuant to 28 U.S.C. § 2254. In support of his request for federal habeas intervention, petitioner asserts numerous different grounds for relief, the majority of which were presented to and rejected by the state courts on direct appeal of his conviction.

Having carefully reviewed the record in light of petitioner's claims, I find that DeVivo is procedurally barred from obtaining habeas relief as to the unexhausted claims he asserts in this matter. Addressing the merits of

the remaining claims raised by DeVivo in this proceeding, in light of the requisite deferential standard, I recommend that those grounds be denied.

I. *BACKGROUND*

According to the testimony adduced at trial, in the early morning hours of July 26, 1998, the Binghamton Police Department received a call of a break-in at an apartment located on Lydia Street, in the City of Binghamton.[FN1] *See* Respondent's Appendix on Appeal ("Resp.App.") at A79. Briton Cannon, who was outside of the apartment when the police arrived, informed law enforcement agents that he had recently seen several men enter his apartment without his consent and break many of the items contained within his home. Resp.App. at A1. Cannon then provided a police officer with a description of the vehicles used by the perpetrators to flee the scene. *Id.* While that officer was speaking with Cannon, Jermaine Fullard approached the officer and provided him with an address on Valley Street in Binghamton, New York at which he believed the suspects could be found. Resp.App. at A2-3.

FN1. In conjunction with petitioner's direct appeal, neither the district attorney nor appellate counsel provided the appellate court with a complete copy of the trial transcript. Rather, the parties provided to that court only those portions of the trial transcript which were included within the appendices submitted along with the parties' appellate briefs. This court was similarly not provided with a complete copy of the trial transcript generated during the course of petitioner's trial. I will therefore cite to the appendices filed by the parties with their briefs, or other portions of the state court record, in discussing the evidence offered at trial.

Investigating officers proceeded to the address provided to them by Fullard; upon their arrival, they observed vehicles on a nearby street matching the description of the vehicles reportedly used by the alleged perpetrators. Resp.App. at A3. Binghamton Police Officer Carl Smith then approached the apartment where he believed the suspects might be present and asked several of the occupants if he could enter the residence and speak with

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

them. Resp.App. at A5. After obtaining the consent of the occupants, Officer Smith briefly spoke with the individuals in the home and learned that someone was present in a rear bedroom. Resp.App. at A5-6. Officer Smith went to the bedroom and observed an individual-later identified as petitioner Anthony DeVivo-feigning sleep on the bed. Resp.App. at A6-7. The officers then asked DeVivo and the other individuals to leave the apartment for purposes of participating in a "show up" at which Officer Smith would ascertain whether Cannon or Fullard could positively identify any of the individuals as perpetrators of the burglary. [FN2] Resp.App. at A6-8. Cannon subsequently identified DeVivo as one of the participants of that crime. Resp.App. at A8, A31-32.

> [FN2.] All of the occupants of the apartment, including DeVivo, agreed to participate in the show up. Resp.App. at A7.

*3 DeVivo was thereafter arrested and placed in the Broome County Jail based upon his alleged participation in the burglary at the Lydia Street residence. Resp.App. at A41. While at that facility, DeVivo allegedly threatened to kill the other individuals who participated in that crime if they implicated DeVivo in the burglary. Resp.App. at A65, A69. Additionally, both Fullard and Cannon testified at trial that DeVivo had offered them money in exchange for their agreement to testify falsely at his parole revocation hearing, to the effect that petitioner was not involved in the burglary. See Appellant's Brief at 6.

II. PROCEDURAL HISTORY

A. State Court Proceedings

A Broome County grand jury returned an indictment against DeVivo on November 13, 1998, charging him with the crimes of second degree burglary, in violation of N.Y. Penal Law §§ 20.00 and 140.25; two counts of bribing a witness, in violation of N.Y. Penal Law § 215.00; perjury in the first degree, in violation of N.Y. Penal Law § 210.15; [FN3] third degree criminal mischief, in violation of N.Y. Penal Law §§ 20.00 and 145.05; and three counts of tampering with a witness in the third degree, in violation of N.Y. Penal Law § 215.11. See Indictment.

> [FN3.] The perjury charge alleged that DeVivo committed that crime when he testified before the grand jury that he was not involved in the Lydia Street burglary. See Indictment No. 98-707 (Resp.App. at AA3-11) ("Indictment"), Count Four.

On March 29, 1999, Broome County Court Judge Martin J. Smith conducted a pretrial hearing to address a motion filed by petitioner's counsel seeking dismissal of the indictment against DeVivo. Resp.App. at AA291. At the conclusion of that proceeding, with the consent of the District Attorney, the trial court dismissed all three counts accusing DeVivo of third degree tampering with a witness. [FN4] Resp.App. at AA292-94. The court also dismissed both bribery counts returned against DeVivo, based upon its finding that the evidence presented to the grand jury was insufficient to sustain those charges. Resp.App. at AA312. In dismissing the latter charges, however, the trial court agreed with the prosecution that it nonetheless could offer evidence relating to those dismissed charges in its case against DeVivo on the remaining charges, provided it could establish a proper foundation for the admission of such evidence. Resp.App. at AA313-14.

> [FN4.] Those counts accused DeVivo of compelling Harold Knox, Kevin Pierce, and Luther Jones, Sr. to provide false testimony at a criminal proceeding. Indictment, Counts Six through Eight.

DeVivo was ultimately tried in connection with the remaining charges before a jury in Broome County Court, beginning on March 30, 1999, with Judge Smith presiding. In his defense to the charges DeVivo testified, as he had before the grand jury that indicted him, that although he was in the company of the people who burglarized Cannon's apartment on the evening in question, he was asleep at the time of the criminal activity which occurred at the Lydia Street residence. Appellant's Appendix ("App.") at AA237-38, 269; see also Respondent's Brief on Appeal (1/25/01) at 6.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

At the conclusion of his trial, DeVivo was found guilty on all counts. Resp.App. at AA1. As a result of the jury's verdict, DeVivo was sentenced as a second felony offender on June 7, 1999 by Judge Smith to a determinate term of imprisonment of ten years on the second degree burglary conviction, a consecutive, indeterminate term of three to six years imprisonment on the first degree perjury conviction, and an indeterminate term of two to four years imprisonment on the third degree criminal mischief conviction, with this latter sentence to run concurrently with the other sentences imposed on DeVivo, yielding a minimum aggregate term of thirteen years of imprisonment. Resp.App. at AA1-2, AA346-47.

**\*4** DeVivo appealed his conviction and sentence to the New York State Supreme Court, Appellate Division, Third Department. With the assistance of counsel, DeVivo argued in his appeal that 1) the burglary and perjury charges were improperly joined in a single indictment; 2) DeVivo was improperly tried on both the perjury charge and the burglary charge before the same jury; 3) the trial court improperly allowed the prosecution to use evidence relating to the charges it had dismissed from the indictment in the prosecutor's case-in-chief; 4) DeVivo was improperly forced to participate in the show-up identification conducted by law enforcement agents on July 26, 1998; 5) the prosecution's summation was improper; and 6) the sentence imposed was excessive. *See* Brief in Support of Appeal ("App.Br.") at 8-17. The Third Department issued a decision on April 5, 2001 rejecting each of petitioner's contentions and unanimously affirming his conviction and sentence. *See People v. DeVivo, 282 A.D.2d 770, 726 N.Y.S.2d 145 (3d Dept.2001).* On July 5, 2001, New York's Court of Appeals denied DeVivo leave to appeal the Appellate Division's decision. *People v. DeVivo, 96 N.Y.2d 900, 730 N.Y.S.2d 798, 756 N.E.2d 86 (2001).*

In August, 2000, DeVivo filed a motion to vacate his judgment of conviction pursuant to section 440.10 of New York's Criminal Procedure Law ("CPL"); that motion was later supplemented by the petitioner on April 12, 2001. Dkt. No. 16, Exhs. C, E ("August, 2000 CPL Motion"). The trial court denied petitioner's section 440.10 application by decision and order dated May 9, 2001. *See* Dkt. No. 29 ("May, 2001 Order"). Leave to appeal that decision was later denied by the Third Department. Dkt. No. 16, Exh. J.

In September of 2001, DeVivo filed a second CPL motion with the county court. Dkt. No. 16, Exh. K. That second application for collateral relief was denied by the trial court in a decision and order dated January 18, 2002. *See* Dkt. No. 29 ("January, 2002 Order"). Though it is not entirely clear, it appears that DeVivo unsuccessfully sought leave to appeal that unfavorable decision from the Appellate Division.[FN5]

> [FN5.] This court was not provided with a copy of an order of the Appellate Division denying any leave application filed by DeVivo regarding the January, 2002 Order. Respondent has not argued, however, that petitioner failed to exhaust any of his federal habeas claims. *See* Dkt. No. 17.

The record also reflects that on June 10, 2002, DeVivo filed an application with the Appellate Division seeking a writ of error *coram nobis* (*"Coram Nobis* Application"). In that collateral challenge to his conviction, DeVivo claimed, *inter alia,* that he received the ineffective assistance of both trial and appellate counsel. *See id.* On August 15, 2002, the Appellate Division denied that application. *See* Dkt. No. 30.

**B. *This Proceeding***

DeVivo commenced this matter on June 26, 2002. Petition (Dkt. No. 1) at 1. Following routine review of the petition, the assigned District Judge, the Hon. Lawrence E. Kahn, directed DeVivo to pay the filing fee required to maintain this action and ordered the respondent to file a response to DeVivo's petition. Before that response was filed, however, petitioner filed an amended petition as of right in this matter. *See* Dkt. No. 7; *see also* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 15(a), 81(a).

**\*5** In his amended petition, *inter alia,* DeVivo argues that he received the ineffective assistance of counsel in several regards, including: 1) in the manner "outlined in the Writ of Error Coram Nobis"; 2) when both trial and appellate counsel failed to argue that prosecutorial misconduct

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

before the grand jury that indicted DeVivo rendered the indictment void; 3) because trial counsel failed to request that the pretrial *Wade* hearing [FN6] be re-opened by the County Court; 4) when appellate counsel failed to argue that trial counsel wrongfully failed to request that the *Wade* hearing be re-opened; and 5) when trial and appellate counsel failed to argue that prosecution witness Fullard was improperly allowed to provide identification testimony relating to DeVivo despite a pre-trial ruling prohibiting such testimony. *See* Amended Petition (Dkt. No. 7) at (unnumbered) 2-6. In addition to these claims challenging the performance of his trial and appellate counsel, DeVivo also argues that he is entitled to habeas intervention based upon his contention that: 1) law enforcement agents committed perjury at the *Wade* hearing; 2) the indictment was defective because it improperly joined the burglary and perjury charges; 3) he was improperly tried on both the perjury charge and the burglary charge; 4) the trial court improperly allowed the prosecution to use evidence relating to charges dismissed from the indictment in prosecuting DeVivo on the remaining charges; 5) DeVivo was improperly forced to participate in the show-up identification conducted by law enforcement agents on July 26, 1998; 6) the prosecution's summation was improper; 7) the sentence imposed on DeVivo was excessive; and 8) the summary denial of DeVivo's post-trial collateral applications for relief by the state courts was improper.[FN7] Amended Petition (Dkt. No. 7) at (unnumbered) 7-8.

> FN6. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive. *See Blas v. Herbert,* 2003 WL 22480093, at *3 n. 2 (S.D.N.Y. Oct.31, 2003) (*citing Wade* ).

> FN7. I note that although DeVivo does not specifically delineate each of these claims in his amended pleading, he specifically asks that this court consider "[e]ach and every argument [raised in his] [d]irect [a]ppeal." Amended Petition (Dkt. No. 7) at (unnumbered) 7. In light of DeVivo's *pro se* status, I have considered all of the claims asserted by DeVivo on appeal as

additional grounds for relief in this matter. *See Alexis v. Smith,* 03CIV.391, 2003 WL 22434154, at *4 (S.D.N.Y. Oct.24, 2003) (habeas claims are to be construed liberally in this circuit) (citing *Chambers v. United States,* 106 F.3d 472, 475 (2d Cir.1997)); *see, e.g., Phillips v. Gordich,* 408 F.3d 124, 130 (2d Cir.2005) (in construing *pro se* parties' submissions, "the court's imagination should be limited only by [the party's] factual allegations, not by the legal claims set out in his pleadings") (citation omitted).

The New York State Attorney General, acting on respondent's behalf, has opposed the granting of DeVivo's amended petition by filing an answer and a memorandum of law in opposition to that application, arguing that the claims raised in the petition are without merit. *See* Dkt. Nos. 17, 18. In his reply memorandum, or "traverse," petitioner essentially reiterates the arguments previously asserted in support of his petition. *See* Dkt. No. 21.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Procedurally Defaulted Claims*

A federal habeas court is precluded from reviewing a claim if the state courts' rejection of the argument rests on "independent and adequate state grounds." *Coleman v. Thompson,* 501 U.S. 722, 736, 111 S.Ct. at 2558, 115 L.Ed.2d 640 (1991); *Jones v. Stinson,* 229 F.3d 112, 117 (2d Cir.2000). This occurs when the last state court rendering a decision in the case held that its judgment rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Jones,* 229 F.3d at 118.

**\*6** As was noted earlier, DeVivo has requested that this court consider "[e]ach and every argument" raised in his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

direct appeal as a basis for granting his federal habeas petition. Amended Petition (Dkt. No. 7) at (unnumbered) 7. Several of the claims raised by DeVivo in his direct appeal, however, were deemed by the state appellate court as procedurally barred. As a threshold matter, I must examine whether that state court finding precludes consideration of those forfeited claims on habeas review.

In affirming petitioner's conviction, the Third Department found his claim that the indictment improperly joined the burglary and criminal mischief charges with the perjury charge was "not properly preserved." [FN8] *DeVivo* 282 *A.D.2d at 771, 726 N.Y.S.2d at 147*. A finding that a claim is not preserved for appellate review is a clear expression of procedural default regarding such a claim. See *Udzinski v. Kelly, 734 F.Supp. 76, 81 (E.D.N.Y.1990)*.

> FN8. The Appellate Division noted that to preserve his claim of improper joinder for appeal, DeVivo was required to have filed a pre-trial motion to sever the indictment, a step which was not taken in this instance. *DeVivo, 282 A.D.2d at 771, 726 N.Y.S.2d at 147* (citations omitted).

In addressing DeVivo's appellate claim that the integrity of the grand jury proceedings was compromised because the grand jury that returned the burglary and criminal mischief charges also returned the perjury charge that arose out of DeVivo's testimony before that same accusatory body, the Appellate Division similarly found that DeVivo's "failure to timely submit a written motion to dismiss on this ground ... waive[d] his right to a determination of the issue." *DeVivo 282 A.D.2d at 772, 726 N.Y.S.2d at 148* (citations omitted). A finding by a state court that a party waived his or her right to appeal an issue constitutes an independent and adequate state procedural ground for the denial of such a claim. *See Moore v. Senkowski,* No. 97-CV-1237 (Dkt. No. 20), slip op. at 4-5 (N.D.N.Y. Mar. 29, 2002) (Mordue, J.), *aff'd, Moore v. Senkowski,* No. 97-CV-1237 (Dkt. No. 30), *72 Fed.Appx. 860 (2d Cir. Sept.23, 2003)* (unpublished); *see also Singh v. Kuhlmann,* No. 94 CIV. 2213, 1995 WL 870113, at *12 (S.D.N.Y. Aug. 25, 1995)* ("Appellate Division's judgment that [petitioner] had waived the right to appeal ... rested on adequate and independent state

grounds"), *adopted, 1996 WL 337283 (S.D.N.Y. June 19, 1996)*; *U.S. ex rel. Hogan v. Bara, 578 F.Supp. 1075, 1081 (E.D.N.Y.1984)* ( "state procedural waiver constituted an independent and adequate state ground" for the Appellate Division's affirmance of the conviction).

DeVivo additionally asserted on appeal, and now argues in this proceeding, that his constitutional right to be free from unreasonable searches and seizures was violated when he was forcibly removed from the Lydia Street apartment on July 26, 1998 and thereafter compelled to participate in the "show up" identification on the sidewalk outside that apartment. App. Br. at 13; Amended Petition (Dkt. No. 7) at (unnumbered) 7. In denying this claim in the context of DeVivo's direct appeal, the Appellate Division found the claim to be "unpreserved for review." *DeVivo 282 A.D.2d at 771, 726 N.Y.S.2d at 147*. That finding constitutes a procedural denial of a claim by the state court. *Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 17), *2002 WL 31678312, at *16 (N.D.N.Y. Nov.8, 2002)* (Peebles, M.J.), *adopted,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.).

*7 Where a state court has clearly and expressly stated that its judgment rested on a state procedural bar, a federal court may not review the claim unless the petitioner demonstrates both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. [FN9] *Dixon,* 293 F.3d at 80-81 (citing *Coleman*); *St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir.2004)* ("[i]n the case of procedural default ... [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998)) (other citations omitted); *see generally Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)*; *Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir.1999)*; *Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir.2000)*; *Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir.1995)*.

> FN9. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.), *cert. denied,* 537 U.S. 955, 123 S.Ct. 426, 154 L.Ed.2d 305 (2002).

DeVivo has failed to establish cause for his procedural default concerning the foregoing claims. Although a liberal reading of DeVivo's amended petition might suggest a claim that his trial counsel rendered ineffective assistance in failing to preserve these issues for appellate review, as is discussed more fully below, DeVivo's claims alleging ineffective assistance are without substance. Moreover, DeVivo has not established cause for his failure to assert any of the procedurally defaulted claims in his *pro se* appellate brief. [FN10]

> FN10. Although this court was not provided with a copy of DeVivo's *pro se* appellate brief, the Appellate Division's decision makes it clear that such a brief was filed by DeVivo. *See DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148 (Appellate Division noting that it "reviewed [DeVivo's] remaining contentions, including those raised in his pro se appellate brief, and find them to be equally without merit").

I further find that DeVivo has failed to establish that he is actually innocent of the charges of which he stands convicted. "To establish actual innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Bousley,* 523 U.S. at 623, 118 S.Ct. at 1611 (quoting *Schlup v. Delo,* 513 U.S. 298, 327-28, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)) (additional citation omitted). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623-24, 118 S.Ct. at 1611 (citing *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)). The compelling evidence adduced at trial of DeVivo's guilt, as outlined above, establishes that DeVivo is not innocent of the charges of which he was convicted. In light of the foregoing, I recommend that the above-referenced claims be denied and dismissed as procedurally forfeited. [FN11]

> FN11. Respondent has not argued that petitioner is procedurally barred from asserting these

claims. *See* Dkt. No. 17 at pp. 4-8. Although a district court can raise a petitioner's procedural default as a basis for the denial of federal habeas relief, *sua sponte, see, e.g., Acosta v. Artuz,* 221 F.3d 117, 121 (2d Cir.2000) (citing *Yeatts v. Angelone,* 166 F.3d 255, 262 (4th Cir.1999)), the Second Circuit has held that before a claim in a petition may properly be dismissed on procedural grounds on the court's own initiative, a district court must afford the petitioner notice of its intention to dismiss the claim on a procedural basis and an opportunity to be heard. *Acosta,* 221 F.3d at 124. Accordingly, if petitioner believes that these claims should not be dismissed as procedurally defaulted, he must raise this contention in timely-filed objections to this report and recommendation.

B. *Standard of Review Applicable to Remaining Claims*

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. A federal court cannot grant habeas relief to a state prisoner on a claim

**\*8** that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also* DeBerry, 403 F.3d at 66; Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir.2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir.2000)).

Because the AEDPA's restriction on federal habeas power is premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. Washington v. Shriver, 255 F.3d 45, 52-55 (2d Cir.2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See* Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir.2001).

In *Sellan,* the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the federal claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to

the federal claim or to federal case law. Sellan, 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*"

**\*9** Sellan, 261 F.3d at 312 (emphasis added), *see also* Ryan v. Miller, 303 F.3d 231, 246 (2d Cir.2002).[FN12]

> FN12. In his opinion in *Sellan,* Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA's deference standard. Sellan, 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". Williams, 529 U.S. at 409, 120 S.Ct. at 1521; *see also* Sellan, 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great [.]" Francis S., 221 F.3d

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

at 111.

C. *Substance of Remaining Claims*

1. *Ineffective Assistance of Trial Counsel*

The first four grounds in DeVivo's amended petition allege that he received the ineffective assistance of trial counsel. Amended Petition (Dkt. No. 7) at (unnumbered) 2-6.

In his *coram nobis* application (to which the petitioner refers this court as support for his habeas claim alleging ineffective assistance, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 2), DeVivo argued that trial counsel improperly failed to 1) "raise certain objections for the record;" 2) preserve various legal issues for appellate review; 3) file unspecified motions with the trial court; 4) seek dismissal of the indictment pursuant to CPL § 210.35(5); 5) request jury charges relating to the defense of intoxication and seek instructions to the jury regarding lesser included offenses; and 6) "motion the court or object to issues which needed to be addressed." FN13 *See Coram Nobis* Application at 14, 16, 32-33, 57-60.

> FN13. A *coram nobis* application is only properly utilized to assert a claim alleging ineffective assistance of *appellate* counsel. *See People v. Bachert,* 69 N.Y.2d 593, 595-96, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987)). However, in *Aparicio v. Artuz,* 269 F.3d 78 (2d Cir.2001), the Second Circuit determined that where a party raises an ineffective assistance of *trial* counsel claim in a *coram nobis* application, federal courts are to conclude that such claim was adjudicated on the merits even though such a claim is not properly asserted in a *coram nobis* application and even where the Appellate Division does not acknowledge the existence of the trial counsel claim in its order denying the *coram nobis* application. *Aparicio,* 269 F.3d at 92-93.

In addition to the claims raised in his *coram nobis*

application challenging the effectiveness of his trial counsel, DeVivo additionally contends in his amended petition that his trial attorney's performance was deficient, in a constitutional sense, because he failed to move to dismiss the indictment against DeVivo on the grounds that the prosecutor "created a hostile and biased environment" with respect to the grand jury which returned the indictment DeVivo. Amended Petition (Dkt. No. 7) at (unnumbered) 2-3. DeVivo also argues that trial counsel improperly failed to move to re-open the *Wade* hearing after purportedly learning that a prosecution witness had committed perjury at that hearing. Amended Petition (Dkt. No. 7) at (unnumbered) 4-5. Finally, petitioner argues that his trial counsel failed to object to identification testimony offered by Fullard at trial despite a pretrial order prohibiting such testimony. Amended Petition (Dkt. No. 7) at (unnumbered) 5-6.

a. *Clearly Established Supreme Court Precedent*

**\*10** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must typically show both a) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and b) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688-90, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland* ). In *Williams,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly established Federal law[.]" *Williams,* 529 U.S. at 391, 120 S.Ct. at 1512.

b. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

As was previously noted, petitioner raised several of his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:08-cv-00731-TJM-DEP   Document 14   Filed 12/06/10   Page 136 of 153

Page 10

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

ineffective assistance claims in his June, 2002 *coram nobis* application. On August 15, 2002, the Appellate Division denied DeVivo's *coram nobis* application. *See* Dkt. No. 30. I must therefore determine whether that decision is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.

In his first claim challenging the adequacy of his representation at trial, petitioner argues, without elaboration, that his defense counsel "failed to raise certain objections for the record." *See Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. In a similar vein, DeVivo claims that his trial attorney failed to "[m]otion the court and object to issues which needed to be addressed." *See Coram Nobis* Application at 16; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

Rule 2(c) of Rules Governing Section 2254 cases requires a habeas petitioner to "specify all grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." Moreover, the federal habeas petitioner bears the burden of proving that his constitutional rights were violated in the state court proceeding. *See Whitaker v. Meachum,* 123 F.3d 714, 716 (2d Cir.1997) (citing *Walker v. Johnston,* 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941)) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Frazier v. New York,* 187 F.Supp.2d 102, 108 (S.D.N.Y.2002) (citation omitted).

The transcript of DeVivo's criminal trial consisted of over 650 transcribed pages, exclusive of closing arguments and jury instructions. Petitioner's failure to cite specific instances during the course of that proceeding in support of his claims that his attorney failed to lodge appropriate objections and/or file relevant motions on petitioner's behalf represents a failure on his part to both comply with Rule 2(c) of Rules Governing Section 2254 cases, as well as to shoulder his burden of proof. *E.g. Vasquez v. McGrath,* No. CIVS021925, 2005 WL 2001020, at *15 (E.D.Cal. Aug.19, 2005); *Banks v. New York State Dept. of Correctional Services,* No. 01 CIV. 3985, 2001 WL 1448612, at *2 (S.D.N.Y. Nov 15, 2001) ("a petition may be dismissed if it contains only vague or conclusory allegations") (citation omitted); *U.S. ex rel. Johnson v.*

*Tally,* 47 F.Supp.2d 943, 953-54 (N.D.Ill.1999) (petitioner's failure to provide facts in support of habeas claim renders claim unreviewable by federal district court); *U.S. ex rel. Walls v. DeTella,* No. 94 C 6749, 1997 WL 534287 (N.D.Ill. Aug.19, 1997) (denying habeas claim where petitioner failed to "identif[y] any facts supporting ... claim in his habeas petition").

**\*11** Petitioner next contends that his trial counsel failed to "preserve certain legal issues for a possible direct appeal." *See Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. In its decision denying petitioner's appeal, the Third Department noted that DeVivo's trial counsel had failed to preserve for appellate review several of the claims that had been raised on appeal by appellate counsel. *See DeVivo,* 282 A.D.2d at 771-72, 726 N.Y.S.2d at 147-48. While at first blush this finding might appear to bolster DeVivo's claim that his trial counsel rendered ineffective assistance, I note that in each instance where the Appellate Division determined that an issue had not been preserved for appellate review by the actions of trial counsel, that court nevertheless alternatively addressed the merits of those claims, in each instance finding no basis upon which to reverse DeVivo's conviction. *See DeVivo,* 282 A.D.2d at 771-72, 726 N.Y.S.2d at 147-48. Thus, even assuming, *arguendo,* that it was objectively unreasonable for trial counsel to have failed to preserve those issues for appellate review, the Appellate Division's actions in considering-and ultimately finding without merit-those unpreserved claims conclusively establishes that DeVivo was not prejudiced by trial counsel's actions relating to those arguments.

Petitioner additionally faults trial counsel for failing to seek the dismissal of the indictment due prosecutorial misconduct before the grand jury which ultimately indicted him. *See Coram Nobis* Application at 31-33; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. Specifically, petitioner contends that the prosecutor wrongfully sought to indict him for witness tampering despite the fact that "no evidence to support the allegations to [*sic* ] the tampering existed." *Coram Nobis* Application at 31. Petitioner further contends that "[f]abricated bribery charges" were returned by the grand jury. *Coram Nobis* Application at 31-33; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

Just prior to the start of DeVivo's trial, the trial court *sua sponte* reconsidered an order it had previously issued in which it had denied defense counsel's motion to dismiss the indictment "for legal insufficiency and any other defects that may have occurred ... during the grand jury proceedings." *See* App. at AA291-92. After noting that it had inspected the grand jury minutes (*see* App. at AA291), the court determined that the evidence presented to the grand jury relative to the three counts in the indictment which charged DeVivo with tampering with a witness in the third degree was "insufficient to support those three counts" and accordingly dismissed those charges. App. at AA292-94. In similarly dismissing the bribery counts that had been returned against DeVivo, the county court concluded that there was legally insufficient evidence to establish that the letters that formed the basis of those charges were written by DeVivo. *See* App. at AA302-03, AA311-12.

**\*12** Since the record reflects that the county court carefully reviewed the charges in the indictment in conjunction with defense counsel's motion to dismiss that accusatory instrument, I find that petitioner has not established that DeVivo's trial counsel rendered ineffective assistance by failing to seek dismissal of the remaining charges in the indictment due to prosecutorial misconduct. In this regard, I note that the Appellate Division specifically determined that DeVivo failed to make any "specific showing of prosecutorial misconduct" before the grand jury in the context of his direct appeal. *DeVivo*, 282 A.D.2d at 772, 726 N.Y.S.2d at 148.

In the final claims relating to the sufficiency of his representation at trial asserted in his *coram nobis* application, DeVivo argues that his trial counsel improperly failed to 1) seek a jury instruction relating to DeVivo's claimed intoxication on the night of the burglary; and 2) request that the county court instruct the jury to consider lesser included offenses during its deliberations. *Coram Nobis* Application at 57-60; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

In claiming that his counsel wrongfully failed to seek an intoxication charge, [FN14] DeVivo appears to overlook established authority in New York which holds that an intoxication charge should only be provided to the jury

where there is "sufficient evidence of intoxication in the record for a reasonable person to entertain doubt as to the element of intent on that basis." *Brown v. Rick,* No. 01 Civ.4310, 2003 WL 22801397, at \*5 (S.D.N.Y. Nov.25, 2003) (internal quotation and citation omitted). Although DeVivo testified in his own defense at his trial, he never claimed at that time that he was intoxicated on the night of the burglary, and instead claimed that he was asleep on the couch while the burglary took place. *See* App. at AA223-40. Since there was no record evidence which demonstrated that DeVivo was intoxicated on the night of July 26, 1998, there was no legal basis for his attorney to request such a jury instruction.

> FN14. In New York, intoxication is not defense to a criminal charge; evidence of intoxication of the defendant may be offered, however, whenever it is relevant to negate an element of the crime charged. *See* N.Y. Penal Law § 15.25.

DeVivo further complains of his trial attorney's failure to request that the county court instruct the jury as to lesser included offenses for consideration during its deliberations.[FN15] *Coram Nobis* Application at 59; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. In making this argument, DeVivo has not specifically identified any lesser-included offenses which, he contends, should have been brought to the jury's attention prior to deliberations. As a result of petitioner's omission, I have reviewed New York's penal provisions in an attempt to discern any lesser included offenses that DeVivo may now be claiming should have been charged to the jury. That review establishes that numerous lesser included offenses might conceivably exist relative to a charge of second degree burglary; in addition to the crime of burglary in the third degree (N.Y. Penal Law § 140.20), New York law also provides for various degrees of criminal trespass, which is a lesser included offense of burglary. *See People v. Bleau,* 276 A.D.2d 131, 132, 718 N.Y.S.2d 453, 454 (3d Dept.2001) (criminal trespass is a lesser included offense of second degree burglary); *see also* N.Y. Penal Law § 140.17 (criminal trespass in the first degree); N.Y. Penal Law § 140.15 (criminal trespass in the second degree); N.Y. Penal Law § 140.10 (criminal trespass in the third degree); and trespass (N.Y. Penal Law § 140.05). DeVivo may also be claiming that his attorney should have requested that the jury be charged with criminal mischief in the fourth degree, a lesser included offense of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

the criminal mischief in the third degree charge. *E.g., People v. Cammorto,* 185 A.D.2d 986, 987-88, 587 N.Y.S.2d 408, 409 (2d Dept.), *leave denied,* 80 N.Y.2d 1025, 592 N.Y.S.2d 675, 607 N.E.2d 822 (1992). Finally, perjury in the second and third degrees may be considered lesser included offenses of first degree perjury. *See* N.Y. Penal L. §§ 210.15, 210.10, 210.05.

> **FN15.** This court was not provided with the transcripts of any pre-charge conferences between the parties and the county court, nor was a transcript of the actual jury instructions given by the county court at DeVivo's trial made available in this proceeding.

**\*13** It is appropriate to charge a lesser-included offense only when " '(1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense." ' *Paul v. Kelly,* No. CV 90-1654, 1991 WL 49774, at \*5 (E.D.N.Y. Mar.26, 1991) (quoting *Rice v. Hoke,* 846 F.2d 160, 165 (2d Cir.1988)). In the present action, DeVivo has wholly failed to demonstrate how a reasonable view of the evidence adduced at trial would have supported convictions for any of the lesser included offenses referenced above while at the same time been insufficient to establish his guilt of the crimes actually charged to the petit jury.[FN16] Petitioner has therefore not established that the jury should have been instructed as to any of the lesser included offense noted above.[FN17] Based upon the foregoing, I recommend that this aspect of his petition be denied.

> **FN16.** New York's Court of Appeals has observed that juries cannot "choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well." *People v. Discala,* 45 N.Y.2d 38, 43, 407 N.Y.S.2d, 660, 664, 379 N.E.2d 187 (1978).

> **FN17.** I also find that, as with petitioner's claim that his attorney failed to raise objections or file appropriate motions on petitioner's behalf at trial,

DeVivo's failure to provide any factual support for his claim that his trial attorney improperly failed to request that the jury be charged with unspecified lesser included offenses constitutes a failure on DeVivo's part to comply with Rule 2(c) of Rules Governing Section 2254 cases. *See Vasquez,* 2005 WL 2001020, at \*15; *Banks,* 2001 WL 1448612, at \*2; *Tally,* 47 F.Supp.2d at 953-54.

In addition to the bases delineated in his *coram nobis* application, DeVivo also now claims that his trial attorney failed to argue that the entire indictment was subject to dismissal because the prosecutor 1) pursued charges before the grand jury that were not supported by legal evidence; and 2) obtained an indictment charging DeVivo with committing perjury before the same grand jury at which the DeVivo provided the allegedly perjurious testimony, and that through that failure his counsel failed to provide him with constitutionally adequate representation. Amended Petition (Dkt. No. 7) at (unnumbered) 9-10. This claim was unsuccessfully raised by DeVivo in his August, 2000 CPL Motion, *see* August, 2000 CPL Motion, Point Four, which was denied on the merits.[FN18] *See* May, 2001 Order.

> **FN18.** In its May, 2001 order, the county court denied several aspects of DeVivo's August, 2000 CPL Motion as procedurally barred. *See* May, 2001 Order at 2-4. That court did not, however, clearly and expressly deny on procedural grounds DeVivo's claim that trial counsel had rendered ineffective assistance by failing to move to dismiss the entire indictment. *See* May, 2001 Order. Under such circumstances, I may not properly conclude that this claim was found to be procedurally barred when raised by DeVivo in the state courts. *See Galdamez v. Keane,* 394 F.3d 68, 77 (2d Cir.), *cert denied sub nom., Galdamez v. Fischer,* --- U.S. ----, 125 S.Ct. 1996, 161 L.Ed.2d 868 (2005). Accordingly, I conclude that such claim was denied by the trial court on the merits.

These arguments, however, overlook the well-settled precedent which establishes that any error in the grand jury proceedings below was necessarily cured by DeVivo's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

subsequent conviction by a petit jury on the charges contained in that accusatory instrument. *United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 941-42, 89 L.Ed.2d 50 (1986). Claims based upon trial counsel's alleged ineffectiveness in failing to move to dismiss an indictment are therefore not cognizable in federal habeas proceedings. *See Montalvo v. Annetts,* No. 02 CIV.1056, 2003 WL 22962504, at *24-25 (S.D.N.Y. Dec.17, 2003).

DeVivo next contends, as he did in his September, 2001 CPL Motion, that his trial attorney rendered ineffective assistance in failing to request that the *Wade* hearing be re-opened by the trial court. *See* September, 2001 CPL Motion at 32; [FN19] Amended Petition (Dkt. No. 7) at (unnumbered) 13. In support of this claim, petitioner argues Cannon's trial testimony established that during the show up identification, he initially failed to identify DeVivo as a suspect, and only made that identification after being subjected to "extremely prejudic[al] and unduly suggestive" tactics. Amended Petition (Dkt. No. 7) at (unnumbered) 11. Petitioner further argues that Cannon's testimony establishes that Officer Smith [FN20] committed perjury at the pretrial *Wade* hearing conducted by the county court regarding Cannon's identification of DeVivo, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 11-12, and that counsel's failure to request that the *Wade* hearing be re-opened following Cannon's testimony constituted ineffective assistance. Amended Petition (Dkt. No. 7) at (unnumbered) 13.

FN19. The county court found this aspect of DeVivo's September, 2001 CPL Motion to be without merit. *See* January, 2002 Order at 3.

FN20. Although petitioner does not provide the name of the police officer whom he claims committed perjury at the *Wade* hearing, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 11-12), the record reflects that Officer Smith was the officer who was with Cannon on the night the show up identification was conducted. App. at A8.

*14 Although New York's criminal procedure law authorizes county courts to re-open *Wade* hearings, *see* CPL § 710.10(4),[FN21] such an application is only

appropriate where "the additional information would ... have materially affected the determination of the suppression motion." *People v. Meachem,* 288 A.D.2d 162, 162 733 N.Y.S.2d 354, 354 (1st Dept.2001) (citing *People v. Clark,* 88 N.Y.2d 552, 647 N.Y.S.2d 479, 670 N.E.2d 980 (1996)), *leave denied People v. Meachem,* 97 N.Y.2d 758, 742 N.Y.S.2d 618, 769 N.E.2d 364 (2002); *People v. Frances,* 270 A.D.2d 36, 37, 704 N.Y.S.2d 561, 561 (1st Dept.2000) (citations omitted), *leave denied,* 95 N.Y.2d 796, 711 N.Y.S.2d 164, 733 N.E.2d 236 (2000). In order to evaluate petitioner's claims against this backdrop, I have examined the testimony offered at the *Wade* hearing, as well as the testimony offered by Cannon at DeVivo's trial, to determine whether a motion to re-open that proceeding was warranted. That review does not substantiate petitioner's claim that his attorney rendered ineffective assistance by failing to file an application to re-open the *Wade* hearing. To the contrary, careful review reflects that Cannon's trial testimony was consistent with the testimony given by Officer Smith at the *Wade* hearing.

FN21. That statute provides, in pertinent part, as follows:

Motion to Suppress Evidence; When Made and Determined

* * * * *

4. If after a pre-trial determination and denial of the motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial.

CPL § 710.10(4).

At the *Wade* hearing, Officer Smith testified that on July

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

26, 1998, the potential suspects in the Lydia Street burglary, including DeVivo, voluntarily left the apartment and stood on a sidewalk for purposes of the show up identification. App. at A7-8 The following exchange then occurred between the prosecutor and Officer Smith

> The Prosecutor: After [you escorted the suspects down from the apartment to the sidewalk], were you with Briton Cannon?

> Officer Smith: Yes, I was.

> The Prosecutor: Did he identify Mr. DeVivo as one of the participants?

> Officer Smith: Yes, he did. Yes, he did.

App. at A8.

At trial, Cannon was questioned about the events leading up to his identification of DeVivo as a suspect in the burglary. Specifically, Cannon testified that while he was sitting in a patrol car on the night of the crime, law enforcement agents

> asked me if I could identify [DeVivo]. At first, because he was so close to the cop car I kept saying no because I thought he can see me. As soon as they got him away from the cop car and I noticed he didn't look in, I told the cop right away "Yes, that is one of them," because I thought he could see my face and I was just scared.

App. at A30.

As can be seen, while as DeVivo correctly notes Cannon initially testified that he did not identify petitioner as one of the perpetrators, Cannon specifically attributed his failure to initially identify DeVivo as a suspect to his fear that DeVivo may have observed him in the patrol car making the identification. Moreover, Cannon's trial

testimony does not support DeVivo's claim that such witness only identified petitioner as a suspect due to coaxing on the part of law enforcement agents. Amended Petition (Dkt. No. 7) at (unnumbered) 5. To the contrary, Cannon testified that once he believed DeVivo was unable to observe him in the patrol car, he "told the cop right away 'Yes, [DeVivo] is one of them.' " App. at A30.

**\*15** Nor is there record support for DeVivo's claim that Officer Smith committed perjury at the *Wade* hearing. Rather, my review of the testimony provided at the *Wade* hearing by both Officer Smith and Officer Jack Collins of the Binghamton police department has satisfied me that their testimony was entirely consistent with Cannon's trial testimony. *Compare* App. at AA12-29 *with* Resp.App. at A26-32.

Since petitioner has not established that Cannon's trial testimony provided new information that could have materially affected the county court's earlier determination denying his suppression motion, his trial attorney did not render ineffective assistance by failing to file a motion seeking to re-open the *Wade* hearing. *E.g. People v. Carroll,* 303 A.D.2d 200, 201, 759 N.Y.S.2d 443, 444 (1st Dept.2003) (trial counsel not ineffective where there was "no reason to believe that an application to reopen the *Wade* hearing would have ultimately led to suppression of identification testimony"), *leave denied People v. Carroll,* 100 N.Y.2d 560, 763 N.Y.S.2d 817, 795 N.E.2d 43 (2003). Accordingly, DeVivo is not entitled to habeas relief on this ground.

In his final claim challenging the effectiveness of his trial counsel, petitioner argues that the county court issued a pretrial ruling that prohibited prosecution witness Fullard from making an in-court identification of DeVivo. Amended Petition (Dkt. No. 7) at (unnumbered) 5.[FN22] Specifically, DeVivo alleges that Fullard testified before the grand jury that he could not identify petitioner as one of the perpetrators, and that the county court therefore issued a pretrial ruling prohibiting Fullard from offering identification testimony at DeVivo's trial. Amended Petition (Dkt. No. 7) at (unnumbered) 5-6. Fullard claims that despite that ruling, the prosecution "trie[d] to elicit false testimony from Fullard about his descriptions of the defendant [on] the night in question." *Id.* at (unnumbered) 6.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

FN22. While DeVivo raised this claim in his September, 2001 CPL Motion, *see id.* at 13-22, the county court found it to be without merit. *See* January, 2002 Order at 3.

This court was not provided with a copy of the transcript of Fullard's grand jury testimony or the pretrial ruling of the county court wherein Judge Smith is alleged to have ruled that Fullard could not offer identification testimony at trial. This notwithstanding, even assuming, *arguendo,* that the county court issued such a ruling, I find that the record does not support DeVivo's claim that his trial attorney allowed Fullard to violate the terms of any such pretrial ruling without objection. In this regard, I note that the following colloquy occurred at trial during the course of Fullard's testimony:

The Prosecutor: Can you describe the people that you saw get out of the vehicles?

Fullard: Okay, the one that got out of the truck, one of them-

Defense Counsel: Objection, your Honor.

The Court: And that would be?

Defense Counsel: It's touching upon previous hearings that we have already had rulings on.

The Prosecutor: Don't name any names. I just said describe.

*16 The Court: Go ahead. Do you agree?

Defense Counsel: He was on the verge.

The Court: Be careful being on the verge. Go ahead.

You can describe the individuals. Go ahead.

The Prosecutor: Describe what you saw.

Fullard: One was kind of tall, had a striped shirt on. One was short and stocky with a black tank top, big head. There was another one, an old man. I didn't see the driver of the truck.

App. at A35-36.

This exchange undermines DeVivo's assertion concerning his counsel's conduct in this regard, revealing that his trial counsel did in fact lodge an objection during the course of the trial when it appeared as though Fullard might provide identification testimony which was inconsistent with the apparent pretrial ruling of the county court on this issue. Counsel's failure to object to Fullard's subsequent testimony which described in general terms the appearance of the men who burglarized the Lydia Street residence, strongly suggests that such testimony was entirely consistent with the county court's pretrial ruling relating to this issue. I therefore find that DeVivo has not provided evidence that establishes that his trial attorney allowed Fullard to offer trial testimony that was inconsistent with any pretrial ruling of the county court.

In sum, I find that in each instance where he alleges that his trial counsel rendered ineffective assistance, petitioner has failed to establish that the state courts' rejection of those claims when raised below is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny. I therefore recommend that DeVivo's ineffective assistance claims concerning te performance of his trial counsel be denied.

2. *Ineffective Assistance of Appellate Counsel*

DeVivo next claims that he received the ineffective assistance of appellate counsel.

a. *Clearly Established Supreme Court Precedent*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

The Sixth Amendment's right to the effective assistance of counsel has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right. *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963). Thus, an individual is entitled to the effective assistance of appellate counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). The Supreme Court has observed that the proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland. See Smith v. Robbins,* 528 U.S. 259, 287-89, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000).

b. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

In his *coram nobis* application, DeVivo alleged that his appellate counsel rendered ineffective assistance because he failed to 1) properly perfect, for purposes of DeVivo's appeal, his claim that the integrity of the grand jury was compromised; 2) buttress DeVivo's appellate claim alleging prosecutorial misconduct with specific examples of such misconduct; 3) argue that DeVivo's trial counsel rendered ineffective assistance by failing to preserve various matters for appellate review; 4) assert "other meterious [*sic* ] arguments" in support of a claim alleging ineffective assistance of trial counsel; and 5) raise matters that "needed to be addressed" on appeal. *See Coram Nobis* Application at 14-16; *see also* Amended Petition (Dkt. No. 7) at (unnumbered) 2-6. Appellate counsel is also alleged by petitioner to have rendered ineffective assistance by failing to assert on appeal that trial counsel rendered ineffective assistance by failing to move to re-open the *Wade* hearing. Amended Petition (Dkt. No. 7) at (unnumbered) 13.

**\*17** With respect to DeVivo's claim that appellate counsel failed to perfect, for purposes of appeal, petitioner's claim that the integrity of the grand jury was compromised, *see Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9, I note that although that issue was not preserved for appellate review, the Appellate Division nonetheless considered the substance of that claim, ultimately rejecting it because DeVivo had

failed to make "a specific showing of prosecutorial misconduct, fraudulent conduct or any other error potentially prejudicing the Grand Jury's ultimate decision." *DeVivo,* 282 A.D.2d at 772, 726 N.Y.S.2d at 148. Nowhere in its decision did that court suggest that the issue was not properly briefed by appellate counsel. Thus, this claim does not afford DeVivo a basis for habeas relief.

DeVivo next argues that his appellate attorney failed to include in his appellate brief "specific showings of prosecutorial misconduct," apparently relating to the grand jury proceedings.[FN23] *Coram Nobis* Application at 15; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9-10. As I have just noted, however, the Appellate Division specifically determined that the prosecution did not engage in misconduct before the grand jury. *DeVivo,* 282 A.D.2d at 772, 726 N.Y.S.2d at 148. Thus, to the extent that this portion of DeVivo's claim is premised on that alleged misconduct, it is without record support.[FN24]

> **FN23.** This aspect of DeVivo's ineffective assistance claim immediately follows his argument that the prosecutor engaged in misconduct before the grand jury. Amended Petition (Dkt. No. 7) at (unnumbered) 9-10.

> **FN24.** Viewing this claim as a broad challenge to the actions of the prosecutor over the entire course of DeVivo's trial, I find that such a claim is without substance for the reasons stated later on in this report in the context of DeVivo's claim specifically alleging prosecutorial misconduct. *See* pp. 52-55, *post.*

Addressing his next contention, I find that petitioner has failed to articulate the "meritorious arguments" his appellate attorney purportedly failed to advance on appeal, *see Coram Nobis* Application at 15; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9, or outline to the court the appellate issues that he contends "needed to be addressed" by appellate counsel but were not. *Coram Nobis* Application at 16; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. DeVivo's failure to supply the court with facts supporting these claims constitutes both a failure on his part to comply with Rule 2(c) of Rules Governing Section 2254 cases as well as an inability to

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

shoulder his burden of proof relating to these claims. *Vasquez,* 2005 WL 2001020, at *15; *Banks,* 2001 WL 1448612, at *2; *Tally,* 47 F.Supp.2d at 953-54.

DeVivo also asserts that his appellate counsel wrongfully failed to argue on appeal that his trial counsel rendered ineffective assistance by failing to preserve several matters for appellate review. *Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. As I noted earlier in the context of DeVivo's challenge to trial counsel's performance, however, in each instance where the Appellate Division determined that trial counsel failed to preserve an issue for appellate review, that court nonetheless went on to address and reject the merits of the unpreserved claims. *See DeVivo,* 282 A.D.2d at 771-72, 726 N.Y.S.2d at 147-48. Thus, this theory does not afford DeVivo a basis for habeas relief.

**\*18** Finally, since I have already recommended that trial counsel not be found to have rendered ineffective assistance, I likewise conclude that petitioner's claims that appellate counsel rendered ineffective assistance by failing argue on appeal that trial counsel was deficient, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 10-13, are without substance. *E.g. Keith v. Artuz,* No. 99-CV-1778, Dkt. No. 23, slip op. at 28 (N.D.N.Y. Feb. 5, 2004) (DiBianco, M.J.) (citing *McDonald v. Smith,* 2003 WL 22284131, at *15 (E.D.N.Y. Aug.21, 2003), *adopted Keith v. Artuz,* Dkt. No. 26 (N.D.N.Y. Mar. 12, 2004) (McAvoy, S.J.), *appeal dismissed, Keith v. Artuz,* No. 04-1730pr (2d Cir. Mar. 17, 2005).

In sum, I conclude that DeVivo has failed to establish that his appellate counsel rendered ineffective assistance. He has therefore necessarily failed to demonstrate that the Appellate Division's decision denying his ineffective assistance claim is either contrary to, or represents an unreasonable application of, the relevant Supreme Court precedent noted above.

3. *Trial Court Error*

Petitioner next alleges that the trial court erred when it allowed the prosecution to offer at trial evidence relating to crimes originally charged in the indictment returned

against DeVivo but dismissed by the county court prior to trial. Amended Petition (Dkt. No. 7) at (unnumbered) 7; *see also* App. Br. at 8-10.

a. *Appropriate Standard of Review*

Historically, when evaluating convictions in the face of collateral habeas challenges alleging error on the part of a trial court, habeas courts have inquired whether the trial court's error had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)) (other citation omitted). Following the enactment of the AEDPA, however, it remained an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state court conviction remains the one set forth in *Brecht,* or instead should be based upon a determination of whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[FN25] *See Benn v. Greiner,* 402 F.3d 100, 105 (2d Cir.2005) (citation omitted); *Harvall v. Phillips,* No. 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug.30, 2005).

FN25. In *Chapman,* the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* 386 U.S. at 24, 87 S.Ct. at 828.

In *Gutierrez v. McGinnis,* 389 F.3d 300 (2d Cir.2004), the Second Circuit resolved one aspect of this question by holding that when a state court explicitly conducts harmless error review of a claimed constitutional error, a federal habeas court must evaluate whether the state courts unreasonably applied *Chapman. See Gutierrez,* 389 F.3d at 306; *see also Zappulla v. New York,* 391 F.3d 462, 467 (2d Cir.2004). Where, however, as in the instant case, the state court did not engage in a harmless error analysis, the Second Circuit has not yet decided whether the *Chapman* or *Brecht* tests is to be applied. *See Gutierrez,* 389 F.3d at 306-07 & n. 7; *Ellis v. Phillips,* No. 04CIV.7988, 2005 WL 1637826, *24 n. 45 (S.D.N.Y. July 13, 2005) (Peck,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

M.J.) (collecting cases); *Holmes v. Artus,* No. 03CIV.7065, 2005 WL 1027195, at *18 (S.D.N.Y. May 4, 2005) (citing *Gutierrez,* 389 F.3d at 306; *Benn,* 402 F.3d at 105 (other citation omitted). In view of the uncertainty within this circuit, I will examine the issue now raised by petitioner regarding this claim utilizing both standards.

b. *Consideration of DeVivo's Claim in Light of* Chapman *and* Brecht

**\*19** In considering DeVivo's claim that the trial court improperly allowed the prosecution to introduce evidence at trial that related to crimes which had been charged but later dismissed by the county court, the Appellate Division did not engage in harmless error analysis, instead finding that "[e]vidence of such conduct [was] highly probative and was properly admitted as it was indicative of [DeVivo's] consciousness of guilt." *DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148. I must therefore consider whether this finding represented error that had a substantial and injurious effect or influence in determining the jury's verdict, or, alternatively, whether the county court's evidentiary ruling relating to that evidence was error that was not harmless beyond a reasonable doubt.

DeVivo argued on appeal that the trial court improperly allowed numerous trial witnesses to testify that petitioner had threatened or coerced them to falsely claim that DeVivo did not participate in the burglary of the Lydia Street apartment. *See* App. Br. at 11-12; *see also* App. at AA50-52, AA73, AA78-79, AA86-88, AA90-91; AA93-96; A132-35. Although petitioner correctly argues that the testimony of these witnesses at times related to charges that were ultimately dismissed by the county court prior to trial, he fails to acknowledge that when the county court dismissed those charges, it *specifically noted* that the prosecution could use evidence relating to those dismissed charges in its case-in-chief against DeVivo, since the relevant conduct also could be viewed as constituting evidence of a common scheme and plan on the part of DeVivo to avoid culpability on the burglary and criminal mischief charges. Resp.App. at AA13-17. Thus, for example, in ruling that the letters written by DeVivo to individuals in an effort to secure their favorable testimony at his criminal trial could be used by the prosecution despite the fact that the tampering with a witness charges

had been dismissed, the trial court observed, without objection by defense counsel, that there was "[n]o question" that the evidence relating to the letters was admissible. Resp.App. at A17.

In New York, it is well settled that acts which tend to establish a criminal defendant's consciousness of guilt may properly be admitted into evidence even where such evidence may relate to uncharged crimes. *See U.S. ex rel. Holliday v. Adams,* 443 F.2d 7, 7 (2d Cir.1971) (no error where trial court admitted evidence of a second assault upon the victim of the assault for which appellants were on trial; prosecution claimed that "the second assault was instigated by [individuals] in an effort to prevent the victim of the original assault from testifying at the trial"); *Spruill v. Phillips,* No. 04 CV 1382, 2005 WL 1743828, at *6 (E.D.N.Y. July 25, 2005) (testimony relating to uncharged crime regarding threat made by petitioner to fellow inmate was properly admitted as evidence of petitioner's consciousness of guilt); *Velilla v. Senkowski,* No. 02-CV-6458, 2003 WL 23198791, at *11 (E.D.N.Y. Oct.30, 2003) (evidence that petitioner offered individual money and return of his stolen property on condition that witness abandon the prosecution of the defendant properly admitted as proof of petitioner's consciousness of guilt); *see also People v. Rodriguez,* 306 A.D.2d 686, 687-88, 761 N.Y.S.2d 368, 370-71 (3d Dept.), *leave denied,* 100 N.Y.2d 624, 767 N.Y.S.2d 407, 799 N.E.2d 630 (2003).

**\*20** Since petitioner has not demonstrated that the admission of the evidence relating to the dismissed charges was erroneous in any way, *a fortiori* he has failed to establish that the admission of such evidence had a substantial and injurious effect or influence in determining the jury's verdict, or, alternatively, that the claimed error was not harmless beyond a reasonable doubt. Accordingly, I recommend the denial of this aspect of DeVivo's petition.

4. *Prosecutorial Misconduct*

DeVivo next argues that the prosecution engaged in misconduct during the course of the criminal trial and in its closing argument. Amended Petition (Dkt. No. 7) at (unnumbered) 7; App. Br. at 11-12.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

a. *Clearly Established Supreme Court Precedent*

A criminal defendant's fundamental right to a fair trial is guaranteed by the Due Process Clause of the United States Constitution. *Albright v. Oliver,* 510 U.S. 266, 273 n. 6, 114 S.Ct. 807, 813 n. 6, 127 L.Ed.2d 114 (1994) (citing *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). Quite obviously, prosecutorial misconduct is a matter which brings into play the constitutional mandate of a fair trial. For federal habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). The law applicable to claims alleging prosecutorial misconduct is clearly established. *See Davis v. Keane,* 97 CIV. 8328, 2000 WL 1041454, at *7-8 (S.D.N.Y. July 28, 2000) (citing *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985) and *Donnelly,* 416 U.S. at 642-43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431)); *see also Flores v. Keane,* 211 F.Supp.2d 426, 438 (S.D.N.Y.2001).

b. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

Petitioner's claim of prosecutorial misconduct was presented to the Third Department, which, while not specifically discussing the issue, rejected DeVivo's "remaining contentions ... find[ing] them to be equally without merit." *DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148. I therefore must determine whether that determination of the Appellate Division is contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

DeVivo initially argues that the prosecutor improperly attempted to elicit hearsay evidence from prosecution witnesses Tina Clark and Officer Smith. Amended Petition

(Dkt. No. 7) at (unnumbered) 14; App. Br. at 14; *see also* App. at AA 212. Careful review of the record, however, reveals that the trial court sustained defense counsel's objections to those portions of the trial testimony in which the prosecution attempted to elicit hearsay evidence. *See* App. at AA 115, 212. With respect to DeVivo's claim that the prosecution "devoted an inordinate percentage" of its case-in-chief to the perjury and witness tampering charges that were dismissed by the trial court, *e.g.* App. Br. at 14, I find this claim to be without merit because, as was noted earlier, that evidence was probative of the charges in the indictment on which DeVivo was being criminally tried.

**\*21** DeVivo also claims that the prosecution's summation was improper. Amended Petition (Dkt. No. 7) at (unnumbered) 7; App. Br. at 14. For DeVivo to prevail on this claim, however, I must be satisfied that the prosecutor's conduct was "so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998). To warrant habeas intervention, DeVivo "must show 'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." ' *Tankleff,* 135 F.3d at 252 (quoting *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994), *cert. denied,* 516 U.S. 1152, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996)); *see also Copeland v. Walker,* 258 F.Supp.2d 105, 131-32 (E.D.N.Y.2003) (citing *Tankleff* ). Relevant factors in this determination include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Bentley,* 41 F.3d at 824; *Floyd v. Meachum,* 907 F.2d 347, 355 (2d Cir.1990); *Palmer v. Senkowski,* No. 99 CIV. 9634, 2002 WL 54608, at *4 (S.D.N.Y. Jan 15, 2002); *see also Darden,* 477 U.S. at 181-83, 106 S.Ct. 2464, 91 L.Ed.2d 144; *Donnelly,* 416 U.S. at 644-47, 94 S.Ct. at 1872-73.

In conjunction with this claim, I have reviewed the portions of the prosecution's summation submitted by DeVivo's appellate counsel to the Appellate Division in support of this aspect of DeVivo's appeal. *See* App. at AA270-90. That review has satisfied me that the comments made during the prosecution's summation did not deprive DeVivo of his constitutional right to a fair trial. Since petitioner has not established that the Appellate Division's denial of this aspect of his appeal is contrary to,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

or unreasonable application of, the above-referenced Supreme Court precedent, I recommend that this ground in his petition be denied.

5. *Joint Trial*

Petitioner also argues that his joint trial on the burglary and perjury charges deprived him of his right to a fair trial. Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 8-9.

a. *Clearly Established Supreme Court Precedent*

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. Amend. VI. "The right to a fair trial has been called "the most fundamental of all freedoms." ' *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1965); *see also, Albright,* 510 U.S. at 273 n. 6, 114 S.Ct. 807, 813 n. 6, 127 L.Ed.2d 114 (a criminal defendant's right to a fair trial is mandated by the Constitution) (citing *Agurs,* 427 U.S. at 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342); *Taylor v. Hayes,* 418 U.S. 488, 501-02, 94 S.Ct. 2697, 2704-05, 41 L.Ed.2d 897 (1974). Nevertheless, where a habeas petitioner claims that he was denied his right to a fair trial, a federal habeas court's reviewing power is "the narrow one of due process ... not the broad power that [it] would possess in regard to [its] own trial court." *See Donnelly,* 416 U.S. at 642, 94 S.Ct. at 1871. With respect to the joinder of claims in an indictment, the Supreme Court has clearly established that the convenience of trying different crimes against the same person is a valid governmental interest, and therefore justified under the Constitution. *Spencer v. Texas,* 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967). Thus, to prevail upon a claim alleging improper joinder of charges in an indictment, the party must demonstrate that the joinder denied the defendant of his constitutional right to a fair trial. *See, e.g., United States v. Lane,* 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 730 n. 8, 88 L.Ed.2d 814 (1986).

b. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

**\*22** In denying this aspect of DeVivo's appeal, the Appellate Division determined that the disputed offenses "were properly joinable" under New York's relevant procedural provisions because "proof of the acts alleged in the burglary and criminal mischief charges would be material and admissible to establish the perjury charge." *DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147 (citations omitted). That court further found that the proof relating to DeVivo's grand jury testimony "was uncomplicated and easily segregable such that it was unlikely that the jury was unable to consider the perjury testimony separately from the testimony relating to the other offenses." *Id.* (citation omitted).

In support of his petition, petitioner has not presented any evidence which suggests that his joint trial on the burglary and perjury charges deprived him of his right to a fair trial. As the Appellate Division correctly noted, proof of the acts relating to the burglary and criminal mischief charges was both material and necessary to establish that DeVivo committed perjury before the grand jury, thereby justifying the joint trial. *Spencer,* 385 U.S. at 562, 87 S.Ct. at 653. Nor has DeVivo demonstrated any prejudice arising from the joinder of those claims in the criminal matter below, a fact that is fatal to this claim. *Herring v. Meachum,* 11 F.3d 374, 377-78 (2d Cir.1993) (citations omitted).

Since petitioner has not established that the Appellate Division's decision denying this aspect of his appeal ( *DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147) is either contrary to, or represents an unreasonable application of, the Supreme Court precedent noted above, I recommend that this aspect of his petition be denied. *See Willis v. Duncan,* No. 00-CV-4171, 2003 WL 21845664, at *5-6 (E.D.N.Y. Aug.4, 2003); *Scott v. Kelly,* No. 98-CV-811, 1999 WL 1390251, at *4 (W.D.N.Y. Aug.24, 1999).

6. *Fourth Amendment Claim*

Petitioner next argues that his removal from the Lydia Street apartment on July 26, 1998, as well as his participation in the "show up" identification procedure employed by law enforcement agents, violated his constitutional rights. Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 13.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

In this circuit, the merits of a Fourth Amendment claim asserted by way of federal habeas petition may only be properly reviewed by a federal district court where 1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations; or 2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself or herself of the procedure due to an unconscionable breakdown in the underlying process. *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992*)* (citing *Stone v. Powell,* 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976)); *see also Martinez v. Senkowski,* No. 6:97-CV-624, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.). Accordingly, in order to establish a legal basis for this court's review of his Fourth Amendment claims, DeVivo must demonstrate that he was precluded from fully and fairly litigating those claims in the state courts. *Chavis v. Henderson,* 638 F.2d 534, 538 (2d Cir.1980), *cert. denied,* 454 U.S. 842, 102 S.Ct. 152, 70 L.Ed.2d 125 (1981); *Devino v. Duncan,* No. 01 CIV. 9044, 2004 WL 884961, at *4 (S.D.N.Y. Apr.23, 2004); *Holmes v. Scully,* 706 F.Supp. 195, 200-01 (E.D.N.Y.1989) (federal claim premised upon failure to suppress evidence obtained during alleged unlawful detention of petitioner precluded under *Stone* ); *Morales v. Walsh,* No. 02-CV-6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct.30, 2003) (*"Stone v. Powell* applies to all Fourth Amendment claims-including claims of arrest without probable cause-and regardless of the nature of the evidence that the defendant is seeking to suppress"); *Montalvo,* 2003 WL 22962504, at *16 (citing *Chavis* ) (other citations omitted).

**\*23** The Appellate Division noted that DeVivo did not pursue any Fourth Amendment claim in the state courts. *See DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147. Petitioner is nevertheless still precluded from asserting these claims in this matter; the *Stone* doctrine precludes federal review of Fourth Amendment claims even where the defendant chooses not avail himself or herself of the opportunity to litigate such claims in the state courts. *See Crawford v. Artuz,* 165 F.Supp.2d 627, 631 (S.D.N.Y.2001) ("[petitioner's] failure to employ [CPL] § 710 precludes this court from considering his Fourth Amendment claim"). Since DeVivo has failed to establish that he was precluded from pursuing his Fourth Amendment claim in the trial court due to "an unconscionable breakdown in the underlying process"

relating to his claim, I recommend that petitioner's habeas claim based upon an alleged violation of his Fourth Amendment rights be denied under *Stone.*

7. *Excessive Sentence*

Petitioner also alleges that the sentence imposed on him was excessive. Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 15-17. Specifically, DeVivo argues that he was convicted of "thrashing ... an apartment," and that therefore he should have been sentenced to "no more than the minimum sentence for a predicate felon." App. Br. at 15.

This claim, however, fails to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989)); *see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson v. Lacy,* 74 F.Supp.2d 173, 181 (N.D.N.Y.1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). DeVivo has never alleged, in the state courts or this proceeding, that the sentences imposed on him for his crimes exceeded the sentences allowed by law.

Arguably, this ground could be construed as a claim that the sentences imposed constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). I note, however, that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U .S. at 272, 100 S.Ct. at 1138; *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime). A sentence of imprisonment which is within the limits of a valid state statute, however, is simply not cruel and unusual punishment in the constitutional sense. *See Lutes v. Ricks,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)
(Cite as: 2006 WL 581145 (N.D.N.Y.))

No. 02CV1043, 2005 WL 2180467, at *13 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citations omitted).

**\*24** DeVivo has not provided anything in support of his petition which indicates that the sentence imposed on him for crimes is "grossly disproportionate" to that crime. *E.g., Harmelin,* 501 U.S. at 995, 111 S.Ct. at 2701-02. I therefore find no basis upon which I may properly find that he is entitled to habeas relief due to the sentence he received for his crime, and I accordingly recommend that this claim be denied.

8. *Failure of Courts to Articulate Legal Basis for Decisions*

Lastly, DeVivo argues that both the trial and appellate courts failed to provide a "detailed explanation to [*sic* ] why the motions were denied." Amended Petition (Dkt. No. 7) at (unnumbered) 14-15.

Assuming this claim to be exhausted, I find that the decisions of both the Appellate Division and the trial court addressing DeVivo's numerous challenges to his conviction belie DeVivo's claim that the decisions of the state courts summarily denied DeVivo's applications without "conclusions of law or fact." Amended Petition (Dkt. No. 7) at (unnumbered) 15. I therefore recommend that this final, unsubstantiated claim be denied.

IV. *SUMMARY AND RECOMMENDATION*

In sum, the record before the court firmly establishes that DeVivo has procedurally defaulted on several of the claims asserted in his amended petition. Since petitioner has not shown cause for his procedural default relating to these claims or that he is actually innocent of the crime of which he was convicted, I find that these aspects of DeVivo's petition to be procedurally barred and accordingly recommend the denial of these claims on that basis. Applying the required, deferential standard of the AEDPA to the remaining aspects of his habeas application, I recommend that all such claims be denied on the merits. It is therefore hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in its entirety.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

N.D.N.Y.,2006.
DeVivo v. Superintendent, Auburn Correctional Facility
Not Reported in F.Supp.2d, 2006 WL 581145 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 4823365 (E.D.N.Y.)
(Cite as: 2009 WL 4823365 (E.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Christopher WILLARD, Petitioner,
v.
The State of NEW YORK, Respondent.
**No. 08-CV-1525 (JS).**

Dec. 4, 2009.

Christopher Willard, Ossining, NY, pro se.

Cristin N. Connell, Esq., Nassau County District Attorney's Office, Mineola, NY, for Respondent.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Petitioner, Christopher Willard ("Willard" or "Petitioner"), petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons below, the Petition is DENIED.[FN1]

> FN1. On October 30, 2009, Petitioner filed a mandamus action. *Willard v. Seybert,* 09-CV-4885. Because Petitioner's Habeas Petition pursuant to 28 U.S.C. § 2254 is DENIED herein, the mandamus action is hereby DISMISSED as moot.

*BACKGROUND*

I. *Factual Background*

On the night of January 17, 2004, M.T. left a nightclub in Westbury, Nassau County, and entered a taxicab operated by Petitioner. M.T. later testified that, over the course of several hours, she had imbibed four or five drinks, had a very low tolerance, and felt very drunk thereafter. At M.T.'s request, Petitioner drove her to a friend's home in Bellmore, Nassau County. Upon arrival, M.T. discovered that her friend was not at home, and reentered the cab. She promptly passed out.

Subsequently, M.T. regained consciousness long enough to observe that the cab was parked at a convenience store before she passed out again. M.T. testified that the next time she awoke she found her pants and underwear pulled down to her knees and Petitioner between her legs, with his penis inside of her. While M.T. was unconscious, Petitioner had placed his penis in her vagina. M.T. said that "his pants were down," his penis was "inside me" and "he was thrusting back and forth." (T 311-12.) When Petitioner was finished, he went into M.T.'s purse and took forty-three dollars from her wallet. (*Id.* at 315.) Petitioner then drove back to the home of M.T.'s friend and let her out of the taxi. M.T. ran to the home of her friend's neighbor, who let her in and called the police. (*Id.* at 320-21.)

After hearing M.T.'s account, Nassau County police officers suspected that the rapist was a driver for Long Island Checker Cab Company ("Company") and asked the Company's dispatcher to call Petitioner back to the cab stand. Various officers took position near the cab stand in their marked police cars and waited for Petitioner to return. Shortly thereafter, Officer Frank Ruvolo saw Petitioner's cab pass by and he began to follow the cab. Petitioner accelerated and led the police on a high-speed chase that involved three police cars over several miles. Petitioner eventually led the officers onto the Meadowbrook Parkway, where he sideswiped one of the police cars before crashing the cab into a guardrail. Petitioner then left his vehicle and tried to flee on foot. The officers ultimately apprehended him in the wooded area near the parkway. Altogether, the chase lasted approximately fifteen minutes.

II. *Procedural History*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4823365 (E.D.N.Y.)
(Cite as: 2009 WL 4823365 (E.D.N.Y.))

Petitioner was charged with two counts of First Degree Rape (N.Y. Penal Law § 130.35[1], [2] ), one count of Rape in the Third Degree (Penal Law § 130.25[1] ), two counts of Sexual Abuse in the First Degree (Penal Law § 130. 65[1], [2] ), one count of Robbery in the Third Degree (Penal Law § 160.05), one count of Grand Larceny in the Fourth Degree (Penal Law § 155.30 [5] ), two counts of Assault in the Second Degree (Penal Law § 120.05 [3], [6] ), Reckless Endangerment in the First Degree (Penal Law § 120.25), one count of Criminal Mischief in the Third Degree (Penal Law § 145.05[2] ), two counts of Criminal Mischief in the Fourth Degree (Penal Law § 145.00 [3] ), and one count of Resisting Arrest (Penal Law § 205.30). After trial in the New York State Supreme Court, Nassau County, on February 28, 2005, Petitioner was sentenced to a determinate term of imprisonment of twenty-five years and five years' post-release supervision on the rape count, a determinate term of seven years and five years' post-release supervision for both the sexual abuse and assault in the second degree counts, an indeterminate term of three years and six months to seven years each on the robbery and reckless endangerment counts, an indeterminate term of two to four years each on the grand larceny and criminal mischief in the third degree counts, and a definite term of one year each on the criminal mischief in the fourth degree and resisting arrest counts. The trial court ordered all of the sentences to run concurrently. Because Petitioner's acts violated a five-year term of probation that had been imposed on September 10, 2001, for a prior unrelated crime, Petitioner was sentenced to an additional indeterminate term of two years and four months to seven years. The court ordered this sentence to run consecutively with the sentence for rape in the first degree.

**\*2** Thereafter, Petitioner was appointed appellate counsel, who appealed from Petitioner's conviction to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"). On appeal, Petitioner argued that: (1) the evidence was legally insufficient to support his conviction; (2) the jury's verdict was against the weight of the evidence; and (3) Petitioner's sentence was harsh and excessive. After the Respondent filed a brief in opposition to counsel's brief, Petitioner filed a *pro se* supplemental brief, claiming that: (1) his statements to the police had been coerced and their introduction at trial violated his Fifth Amendment rights; (2) he received the

ineffective assistance of trial counsel; (3) the trial court should have granted his numerous *pro se* motions to dismiss the indictment against him; (4) the trial court's decision, that he had violated his probation, violated his constitutional rights; (5) his sentence was unduly harsh and excessive; and (6) the court erred when it allowed the prosecutor to play a videotape depicting the route taken when Petitioner was chased by police.

On March 27, 2007, the Appellate Division held that, viewing the evidence in the light most favorable to the prosecution, the evidence was legally sufficient to establish that M.T. was unconscious or otherwise physically unable to communicate her unwillingness to engage in sexual intercourse with Petitioner (*see* Penal Law § 130.00[7] ). Additionally, it was satisfied that the verdict of guilt of rape in the first degree was not against the weight of the evidence. Finally, the Appellate Division held that the sentences imposed were not excessive, and that Petitioner's remaining contentions, including those raised in his supplemental *pro se* brief, were without merit. Petitioner's conviction was unanimously affirmed. *People v. Willard,* 832 N.Y .S.2d 294, 294 (App.Div.2007). On October 5 2007, the New York Court of Appeals denied Petitioner's application for leave to appeal on the same grounds as those raised in the Appellate Division. *People v. Willard,* 878 N.E.2d 618, 9 N.Y.3d 965, 848 N.Y.S.2d 34 (2007).

On or about April 24, 2006, Petitioner filed a motion to vacate his judgment pursuant to C.P.L. § 440.10, raising two arguments: (1) a videotape of the route of the police chase should not have been played for the jury; and (2) the prosecution should have produced a witness who could have authenticated an allegedly exculpatory surveillance tape. On June 1, 2006, the County Court denied Petitioner's motion, finding that Petitioner's claims were procedurally barred and without merit. On or about November 16, 2006, Petitioner filed a second motion to vacate judgment, raising five claims, and arguing: (1) count three of the indictment, Rape in the Third Degree, was erroneously dismissed; (2) the victim's medical reports were improperly withheld from the grand jury; (3) ineffective assistance of counsel; (4) the violation of probation hearing abridged his constitutional rights; and (5) he was entitled to bail or release on his own recognizance. On December 18, 2006, the County Court denied Petitioner's motion, again finding that Petitioner's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4823365 (E.D.N.Y.)
(Cite as: 2009 WL 4823365 (E.D.N.Y.))

claims were procedurally barred and without merit.

**\*3** On April 3, 2008, Petitioner filed his petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He cites three grounds as a basis for his petition: (1) the evidence against him at trial was legally insufficient to prove one of the elements of the charged rape, namely that the victim had been unconscious or physically unable to communicate an unwillingness to act; (2) he received ineffective assistance of counsel because his trial counsel failed to challenge the grand jury as it was impaneled, and because he failed to object to the admission of a videotape of the scene of the police chase and the related testimony of a police officer; and (3) his sentence is unduly harsh and excessive.

*DISCUSSION*

I. *Federal Habeas Review of State Convictions*

Petitioner filed this action after the April 24, 1996, effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the AEDPA's provisions apply to his case. *See Williams v. Taylor,* 529 U.S. 362, 402, 120 S.Ct. 1479, 1518, 146 L.Ed.2d 389 (2000). Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." *Cotto v. Herbert,* 331 F.3d 217, 231 (2d Cir.2003). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir.2002) (internal citations and quotations omitted).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as

of the time of the relevant state-court decision.' " *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir.2005) (*quoting Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002)). A decision is "contrary to' established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (*quoting Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Penry,* 532 U.S. at 792 (*quoting Williams,* 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams,* 529 U.S. at 411.

II. *Petitioner's Claim that the Evidence was Legally Insufficient to Prove all Elements of the Charged Rape*

**\*4** "The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the Petitioner] is charged.' " *Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 840 (2d Cir.1997) (*quoting In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). The Petitioner is only "entitled to habeas corpus relief if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92, 61 L.Ed.2d 560 (1979). The evidence must be viewed "in the light most favorable to the prosecution." *Id.* at 319. When challenging the sufficiency of the evidence in a state criminal conviction, petitioner "bears a heavy burden." *Einaugler,* 109 F.3d at 840. Additionally, "the government receives the benefit of having all permissible inferences drawn in its favor." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002) (*citing United States v. Martinez,* 54 F.3d 1040, 1042 (2d Cir.1995)). Furthermore, the verdict can "be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4823365 (E.D.N.Y.)
(Cite as: 2009 WL 4823365 (E.D.N.Y.))

based entirely on circumstantial evidence." *Martinez, 54 F.3d at 1043.*

In this case, Petitioner takes issue with one aspect of the evidence: namely that the evidence was insufficient to demonstrate that M.T. was physically helpless at the time of the rape. Contrary to his contentions, however, there is considerable evidence when viewed in a light most favorable to the Respondent that supports the jury's finding that M.T. was physically helpless and that the Petitioner was guilty beyond a reasonable doubt. The evidence established that, on the night of the incident, M.T., who had a low tolerance for alcohol, had imbibed four or five drinks over several hours. M.T. testified that she felt very drunk, drifted in and out of consciousness while in defendant's cab, and wasn't sure what was happening when she awoke with Petitioner's penis inside of her. (T 311-13.) She told the jury that her fright and state of intoxication prevented her from reacting when defendant began moving his penis inside and out of her vagina. Viewing this evidence in the light most favorable to Respondent, a rational jury clearly could have concluded that M.T. was physically helpless when Petitioner pulled down her clothes and placed his penis in her vagina while she was unconscious.

Given the considerable evidence that supports the Petitioner's guilt in the crimes charged, Petitioner fails to meet the demanding standard for overturning the jury's verdict. Thus, Petitioner's claim for insufficiency of evidence is without merit, and he is not entitled to habeas relief on this ground.

III. *Ineffective Assistance of Counsel Claim*

To prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies is his counsel's performance were prejudicial to his defense." *Jameson v. Coughlin,* No. 93-CV-2525, 1994 WL 131185, at *2 (2d Cir. Apr. 13, 1994) (*quoting Strickland v. Washington,* 466 U.S. 668, 690, 691-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In evaluating whether an attorney's representation has fallen "below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, a court must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691 ("[A] heavy measure of deference [is accorded] to counsel's judgments.")

**\*5** The second prong of the Strickland test requires that any deficiencies in counsel's performance be prejudicial to the defense. *See Strickland,* 466 U.S. at 692. While a finding of prejudice is not dependent upon a showing "that counsel's deficient conduct more likely than not altered the outcome in the case," *id.* at 693, the petitioner nevertheless must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well established that counsel need not raise every non-frivolous issue simply because a client suggests it "if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1982); *see also Abdurrahman,* 897 F.2d at 74. Further, there is a strong presumption that counsel used reasonable professional judgment and conducted himself accordingly. *See Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir.2000) (*quoting Strickland,* 466 U.S. at 689).

Petitioner blanketly states that his trial counsel was ineffective because he failed to challenge the grand jury as it was impaneled, and because he failed to object to the admission of a videotape of the scene of the police chase and the related testimony of a police officer. Despite these assertions, Petitioner altogether fails to demonstrate that, in reviewing his claims on appeal, the Appellate Division failed to follow *Strickland,* and he provides no evidence that but for any supposed error committed by counsel, the result of the proceeding would have been different. In short, the evidence of Petitioner's guilt was overwhelming, and Petitioner's unsupported allegations are insufficient to show counsel's decisions could have made a difference in his conviction.

Accordingly, the Court finds that, based on the record,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4823365 (E.D.N.Y.)
(Cite as: 2009 WL 4823365 (E.D.N.Y.))

Petitioner fails to meet his burden demonstrating that counsel's conduct deprived him of his constitutional right to effective counsel. Petitioner is not entitled to habeas relief on this ground.

IV. *Claim that Sentence is Unduly Harsh and Excessive*

Where a petitioner's sentence falls within the range prescribed by state law, federal courts will recognize no federal constitutional issue. *See Grant v. Graham,* No. 08-CV-10453, 2009 WL 3401181, at *10, n. 7 (S.D.N.Y. Oct. 19, 2009) (*citing White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992)). This rule applies even if the sentence imposed constitutes the maximum term permissible under the statute. *See Wright v. Conway,* No. 06-CV-0319, 2009 WL 2982978, at *7 (N.D.N.Y. Sept. 14, 2009); *see also Warren v. Conway,* No. 07-CV-4117, 2008 WL 4960454, at *30 (E.D.N.Y. Nov. 18, 2008) (*citing United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.1991) (finding that courts should review the disproportionality of sentences only in rare cases because the legislature's fixing of terms for imprisonment is presumptively valid)).

**\*6** At the outset, the Court notes that Petitioner's claim that his sentences was unduly harsh and excessive must be deemed exhausted but procedurally barred because he did not fairly present his claim to the state courts and he no longer has a forum in which to do so. Moreover, Petitioner's sentence fell squarely within the statutory provisions.

Finally, to the extent that Petitioner seeks to argue that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime[,]" *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), he again misses the mark. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.' " *Kirton v. Ercole,* No. 08-CV-0719, 2009 WL 3644344, at *11 (N .D.N.Y. Oct. 28, 2009) (alterations omitted) (*quoting Rummel,* 445 U.S. at 272); *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (holding that the Eighth Amendment only forbids only sentences which are

"grossly disproportionate" to the crime). A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. *Kirton,* 2009 WL 3644344, at *11; *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003). Here, Petitioner has completely failed provide evidence, let alone convincingly establish, that the imposed sentences are grossly disproportionate to the crimes he was convicted of or otherwise violative of his Eighth Amendment rights. Therefore, he is not entitled to habeas relief on this ground.

*CONCLUSION*

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. A Certificate of Appealability is DENIED. The Clerk of the Court is directed to mark this matter as CLOSED. Additionally, because the Petition pursuant to 28 U.S.C. § 2254 is DENIED, the mandamus action, *Willard v. Seybert,* 09-CV-4885, is DISMISSED as moot; the Clerk of the Court is directed to mark that matter CLOSED as well.

SO ORDERED.

E.D.N.Y.,2009.
Willard v. New York
Slip Copy, 2009 WL 4823365 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.